**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                          No. CR 12-2686 JB

YUREN ARANDA-DIAZ,

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant Yuren Aranda-Diaz's Motion to Disclose Confidential Information, filed May 24, 2013 (Doc. 38)("Motion to Disclose").   The Court held a hearing on July 3, 2013.   The primary issue is whether the Court should require Plaintiff United States of America to disclose to Defendant Yuren Aranda-Diaz' attorney the identity of the confidential informant ("CI") who coordinated the alleged heroin transaction for which Aranda-Diaz is charged with distribution.   The Court will grant in part and deny in part the Motion to Disclose.   The Court determines that, in light of Aranda-Diaz' distribution charge, the factors that district courts must consider when deciding whether to order a confidential informant's identity, which the Supreme Court of the United States articulated in <u>Roviaro v. United States</u>, 353 U.S. 53 (1957), counsel in favor of requiring disclosure.   The crimes with which Aranda-Diaz is charged -- including the distribution charge -- are serious.   Because the CI was directly involved in the transaction from which Aranda-Diaz' distribution charge stems, the CI might provide relevant information to an important issue that is unavailable from other witnesses, including information about the unwilling informant, Jessie Lopez, who allegedly purchased the drugs from Aranda-Diaz.   Given that one possible defense which Aranda-Diaz is raising is that Lopez, and

not Aranda-Diaz, provided the drugs to the CI, it is possible that the CI has information that will aid in Aranda-Diaz' defense against the distribution charge.  On balance, therefore, the Court concludes that Aranda-Diaz' right to present his defense outweighs the public's interest in facilitating the free flow of information which the CI's confidentiality facilitates.  Nevertheless, the Court will incorporate a protective order into this Memorandum and Opinion Order, to attempt to protect the public's interest and the CI's safety to the extent that protection is possible.  If, however, the United States dismisses the distribution charge, the Court will deny Aranda-Diaz' request that the Court order the United States to disclose the CI's identity.

## FACTUAL BACKGROUND

On October 2, 2012, the CI contacted Albuquerque, New Mexico Police Department ("APD") Detective Herman Martinez, Jr., and told Martinez that the CI knew "Jessie" -- later identified as Lopez -- who could assist police in obtaining large quantities of heroin.   The CI, who was aware that Lopez knew a person called "Oso" -- later identified as Aranda-Diaz -- contacted Lopez.   Lopez stated that Aranda-Diaz was selling heroin for $750.00 an ounce.

Martinez then made arrangements with the CI to purchase, through Lopez, an ounce of heroin from Aranda-Diaz.   After retrieving Lopez, the CI and Lopez drove to the area of 5th and Menaul in Albuquerque and parked in a residential neighborhood.   Martinez and another detective followed the CI to Lopez' apartment, and then into the residential neighborhood of 5th and Menaul. The detectives observed a Chevrolet Suburban pull into a driveway located at 2705 5th Street NW, which the CI told the officers Aranda-Diaz was driving.   The CI then provided Lopez with the buy money to purchase the heroin.   Detectives watched Lopez exit the CI's vehicle, walk directly to the Suburban, and enter the vehicle on the passenger side.   The officers then saw Lopez exit Aranda-Diaz' Suburban and walk back to the CI's vehicle.

- 2 -

Once Lopez returned to the CI's vehicle, the CI signaled the officers that Lopez had purchased the heroin from Aranda-Diaz and that the CI now possessed the heroin.   APD detectives approached Aranda-Diaz' vehicle, arrested him, and placed him in custody.   Officers searched Aranda-Diaz' person and vehicle, which revealed that Aranda-Diaz had the buy money concealed in his sock.   During the search of the vehicle, officers found a firearm on the driver's seat, a digital scale, and a concealed pill bottle.   The pill bottle contained five individually wrapped plastic bags, each of which contained a black tar substance.   The five bags weighed 18.4 grams total.   The black tar substance later tested positive for heroin.

With APD detectives following, the CI returned Lopez to his apartment and then met with the detectives.   The CI gave detectives a plastic baggy that contained approximately 36.9 grams of a black tar substance.

## PROCEDURAL BACKGROUND

On October 23, 2012, the United States charged Aranda-Diaz with six federal crimes, including: (i) Count 1: a violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), alien in possession of a firearm and ammunition; (ii) Count 2: a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession of a firearm and ammunition; (iii) Count 3: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute heroin; (iv) Count 4: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), distribution of heroin; (v) Count 5: a violation of 18 U.S.C. § 924(c), possession and carrying a firearm during and in relation to a drug trafficking crime; and (vi) Count 6: a violation of 8 U.S.C. §§ 1326(a) and (b), reentry of a removed alien.   See Indictment at 1-4, filed October 23, 2013 (Doc. 13).

On May 24, 2013, Aranda-Diaz filed the Motion to Disclose, moving the Court, pursuant to the Fifth Amendment to the United States Constitution, to order the United States to disclose the

CI's identify, or, in the alternative, to conduct a hearing in camera to determine whether the Court should order the CI's identity disclosed.   See Motion to Disclose at 1.   Aranda-Diaz argues that the United States must disclose the CI's identity to afford Aranda-Diaz the ability to defend himself against the distribution charge.   See Motion to Disclose at 2.   Aranda-Diaz concedes that the United States generally has the privilege to withhold the CI's identity, but notes that this privilege does not protect from disclosure when "the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Motion to Disclose at 2 (quoting Roviaro v. United States, 353 U.S. 53, 60-61 (1957))(internal quotations omitted).   Aranda-Diaz asserts that, in determining whether the circumstances require disclosure of the CI's identity, the Court must balance the public interest in protecting information flow against the defendant's right to present a defense, by "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."   Motion to Disclose at 2 (quoting Roviaro v. United States, 353 U.S. at 64)(internal quotations omitted).

Aranda-Diaz argues that, because the CI was directly involved in the drug transaction underlying his case, as opposed to being a "mere tipster," the relevant factors counsel that the Court must order the United States to disclose the CI's identity.   See Motion to Disclose at 2-3 (quoting United States v. Moralez, 908 F.2d 565, 568 (10th Cir. 1990))(internal quotations omitted).   Aranda-Diaz asserts that this case is "nearly on all fours with Roviaro and disclosure is mandated," because the United States, to prove its case, will have to call Lopez, and the CI is then the only person "in a position to amplify or contradict the testimony of 'Jessie.'"   Motion to Disclose at 3.   He contends that, if Aranda-Diaz takes the stand to rebut the United States' charges and, accordingly, rebuts Lopez' testimony, the CI is the only other person who could give an

account of the transaction.  <u>See</u> Motion to Disclose at 3.  Aranda-Diaz asserts that, as an alternative, the Court should hold a hearing *in camera* to decide whether the CI's testimony supports Aranda-Diaz' defense.  <u>See</u> Motion to Disclose at 4 (citing <u>United States v. Moralez</u>, 908 F.2d at 568).

On June 7, 2013, the United States filed its Response to Defendant's Motion to Disclose Confidential Informant (Doc. 38)("Response"), arguing that the Court should not order it to disclose the CI's identity, because the CI is not a material witness.  <u>See</u> Response at 4.  The United States asserts that there is no bright-line rule which requires it to disclose the identity of a CI who played an active role in the investigation:

> The standard for disclosure of confidential informants who play an active rather than passive role in the investigation is not fixed; rather, the court must take into "consideration: (1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." Disclosure of an informant is not required simply because the informant has taken an active role in the criminal transaction.

Response at 5 (internal citations omitted)(quoting <u>Roviaro v. United States</u>, 353 U.S. at 62)(citing <u>United States v. Martinez</u>, 979 F.2d 1424, 1428 (10th Cir. 1992)).   The United States asserts that Circuit Courts of Appeals that have reversed district courts' decision not to require the disclosure of the CIs' identities do so where the CI is the only person "able to support the defense theory or contradict prosecution witnesses," and that Aranda-Diaz' contention that the United States will have to call Lopez to testify, and thus require the CI for rebuttal or impeachment evidence, is unfounded.  Response at 6.  The United States also points out that courts have often refused to require the CIs' identities to be disclosed when the CI played a minimal role in the investigation, which it asserts applies to the CI's minimal role here.   <u>See</u> Response at 6-7.

Second, the United States argues that Aranda-Diaz has not met his burden to demonstrate

that the CI's testimony will be helpful or essential to a fair determination of his offense.  See Response at 7 (citing United States v. Gordon, 173 F.3d 761, 767 (10th Cir. 1999)).  The United States asserts that the Court should reject his argument as speculative, because "Aranda-Diaz has not specifically articulated the defense for which the confidential informant is the only witness to his possession and distribution of heroin to Jessie Lopez."  Response at 8.  The United States points out that it was Lopez, not the CI, who participated in the drug transaction with Aranda-Diaz and represents that, consistent with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the CI does not have any exculpatory evidence as to Aranda Diaz.  See Response at 9.  It argues that, given Aranda-Diaz does not articulate any defense theory for which he believes the CI would be helpful, and has not explained what testimony the CI can offer that will help him in his defense, the Court should deny his request.  See Response at 9-10.  The United States asserts that Aranda-Diaz "only states that the 'CI is the only person who could support [his] defense' and that [he] 'may defend this charge by impeaching Jessie' and providing an alternative explanation of the encounter,'" which the United States contends "is hardly demonstrative of how the CI's testimony is intended to aid in Aranda-Diaz' defense and is speculative at best."  Response at 10 (emphasis in original)(quoting Motion to Disclose at 3).

On June 24, 2013, Aranda-Diaz filed his Reply to Government's Response to Defendant Yuren Aranda-Diaz's Motion to Disclose Confidential Informant.  See Doc. 45 ("Reply").  Aranda-Diaz asserts that the United States' position that it need not call Lopez to testify is almost incredible, because, without him, "the Government's evidence in support of the distribution charged, stripped of inadmissible hearsay, is exceedingly thin."  Reply at 1.  He asserts that, without Lopez, the United States cannot possibly prove that CI obtained heroin from Lopez and that Lopez gave the buy money to Aranda-Diaz.  See Reply at 2.  Aranda-Diaz also asserts that

there are two plausibly innocent scenarios present without Lopez' testimony, and that even without Lopez, the United States must still disclose the CI's identity:

> The Government's evidence without Lopez supports two equally plausible scenarios. First, that the CI purchased heroin from Lopez and Lopez transferred the "buy" money to Mr. Aranda-Diaz for some innocent reason. The second, as the Government theorizes, is that the CI purchased heroin from Mr. Aranda-Diaz with assistance from Lopez. Absent Lopez's testimony, the evidence available to the Government to prove beyond a reasonable doubt that Mr. Aranda-Diaz distributed heroin to the CI through Lopez is woefully lacking. Even if the Government chooses to proceed on the distribution charge without Lopez, and even if such evidence would withstand a Rule 29 motion, the CI directly participated in the alleged transaction and is relevant to a defense theory.

Reply at 2 (footnote omitted).

Aranda-Diaz asserts that the Tenth Circuit requires disclosure of a CI's identity if "the CI's testimony might be relevant to the defendant's case and justice would best be served by disclosure," but if "the information sought would be merely cumulative or where the informer did not participate in the illegal transaction," then disclosure is not required.  Reply at 2 (internal quotations and citations omitted).   Aranda-Diaz argues that the United States' contention that the CI was a minimal participant in the transaction "defies logic," because, given that the CI provided the police an ounce of heroin after "procuring it from either Lopez or Mr. Aranda-Diaz," the CI "was intimately involved in the transaction, not a mere bystander, and the evidence he could provide is not cumulative."   Reply at 3 (citing United states v. Aguilar, 2010 WL 2977708, at *5 (D.N.M. June 28, 2010)(Browning, J.)).   Aranda-Diaz distinguishes the district court cases on which the United States relies for the proposition that the CI was a minimal participant by pointing out that government agents either recorded or participated in the transactions, whereas here government agents did not participate or record it, but only learned about the transaction second-hand through the CI.   See Reply at 3-4.

Aranda-Diaz argues that the United States' contention that he must establish that the CI would be helpful to his defense -- to prove what the CI would say -- "before having access to the CI puts the proverbial cart before the horse."   Reply at 4.   Aranda-Diaz concedes that he "must do more than 'speculate' about the usefulness of an informer's testimony," but asserts that "only 'where it is clear that the informant cannot aid the defense,' is disclosure not required."   Reply at 4 (quoting United States v. Moralez, 908 F.2d at 567; United States v. Sinclair, 109 F.3d 1527, 1538 (10th Cir. 1997)).   He asserts that "[d]isclosure is warranted where the informer's 'possible testimony' is 'highly relevant and might be helpful to the defense.'"   Reply at 4 (emphasis in original)(quoting Roviaro v. United States, 353 U.S. at 63-64).   Aranda-Diaz asserts that the CI's testimony is important and highly relevant, not only for impeachment purposes, but because the CI may testify that he purchased the drugs directly from Lopez and that Lopez then gave the money to Aranda Diaz for some unrelated, legal reason.   See Reply at 5.   Aranda-Diaz contends that the circumstances here are thus distinguishable from the Tenth Circuit's decision in United States v. Sinclair, because the CI's testimony is not cumulative of other evidence.   See Reply at 5-6.

At the hearing, the United States asserted that it does not intend to call either Lopez or the CI as a witness during its case in chief.   See Transcript of Hearing at 122:11-15 (taken July 3, 2013)(Court, Walsh)("Tr.").[1]   The Court asked the United States how it will tell the story about Aranda-Diaz' arrest without statements from the CI, who coordinated the buy with the officers, or without statements from Lopez, who allegedly purchased the heroin from Aranda-Diaz and then gave the drugs to the CI.   See Tr. at 122:16-18 (Court).   The United States responded that it intends to tell the story by talking about what a CI does for officers generally, and then going

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and line numbers.

straight to finding the buy money and drugs in Aranda-Diaz' vehicle.   See Tr. at 122:25-8 (Walsh, Court).

Aranda-Diaz responded that, if the United States did not present testimony from either Lopez or the CI, and without hearsay testimony, he believes the evidence is insufficient to withstand a directed verdict under rule 29 of the Federal Rules of Criminal Procedure after the United States' case in chief, because "if all they're going to have is witnesses that essentially [say] I gave money to this person, that person drove to another place, I followed that [person] and we arrested somebody and there was money and drugs.   There's too many holes there I think for them to overcome that."   Tr. at 123:25-124:12 (Coberly).   In response to the Court's inquiry whether finding Aranda-Diaz in possession of the buy money and heroin was enough to overcome a directed verdict, Aranda-Diaz asserted that, while that evidence may be sufficient for the possession with intent to distribute charge, it is insufficient for the distribution charge.   See Tr. at 124:19-125:6 (Coberly).   Aranda-Diaz contended that, regardless whether the United States decides to proceed with the distribution charge without Lopez' or the CI's testimony, because the CI's testimony is highly relevant to the distribution charge, he is entitled to a court order requiring the United States to identify the CI.   See Tr. 125:11-15 (Coberly).   The Court asked whether he would be entitled to learn the CI's identity if the United States dropped the distribution charge. See Tr. at 125:19-24 (Court).   Aranda-Diaz responded that "if the Government were to dismiss that distribution charge I think I would have a difficult time arguing that the CI is relevant to the possession with intent to distribute charge."   Tr. at 126:11-13 (Coberly).

Aranda-Diaz asserted, however, that, if they're going to keep the distribution charge, the case law supports the Court ordering the United States to disclose the CI's identity:

[A]s it exists right now with the charged crime of distribution, the CI is material

- 9 -

because he's the one that directed the transaction, he purchased heroin, and he either purchased it[] from Jessie Lopez or Mr. Aranda-Diaz.   When you look at the cases that say that the CI is not relevant or material, and that's because the CI did not directly participate in the underlying transaction.   Or if he was there he was a bystander to an undercover agent doing the buy or there was a recording, which we don't have in this case, or he was a tipster, just an anonymous tipster.   And that is not the case.

Tr. at 127:5-15 (Coberly).   He asserted that the CI's involvement in the transaction, for the distribution charge's purposes, counsels that his constitutional right to present a defense significantly outweighs the public's interest in the free flow of information from the CI.   See Tr. at 128:16-84 (Coberly).

The Court asked the United States how it would prove the distribution charge without the CI's or Lopez' testimony.   See Tr. at 129:1-4 (Court).   The United States asserted that Martinez could provide the story without his testimony amounting to hearsay.   See Tr. at 129:5-8 (Walsh). The Court responded that, although the CI's statements to Martinez about his ability to procure heroin may have informed Martinez' state of mind in setting up the buy, it is not sure that a limiting instruction could cure prejudice that would result from the jury taking the statement the truth of those statements' assertion -- that Aranda-Diaz is a drug dealer.   See Tr. at 129:9-16 (Court). The Court also asked the United States whether the purpose of the backstory from Martinez is to offer those statements for the truth of their assertion, because they need the statements to come in to evidence for the truth to prove the distribution charge -- to prove that Aranda-Diaz is truly a drug dealer.   See Tr. at 129:16-19 (Court). The United States responded that it believes that the fact officers found Aranda-Diaz in possession of the buy money that the officers supplied to the CI, combined with the additional heroin that the officers found in Aranda-Diaz' car, is proof enough for the distribution charge.   See Tr. at 129:23-130:2 (Walsh).

The Court then asked the United States whether it intended to ask Martinez about what the

- 10 -

CI told him to set up the story of how the officers came to set up the buy in the first place.   See Tr. at 130:13-15 (Court).   The United States responded that it was intending to ask Martinez to offer that testimony.   See Tr. at 130:16 (Walsh).   The Court responded that it was not sure that a limiting instruction could cure the prejudice of allowing into evidence through Martinez, for non-hearsay purposes, the CI's statement that Aranda-Diaz is a drug dealer, and asked whether the United States could get in the story before the transaction without mentioning the CI .   See Tr. at 130:17-131:5 (Court).   The United States responded:

> I think we can.   I think we can say, there's this buy bust operation that was planned, talk a little bit about informants, how they're used, when money was provided to an informant, the purchase location . . . being fifth and Menaul after an unwitting informant was picked up, no statements yet, detectives see what they see, they do an arrest, and there we go.   And ultimately the ounce is recovered from the informant by Detective Martinez.

Tr. at 131:6-13 (Walsh).   The Court noted that, even by talking about informants generally, and then going into how a CI was used in this case and that the drugs were eventually recovered from that CI, it gets to the point where the United States' reliance on the CI makes the CI particularly relevant and thus requires the Court to order the CI's identity disclosed so that Aranda-Diaz can interview and cross-examine him.   See Tr. at 133:1-4 (Court).   The Court asked the United States whether it would need to mention the CI at all if it dismissed the distribution charge.   See Tr. at 133:13-17 (Court).   The United States responded: "Probably not."   Tr. at 133:18 (Walsh).

The United States asserted, however, that, "just because the informant has taken an active role in the criminal investigation doesn't mandate disclosure," because the case law requires the CI to be relevant to supporting or contradicting another witness' testimony, and Aranda-Diaz has not shown that the CI's testimony will support or contradict any witness the United States or he intends to call at trial.   Tr. at 134:6-135:6 (Walsh).   The United States asserted that speculation

- 11 -

that Lopez provided the drugs to the CI and that Lopez then for some legitimate reason gave that money to Aranda-Diaz is not sufficient to outweigh the public's interest in the continued free flow of information which stems from keeping the CI confidential.   See Tr. at 135:9-14 (Walsh).   The Court asked Aranda-Diaz whether the narrative involving Lopez giving the CI the drugs and then giving Aranda-Diaz the money for an unrelated, legitimate reason is too speculative to serve as the basis upon which the Court orders the United States to disclose the CI's identity.   See Tr. at 136:18-23 (Court).   Aranda-Diaz responded that speculation is all that the law requires to find that a CI's identity should be disclosed, because the Supreme Court in Roviaro v. United States required only that the CI have "possible testimony" about a highly relevant topic to find disclosure warranted. Tr. at 137:1-6 (Coberly).   He added that the case law does not require any more, because a defendant need not divulge the theory of the case before trial.   See Tr. at 137:9-15 (Coberly).   The Court asked Aranda-Diaz how it can find the CI's testimony highly relevant to an important defense or topic if he will not further identify as to what issue he anticipates the CI's testimony will relate.   See Tr. at 137:16-19 (Court).   Aranda-Diaz responded that part of the reason he needs the CI's identity is so that he can interview the CI and then decide on anticipated defense theories.   See Tr. at 137:21-138:2 (Coberly).

The Court asked, given that Aranda-Diaz alternatively requested that the Court hold a hearing in camera, what question he anticipates the Court would ask of the CI during this hearing. See Tr. at 138:17-21 (Court).   Aranda-Diaz responded that, "if the Court were inclined to do that I would -- my inclination would be to submit ex parte questions to the Court."   Tr. at 139:5-7 (Coberly).   The Court asked whether he has any reason to think that there is some relevant information or conduct of which the Court or the parties do not know presently.   See Tr. at 139:11-13 (Court).   Aranda-Diaz responded that he does not have a particular reason to think

there is some present unknown evidence, but that "the big black hole here is how well does the CI know Jessie Lopez?   What was Jessie Lopez getting in return for this?   Had Jessie Lopez ever dealt drugs before?   Maybe Jessie Lopez was a drug dealer and he really . . . didn't want to do that anymore?"   Tr. at 139:14-23 (Coberly).   The Court asked whether Aranda-Diaz would object if the United States offered the background through Martinez, to which Aranda-Diaz responded that he would object.   See Tr. at 140:7-15 (Court, Coberly).   He stated that, while he may not object on evidentiary grounds, he would object to the prejudice to him by allowing a backstory informed by two individuals -- one a CI -- about whom Aranda-Diaz was precluded from knowing.   See Tr. at 140:11-21 (Coberly).

## LAW REGARDING INFORMANT'S IDENTITY

The government has a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. at 59.   "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.   The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."   Roviaro v. United States, 353 U.S. at 59.   "Anonymity of informants encourages communications to law enforcement officers."   Usery v. Local Union 720, Laborers' Int'l Union of N. Am., AFL-CIO, 547 F.2d 25, 527 (10th Cir. 1977).   Cf. United States v. Brantley, 986 F.2d 379, 383 (10th Cir. 1993)("Nor must the government supply the defendant with information about an informer when the individual introduces suspected traffickers to narcotics agents."); United States v. Ortiz, 804 F.2d 1161, 1166 (10th Cir. 1986)("We have ruled previously that the

government is not required to supply information about an informer to a defendant when the informer merely provides the initial introduction.").

The privilege is not absolute, however, and where "the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."   Roviaro v. United States, 353 U.S. at 60-61.   The Supreme Court in Roviaro v. United States stated that the desirability of calling the informant as a witness, or at least interviewing the informant in advance of trial, is a matter for the accused, rather than the government, to decide.   See 353 U.S. at 64.   When an informant is a "participant in and a material witness to" the alleged criminal transaction, the disclosure of his or her identity is sometimes required.   Roviaro v. United States, 353 U.S. at 65.   The standard for disclosure of confidential informants who play an active, as opposed to a passive, role in the investigation is not fixed; rather, the court must take into "consideration: (1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." Roviaro v. United States, 353 U.S. at 62.   In Roviaro v. United States, for example, the informant "helped to set up the criminal occurrence and had played a prominent part in it . . . . [H]is testimony might have disclaimed entrapment."   353 U.S. at 64.   The Supreme Court found that the district court's failure to order disclosure of the informant's identity "in the face of repeated demands by the accused for his disclosure" was prejudicial error.   353 U.S. at 64-65.

"The Tenth Circuit's take on this analysis is well-known."   United States v. Padilla, No. CR 09-3598 JB, 2010 WL 4337819, at *7 (D.N.M. Sept. 3, 2010)(Browning, J.).   The Tenth Circuit's take on the analysis places the burden on the defendant to show that the informant's possible aid to the defendant outweighs the public's interest in protecting the flow of information, which the confidentiality of the informant's identity facilitates:

> The disclosure of a confidential informant's identity involves balancing the public interest in protecting the flow of information in a manner necessary for effective law enforcement against an individual's right to prepare his defense.   In making the determination as to whether disclosure is necessary, the court must consider the particular circumstances of the case, including the crime charged, the possible defenses, and the significance of the informer's testimony.   Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure.   A defendant seeking disclosure has the burden of proof, and we review the district court's decision for an abuse of discretion.

United States v. Sinclair, 109 F.3d at 1538 (internal citations and quotation marks omitted).   See

United States v. McKenzie, No. CR 08-1669 JB, 2010 WL 597971, at **3-4 (D.N.M. Jan. 28,

2010)(Browning, J.)(quoting United States v. Sinclair, 109 F.3d at 1538.   "[T]he defendant must

present more than mere speculation about the possible usefulness of an informant's testimony."

United States v. Moralez, 908 F.2d 565, 567 (10th Cir. 1990).   In sum,

> [a] defendant may obtain the identity and whereabouts of an informer if his testimony might be relevant to the defendant's case and justice would be best served by disclosure[, but d]isclosure of an informant is not required . . . where the information sought from the informer would be merely cumulative, or where the informant did not participate in the transaction in question.

United States v. Reardon, 787 F.2d 512, 517 (10th Cir. 1986)(internal citations omitted).   See

United States v. Moralez, 908 F.2d at 567.

The Court has required the United States to disclose a CI's identity where the CI "was

integrally involved in the criminal transaction[,] . . . observed the criminal transaction[,] and was

not a mere bystander."   United States v. Aguilar, 2010 WL 2977708, at *5.   The defendant,

Aguilar, was one of three defendants charged with a conspiracy to traffic in cocaine, stemming

from a transaction between his two co-defendants and a government CI.   See 2010 WL 2977708,

at *1.   In relation to the first factor that the Supreme Court identified in Roviaro v. United States --

the crime charged -- the Court noted that "the crimes charged in this case are relatively egregious --

conspiracy, possession with intent to distribute cocaine, and possessing a gun while committing

the other crimes."   2010 WL 2977708, at *6.   As to the second and third Roviaro v. United States

factors -- the possible defenses and the possible significance of the informer's testimony -- it

appeared that the defendant intended to argue that he did not know his alleged co-conspirator

possessed cocaine or that the drug transaction was going to occur, and the Court found that, given

the CI was present during the crime, the CI's testimony "could be highly significant" to the

defenses:

> The [CI] was present in the car with Mirabal, Aguilar, and Garner, and would be in
> a unique position to testify to what conversations, if any, occurred in the car and
> whether Aguilar took part in them. After the four individuals arrived at the [CI]'s
> residence, again, the [CI] would be in a unique position to testify whether it
> appeared that Aguilar had any idea that the bag Mirabal retrieved from the car
> contained cocaine. Once the three Defendants and the [CI] were inside the [CI]'s
> residence, the [CI] was able to observe Aguilar's demeanor and whether he actively
> participated in the drug transaction. The [CI] could testify as to where Aguilar was
> and what he did while the [CI] made the alleged drug transaction with Mirabal.

2010 WL 2977708, at *6.   Additionally, the Court noted that the CI might provide relevant

information no other witness could, because Aguilar's "alleged co-conspirators might try to push

blame away from themselves and on to Aguilar, and Villegas, a law-enforcement officer, might

tend to be biased toward the United States."   2010 WL 2977708, at *6.   The Court thus granted

Aguilar's motion and ordered the United States to disclose the CI's identity.   See 2010 WL

2977708, at *6.   The Court also incorporated the following protective order in its decision:

> Ms. Johnson[, Aguilar's attorney,] is ordered that she will not disclose the identity
> of the CI to anyone -- except the defense investigator she retains in this case --
> unless and until she seeks further leave of the Court. Any information that the
> United States provides to Ms. Johnson regarding the CI may be discussed only with
> the investigator and the Assistant United States Attorneys who disclosed it.
> Finally, any information the United States provides must be returned once this case
> is closed. These requirements should minimize the danger, if any, to the CI and
> perhaps permit law-enforcement to use him in a covert capacity again in the future,
> if they so desire.

2010 WL 2977708, at *6.

<u>ANALYSIS</u>

If the United States continues to prosecute Aranda-Diaz for distribution, the Court will order the United States to disclose the CI's identity.  The multiple crimes with which Aranda-Diaz is charged -- including the distribution count -- are serious.  The CI was directly involved, and was not a mere bystander, in the transaction from which Aranda-Diaz' distribution charge stems, and, therefore, is in a position to provide relevant information on an important issue that is unavailable from other witnesses, including information about Lopez.  Given that one possible defense Aranda-Diaz may raise is that Lopez, and not Aranda-Diaz, provided the drugs to the CI, it is not clear that "the informant cannot aid the defense" in defending against the distribution charge.  <u>United States v. Sinclair</u>, 109 F.3d at 1538.  On balance, therefore, the Court concludes that Aranda-Diaz' right to present his defense against the distribution charge outweighs the public's interest in facilitating the free flow of information which the CI's confidentiality facilitates.  The Court will, however, incorporate a protective order into this Memorandum and Opinion Order, to attempt to protect the public's interest and the CI's safety to the extent that protection is possible.  Additionally, should the United States dismiss the distribution charge against Aranda-Diaz, the Court will not order the United States to disclose to Aranda-Diaz' attorney the CI's identity.

## I.      THE CRIMES CHARGED -- INCLUDING THE DISTRIBUTION CHARGE -- ARE SERIOUS, AND THE DISTRIBUTION CHARGE WEIGHS IN FAVOR OF <u>REQUIRING THE UNITED STATES TO DISCLOSE THE CI'S IDENTITY.</u>

In relation to the first <u>Roviaro v. United States</u> factor -- the crimes charged -- the crimes with which Aranda-Diaz is charged are analogous to those with which Aguilar was charged in

United States v. Aguilar, and which the Court found supported requiring the United States to disclose the CI's identity.   In United States v. Aguilar, the Court classified as "relatively egregious" the three crimes with which Aguilar was charged: "conspiracy, possession with intent to distribute cocaine, and possessing a gun while committing the crimes."   2010 WL 2977708, at *6.   And while Aranda-Diaz is similarly charged with two drug-related offenses here, he is charged with three firearm related offenses -- including possessing a gun while committing the crimes -- and also an immigration offense.   See Indictment at 1-4.   The crimes with which Aranda-Diaz is charged are thus as serious or more than those with which Aguilar was charged in United States v. Aguilar.   The Court therefore concludes that the first Roviaro v. United States factor weighs in Aranda-Diaz' favor, and counsels that the Court order the United States to disclose the CI's identity.

**II.     THE POSSIBLE DEFENSES AND THE POSSIBLE SIGNIFICANCE OF THE INFORMANT'S TESTIMONY IN RELATION TO THE DISTRIBUTION CHARGE WEIGH IN FAVOR OF REQUIRING THE UNITED STATES TO DISCLOSE THE CI'S IDENTITY, AND, THEREFORE, IF THE UNITED STATES CONTINUES TO PROSECUTE ARANDA-DIAZ FOR DISTRIBUTION, THE COURT WILL ORDER THE UNITED STATES TO DISCLOSE THE CI'S IDENTITY.**

The Court's discussion of the second and third Roviaro v. United States factors -- the possible defenses and the possible significance of the informant's testimony -- in United States v. Aguilar also provide analogies to this case, and the Court finds that the extent of the CI's direct involvement in the circumstances underlying Aranda-Diaz' distribution charge counsel that the Court order the United States to disclose the CI's identity.   Because the distribution charge is the only charge for which the CI may provide information relevant to the crime not available from other witnesses, the Court concludes that Aranda-Diaz' need to defend against the distribution charge warrants ordering the United States to disclose the CI's identity.

In United States v. Aguilar, Aguilar intended to assert as a defense that "he was unaware that the drug transaction was going to occur and that he did not know that Mirabal [a co-defendant] was in possession of cocaine." 2010 WL 2977708, at *6. Similarly here, Aranda-Diaz suggests that one defense he may raise at trial is that it was Lopez and not him who distributed the heroin to the CI, and that Lopez thereafter provided to him the buy money for a legitimate, unrelated reason. The Court in United States v. Aguilar reasoned that the CI's testimony could be "highly relevant" to this defense, because the CI was present throughout the events leading up to and during the transaction, which put him in a "unique" position to testify about any conversations that may appear as if Aguilar knew about the cocaine. 2010 WL 2977708, at *6.

Although the CI was not present with Aranda-Diaz leading up to or during the transaction, he was present with Lopez. Whereas the CI in United States v. Aguilar was in a unique position to testify whether Aguilar knew about the drugs, the CI here is in the unique position to testify whether and how much Lopez knew about drug distribution. If Lopez communicated a wealth of knowledge about heroin distribution during the trip to Aranda-Diaz' house, or even about an intention to give money to Aranda-Diaz, it makes reasonable, rather than speculative, Aranda-Diaz' defense, and thus makes the CI's knowledge and testimony possibly "highly relevant" to Aranda-Diaz' proposed defense. 2010 WL 2977708, at *6.

The United States contends, however, that, given that the CI did not witness the transaction, but witnessed Lopez get into Aranda-Diaz' car only, Aranda-Diaz fails to satisfy his burden to show how the CI's testimony is intended to aid his defense. The United States cites to the Tenth Circuit's opinion in United States v. Sinclair to support its contention. United States v. Sinclair is distinguishable from Aranda-Diaz' request, however, as the defendant in that case did "not suggest that the confidential informants could provide direct evidence regarding the central

- 19 -

issue in his perjury trial," but rather asked for discovery about the informants for impeachment

purposes to impeach the government's witnesses "on the basis of their criminal activity and drug

abuse."   United States v. Sinclair, 109 F.3d at 1538.   Here, Aranda-Diaz seeks to discover the

CI's identity so that he can learn whether the CI possibly has information related to whether Lopez

distributed the heroin to the CI rather than to Aranda-Diaz.   Given that Aranda-Diaz is charged

with heroin distribution, Aranda-Diaz has thus "suggest[ed] that the [CI] could provide direct

evidence regarding the central issue in his . . . trial."   United States v. Sinclair, 109 F.3d at 1538.

Moreover, the CI's testimony is significant to an important issue -- the distribution charge

-- as the CI may be in a unique position to "amplify or contradict the testimony of government

witnesses," who testify that it was Aranda-Diaz, and not Lopez, who distributed heroin.   Roviaro

v. United States, 353 U.S. at 64.   The United States represents that it does not intend to call Lopez,

and Aranda-Diaz' contention that he needs the CI for purposes of contradicting Lopez' testimony

is thus unfounded.   As the Court pointed out in United States v. Aguilar, however, the CI may be

in a unique position to provide unbiased, or less-biased, testimony compared with other possible

government witnesses.   The Court in United States v. Aguilar noted that Aguilar's "alleged

co-conspirators might try to push blame away from themselves and on to Aguilar, and Villegas, a

law-enforcement officer, might tend to be biased toward the United States."   2010 WL 2977708,

at *6.   Similarly, if Lopez testifies for the United States at trial, he has an interest in shifting any of

the blame in relation to the heroin that the CI provided Martinez to Aranda-Diaz.   Any officers

involved might also tend to be biased toward the United States and against Aranda-Diaz.   The CI

here, like the CI in United States v. Aguilar, thus has potential "testimony [that] is not available

from any other witness."   2010 WL 2977708, at *6.   Because the CI possibly has highly relevant

information to a central issue, which is not "testimony . . . [that] would be cumulative at best,"

United States v. Sinclair, 109 F.3d at 1538, the Court concludes that the second and third Roviaro v. United States factors weigh in Aranda-Diaz' favor, and counsels that the Court order the United States to disclose the CI's identity.

The Roviaro v. United States factors, in light of the heroin distribution charge Aranda-Diaz faces, thus weigh in favor of requiring the United States to disclose the CI's identity.  The circumstances show that "it is not at all 'clear that the informant cannot aid the defense'" against the distribution charge.  United States v. Aguilar, 2010 WL 2977708, at *2 (quoting United States v. Sinclair, 109 F.3d at 1538).  Accordingly, the Court will require the United States to disclose the CI's identity to Aranda-Diaz' attorney as long as the United States continues to prosecute the distribution charge.

## III.   THE COURT WILL INCORPORATE A PROTECTIVE ORDER.

Because the United States continues to pursue the distribution charge against Aranda-Diaz, however, the Court must follow the law and conclude that Aranda-Diaz' Fifth Amendment rights beat out the public's interest.   Nevertheless, as the Court did in United States v. Aguilar, the Court here will incorporate a protective order into this Memorandum and Opinion Order to attempt protect the public's interest and the CI's safety to the extent possible.   Mr. Coberly is ordered that he will not disclose the CI's identity to anyone -- except for the defense investigator he retains in this case -- without the Court's leave to do so.   Any information that the United States provides to Mr. Coberly in relation to the CI may be discussed only with the investigator and the Assistant United States Attorneys who disclose it.   Finally, Mr. Coberly must return any information that the United States provides upon the close of this case.

**IV.    IF THE UNITED STATES DISMISSES THE DISTRIBUTION CHARGE AGAINST ARANDA-DIAZ, THE SECOND AND THIRD <u>ROVARIO V. UNITED STATES</u> FACTORS NO LONGER WEIGH IN FAVOR OF REQUIRING THE UNITED STATES TO DISCLOSE THE CI'S IDENTITY, AND THE COURT WILL DENY ARANDA-DIAZ' REQUEST THAT THE UNITED STATES DO SO.**

Importantly, whether the CI received the heroin from Aranda-Diaz or Lopez is a central issue to the distribution charge only.   Without the distribution charge against Aranda-Diaz, the CI's testimony about Lopez, and the CI's testimony generally to support or contradict the government's witnesses, becomes unimportant in light of the substantial evidence in Aranda-Diaz' possession when the officers arrested him.   Without the distribution charge, given the remaining five charges -- the three firearm-related charges, the immigration charge, and the possession with intent to distribute charge -- the analogies between this case and <u>United States v. Aguilar</u> become tenuous in relation to any important issues in the case, and Aranda-Diaz' case then becomes more analogous to <u>United States v. Sinclair</u>.   Given the physical evidence found when the officers arrested Aranda-Diaz, without the distribution charge, although the charges Aranda-Diaz faces remain serious, "the possible significance of the informer's testimony" as it relates to the remaining charges is not much significance.   <u>Roviaro v. United States</u>, 353 U.S. at 62.

In <u>United States v. Sinclair</u>, because "the confidential informants could [not] provide direct evidence regarding the central issue in his perjury trial -- whether Mr. Sinclair lied," but would provide impeachment testimony that "would be cumulative at best," the Tenth Circuit held that the district court properly denied the defendant's request to be provided the informants' identities. 109 F.3d at 1538.   Here, the officers found a handgun on the driver's seat in Aranda-Diaz' Suburban, found five baggies which contained heroin, and Aranda-Diaz told officers he was a felon and in the country illegally.   Thus, there appears to be substantial direct evidence on the essential issues that the United States charges other than the distribution charge.   Any testimony

that the CI can offer about his knowledge whether Lopez dealt drugs or whether Lopez possibly owed Aranda-Diaz, given the drugs and guns Aranda-Diaz possessed, would thus not "provide direct evidence regarding the central issue[s]" for the possession with intent to distribute, gun, or immigration charges against Aranda-Diaz.   United States v. Sinclair, 109 F.3d at 1538.   Indeed, Aranda-Diaz conceded at the hearing that, while the CI's testimony is highly relevant to the distribution charge, "if the Government were to dismiss that distribution charge I think I would have a difficult time arguing that the CI is relevant to the possession with intent to distribute charge."   Tr. at 126:11-13 (Coberly).

The Court concludes that, whatever relevance the CI's testimony may have on the non-distribution charges, they do not outweigh the public's interest in keeping the CI's identity confidential.   The CI's testimony "would be [largely] cumulative" in relation to the important remaining issues, and the "need for disclosure" would thus no longer "outweigh[] the public's need to protect the informant's identity."   United States v. Sinclair, 109 F.3d at 1538.   Without the distribution charge, therefore, the Roviaro v. United States factors do not weigh in favor of requiring the United States to disclose the CI's identity.   Accordingly, if the United States dismisses the distribution charge against Aranda-Diaz, the Court will not order the United States to disclose the CI's identity.

**IT IS ORDERED** that the Defendant Yuren Aranda-Diaz's Motion to Disclose Confidential Information, filed May 24, 2013 (Doc. 38), is granted in part and denied in part.   If Plaintiff United States of America continues to prosecute Defendant Yuren Aranda-Diaz for distribution, the United States should disclose the identity of the confidential informant to Todd A. Coberly.   Mr. Coberly may disclose the CI's identity to his retained defense investigator only. Those persons to whom Mr. Coberly makes a disclosure of the CI's identity should not disclose

- 23 -

that information to anyone else without further leave of the Court.   If, however, the United States

dismisses the distribution charge against Aranda-Diaz, the Court will not order the United States to

disclose the CI's identity.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Kenneth J. Gonzales
    United States Attorney
David M. Walsh
Novaline Wilson
    Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Todd A. Coberly
Coberly & Attrep, LLLP
Santa Fe, New Mexico

        *Attorneys for the Defendant*