**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                    No. CR 12-2686 JB

YUREN ARANDA-DIAZ,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the United States' Motion in Limine to Exclude Evidence of Defendant's State of Mind, filed December 14, 2012 (Doc. 22)("Motion in Limine"). The Court held a hearing on July 3, 2013. The primary issues are whether the Court should, in this prosecution under 8 U.S.C. § 1326(a) and (b), exclude evidence: (i) that Defendant Yuren Aranda-Diaz was not aware that he entered the United States of America illegally; (ii) that Aranda-Diaz was under the mistaken belief that he was authorized to enter the United States; (iii) that Aranda-Diaz was not aware of his prior deportation when he entered the United States; and (iv) that Aranda-Diaz returned for a reason. Because Aranda-Diaz' motive is not an element of the offense with which he is charged, the Court will grant the Motion in Limine.

**FACTUAL BACKGROUND**

On October 2, 2012, law enforcement found Aranda-Diaz in Bernalillo County in the State and District of New Mexico when they arrested him as a result of an undercover Albuquerque Police Department drug bust operation. Immigration records show that Aranda-Diaz had been deported from the United States on January 28, 2011. See Motion in Limine at 2. Aranda-Diaz is charged in a six-count indictment for felon and illegal alien in possession of a firearm, drug trafficking, re-

entry of a removed alien, and possession of a firearm in furtherance of a drug trafficking crime.  <u>See</u>

Motion in Limine at 2.

## PROCEDURAL BACKGROUND

On July 3, 2013, Plaintiff United States of America  filed its Motion in Limine.  <u>See</u> Doc.

40.  The United States moves the Court for an order in limine prohibiting Aranda-Diaz from

mentioning or putting forth four contentions in any manner in the jury's presence: (i) that Aranda-

Diaz was not aware that he entered the United States illegally; (ii) that Aranda-Diaz was under the

mistaken belief that he was authorized to enter the United States; (iii) that Aranda-Diaz was not

aware of his prior deportation when he entered the United States; and (iv) that Aranda-Diaz returned

for a reason.  The United States argues that evidence of Aranda-Diaz' state of mind or mistaken

beliefs is not admissible evidence at trial, because such evidence is not relevant to Aranda-Diaz'

guilt or innocence, as it is not relevant to the crime's elements.  <u>See</u> Motion in Limine at 2-3.

Aranda-Diaz did not file a response to the Motion in Limine.  At the July 3, 2013, hearing,

the Court inquired whether, given that he did not file a response, he does not oppose the Motion in

Limine.  <u>See</u> Transcript of  at 2:23-3:5 (taken July 3, 2013)(Court)("Tr.").[1]  Aranda-Diaz responded

that he objects only to the fourth grounds of the United States' Motion in Limine -- asking that the

Court preclude mention of any reason why Aranda-Diaz returned to the country -- because he asserts

that he "has a right to present a duress defense[,] and if he were[,] I think at that point reasons for

returning would be admissible."  Tr. at 3:6-15 (Coberly).  The United States responded that,

although it would have to do some additional research, it would oppose offering any evidence of

Aranda-Diaz' reason for coming to the country in pursuit of a duress defense.  <u>See</u> Tr. at 3:18-21

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and line numbers.

(Walsh).  It asserted that the United States Court of Appeals for the Tenth Circuit has narrowed the duress defense's application, and that it does not believe it fits the circumstances surrounding the drug crimes with which Aranda-Diaz is charged.  <u>See</u> Tr. at 4:2-7 (Walsh).  The Court asked whether Aranda-Diaz would agree to granting the Motion in Limine in full, and to exclude all the evidence which the United States asks the Court to exclude, but order Aranda-Diaz to provide the United States notice if he intends to raise the duress defense so that the United States can renew its objection at that time.  <u>See</u> Tr. at 4:8-14 (Court).  Aranda-Diaz agreed to the Court's proposal to grant the Motion in Limine at the present time.  <u>See</u> Tr. at 4:15 (Coberly).

## LAW REGARDING RELEVANCY OF EVIDENCE

Relevant evidence is evidence that has a tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Irrelevant evidence, or that which does not make a fact of consequences more or less probable, is inadmissible.  <u>See</u> Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible.").  "Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  <u>United States v. Goxcon-Chagal</u>, 885 F. Supp. 2d 1118, 1162 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).

## LAW REGARDING ILLEGAL REENTRY

The crime of entering the United States after deportation, in violation of 8 U.S.C. § 1326(a)(1) and (2), has four elements: (i) the defendant was an alien at the time he or she was found in the United States as alleged in the indictment; (ii) the defendant had been deported or removed previously from the United States; (iii) thereafter the defendant intentionally entered the United States and the defendant was found in the United States; and (iv) the defendant had not

received the consent of the appropriate authority to apply for readmission to the United States since the time of his or her previous deportation.  See 8 U.S.C. § 1326(a)(1), (2); Tenth Circuit Pattern Jury Instructions Criminal 2.05, at 81 (2005)(modified).[2]

Section 1326 of Title 8 of the United States Code describes a crime of general intent and not one of specific intent.  See United States v. Hernandez-Hernandez, 519 F.3d 1236, 1239 (10th Cir. 2008); United States v. Martinez-Morel, 118 F.3d 710, 713 (10th Cir. 1997).  To secure a conviction, the United States must show only that the defendant's act, i.e., his or her entry or presence in the United States, was intentional.  See United States v. Hernandez-Hernandez, 519 F.3d at 1239; United States v. Martinez-Morel, 118 F.3d at 713.  As the Tenth Circuit has stated, "the only intent the government must prove is the general intent to do the prohibited act, to-wit enter." United States v. Martinez-Morel, 118 F.3d at 712 (internal quotations and citations omitted).  See United States v. Sierra-Ledesma, Nos. 10-3066, 10-3067, 2011 WL 2152076, at *6 (10th Cir. Jun 2, 2011)("As our discussion makes clear, we have long held that to secure a conviction under Section 1326's found in provision, the Government must prove the defendant acted only with the intent to do the act of entering the country.")(internal quotation marks and citations omitted).  "'[T]he intent to do

---

[2] In United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321 (D.N.M. Aug. 6, 2011)(Browning, J.), the Court noted that the United States Court of Appeals for the Tenth Circuit's decision in United States v. Sierra-Ledesma, 645 F.3d 1213 (10th Cir. 2011), counseled the Court to modify the Tenth Circuit's Pattern Jury Instruction for illegal reentry:

> The Court has modified the uniform jury instructions of the United States Court of Appeals for the Tenth Circuit by adding the word "intentionally."  And because it does not make sense to talk about the defendant being intentionally "found," the Court has made "entered" and "was found" conjunctive rather than disjunctive.  The Court believes that these changes are needed to comply with the Tenth Circuit's recent opinion in United States v. Sierra-Ledesma.

United States v. Gutierrez-Castro, 2011 WL 3503321, at *1 n.1.

the act of entering the country' . . . will suffice to support a conviction under Section 1326's provision."  United States v. Hernandez-Hernandez, 519 F.3d at 123 (quoting United States v. Martinez-Morel, 118 F.3d at 717).  The United States need not prove that the defendant had an intent to break the law -- whether characterized as specific intent or general criminal intent.  See United States v. Miranda-Enriquez, 842 F.2d 1211, 1212-13 (10th Cir. 1988).

In United States v. Martinez-Morel, the Tenth Circuit held that documentary and testimonial evidence of the defendant's belief that he was not deported was not relevant, and thus affirmed a district court's exclusion of such evidence.  See 118 F.3d at 713-14.  The Tenth Circuit held that "the defendant's belief about whether he was deported is not 'of consequence to the determination of the action.'" 118 F.3d at 713 (citing Fed. R. Evid. 401).  That a defendant was unaware of his illegal status in the United States or that he was unaware of his prior deportation is therefore not a defense to the crime of illegal re-entry.

In United States v. Sierra-Ledesma, the Tenth Circuit held:

> [T]he district court correctly refused to instruct the jury it must find Defendant possessed any intent as to the alienage, deportation, or authorization elements of Section 1326.  But, our precedent dictates [the district court] did err in refusing to instruct the jury that the Government must prove Defendant acted with the limited "intent to do the act of entering the country."

645 F.3d at 1222 (citations omitted).  The Tenth Circuit noted that it has "long held that to secure a conviction under Section 1326's 'found in' provision, the Government must prove the defendant acted only with the intent to do the act of entering the country."  645 F.3d at 1221 (internal quotations marks omitted).  It stated: "Neither the Government nor Defendant have provided any persuasive reason to reconsider that longstanding conclusion."  645 F.3d at 1221-22.  The Tenth Circuit concluded: "The district court should have made clear to the jury that the Government must prove beyond a reasonable doubt that Defendant reentered the United States with the intent to do

-5-

so in order to find him guilty of Section 1326's 'found in' offense."  645 F.3d at 1223.

Moreover, a defendant's good-faith belief that he was entitled to enter the United States is not a defense.  See United States v. Miranda-Enriquez, 842 F.2d at 1213.  Other United States Courts of Appeal addressing this question have reached the same interpretation of 8 U.S.C. § 1326. See, e.g., United States v. Champegnie, 925 F.2d 54, 55 (2d Cir. 1991)(per curiam)("[A] good faith or mistake defense does not exist under Section 1326."); United States v. Espinoza-Leon, 873 F.2d 743, 746 (4th Cir. 1989)(concluding that only general intent is required for a conviction under 8 U.S.C. § 1326 and that mistaken belief that defendant was allowed to re-enter country was thus not grounds for acquittal); United States v. Pena-Cabanillas, 394 F.2d 785, 790 (9th Cir. 1968)(same), abrogated on other grounds by United States v. Smith-Baltiher, 424 F.3d 913, 920 (9th Cir. 2005). For some time, the opposite result prevailed in the United States Court of Appeals for the Seventh Circuit.  See United States v. Anton, 683 F.2d 1011, 1014-17 (7th Cir. 1982)(holding that intent to reenter the United States without permission was required to violate 8 U.S.C. § 1326).  In 2001, however, the Seventh Circuit overruled United States v. Anton and brought Seventh Circuit case law in line with the other circuits.  See United States v. Carlos-Colmenares, 253 F.3d 276, 278 (7th Cir. 2001).

Additionally, an alien who unlawfully reenters the United States is subject to criminal liability "regardless of the underlying motivation for such illegal entry."  United States v. Hernandez-Baide, 392 F.3d 1153, 1158 (10th Cir. 2004), judgment vacated by 544 U.S. 1015 (2005), opinion reinstated by 146 F. App'x 302 (10th Cir. 2005)(citing United States v. Martinez-Morel, 118 F.3d at 715-16).  As a result, the Tenth Circuit has held that a defendant's reason for reentering is not an element of § 1326:

[Section] 1326(a) is a regulatory measure with no express *mens rea* element or

Congressional intent to include a *mens rea* element to be proven by the government for conviction.    "Our determination is consistent with the Supreme Court's conclusion that regulatory statutes, silent with respect to mens rea, "impose a form of strict liability," and an inference "Congress did not intend to require proof of *mens rea* to establish an offense."

United States v. Hernandez-Baide, 392 F.3d at 1158 (quoting United States v. Martinez-Morel, 118 F.3d at 715-17; and citing Staples v. United States, 511 U.S. 600, 606 (1994); United States v. Gutierrez-Gonzalez, 184 F.3d 1160, 1165 (10th Cir.1999)).    Accord United States v. Hernandez-Hernandez, 519 F.3d at 1240.

The Court has previously granted a motion in limine in which the United States sought to exclude from an illegal reentry case evidence of the defendant's state of mind, including "whether he knew he had been deported, his reasons for coming back to the United States, whether he was aware that he entered the United States illegally, and his beliefs about whether he was authorized to reenter the United States."  United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *4 (D.N.M. Aug. 6, 2011)(Browning J.).  In light of the Tenth Circuits recent opinion in United States v. Sierra-Ledesma, in which it addressed 8 U.S.C. § 1326's required mental state, and the United States' position that United States v. Sierra-Ledesma did not change the law in this area, the Court concluded that the only affect United States v. Sierra-Ledesma had is that there is some level on intent required, and that the defendant's mental state is thus not wholly irrelevant:

> At the hearing, the United States represented that it did not believe United States v. Sierra-Ledesma affected its motion in limine.  United States v. Sierra-Ledesma has not changed the Tenth Circuit's precedent which held that, to secure a conviction under Section 1326's "found in" provision, the United States must prove the defendant acted only with the intent to do the act of entering the country.  See 645 F.3d at 1221-23.
>
> At the same time, United States v. Sierra-Ledesma does not appear to have changed Tenth Circuit law that the defendant's reasons for returning, motive, and beliefs about the law are irrelevant, so the Court largely agrees with the United States that United States v. Sierra-Ledesma does not affect its motion in limine.  The only

sense in [which] it has any effect is that the defendant's mental state is not completely irrelevant.  The United States must still prove the defendant's general intent to enter the United States.  At the hearing, the parties discussed a new case from the Supreme Court of the United States.  The parties did not, however, direct the Court's attention to which case they were discussing, and the Court has not located a recent Supreme Court case on this subject.  For purposes of this motion, the Court uses <u>United States v. Sierra-Ledesma</u> as the latest word on this subject.

The Court noted that "the Court may not be able to preclude all evidence of Gutierrez-Castro's mental state," but that "the range of permissible evidence is narrow."   2011 WL 3503321, at *4.  The Court excluded under rules 401 and 402 "[a]ll evidence, proffers, or statements made by Gutierrez-Castro relating to his motives, beliefs about deportation, or reasons for returning," stating that said evidence is "not relevant to the determination of his guilt," and allowed him to offer "only evidence that he did not intend to enter the United States."  2011 WL 3503321, at *4.  The Court ordered:

> The Court prohibits Defendant Salvador De Jesus Gutierrez-Castro from mentioning or putting forth in any manner in the jury's presence evidence: (i) that Gutierrez-Castro was not aware that he entered the United States illegally; (ii) that Gutierrez-Castro was under the mistaken belief that he was authorized to enter the United States; (iii) that Gutierrez-Castro was not aware of his prior deportation when he entered the United States; or (iv) that Gutierrez-Castro returned for a reason.

2011 WL 3503321, at *4.

## LAW REGARDING COERCION AND DURESS

The affirmative defense of coercion or duress requires the defendant to demonstrate the following:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) that defendant had no reasonable, legal alternative to violating the law, a chance

both to refuse to do the criminal act and also to avoid the threatened harm; and

(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

United States v. Butler, 485 F.3d 569, 572 (10th Cir. 2007)(quoting United States v. Vigil, 743 F.2d 751, 755 (10th Cir. 1984))(internal quotations and alterations omitted).  If all four factors are established, "the defense is available only so long as all of those factors continue to exist."  United States v. Butler, 485 F.3d at 572.  A defendant is entitled to a jury instruction on the duress or coercion defense only if the evidence or "the testimony given or proffered . . . as to each element of the defense" is sufficient, "if a jury finds it to be true," to "support an affirmative defense."  United States v. Butler, 485 F.3d at 572 (internal quotations omitted)(quoting United States v. Bailey, 444 U.S. 394, 415 (1980)).

To satisfy the first element of a coercion or duress defense, the defendant must show that the imminent danger persisted throughout the duration of the criminal violation.  In United States v. Butler, for instance, where the defendant was charged with illegally possessing a firearm, the Tenth Circuit noted that "the imminent danger must persist throughout the possession."  485 F.3d at 573. To satisfy the third element of a coercion or duress defense, the defendant must demonstrate that he or she had "no reasonable, legal alternatives to possess[ion]."  485 F.3d at 576.

The Court has previously found that a defendant could not meet a duress defense's third element -- that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm -- where the defendant had several opportunities throughout the violation to "seek assistance from law-enforcement authorities." United States v. Elliott, No. CR 09-0749 JB, 2010 WL 3086325, at *7 (D.N.M. July 16, 2010)(Browning, J.).  In United States v. Elliot, a Federal Bureau of Investigation ("FBI") special

agent arrested the defendant, Theresa Elliot, at the train station in Albuquerque for possession with

intent to distribute 1.47245 kilograms of liquid phencyclidine ("PCP"). 2010 WL 3086325, at *1.

Elliot pleaded guilty, and at her sentencing sought a downward departure under § 5K2.12 of the

United States Sentencing Guidelines for coercion or duress, in which "circumstances not amounting

to a complete [coercion or duress] defense" allow departure. 2010 WL 3086325, at *7 (internal

quotations omitted)(quoting U.S.S.G. § 5K2.12). Elliot asserted that she carried the drugs on her

train, because her boyfriend Mr. Saunders, who she "was in an abusive relationship with," arrived

at her house with friends and asked her to go on a trip with them, and she "got in the car and went,

because I was afraid of him." 2010 WL 3086325, at 2. In her plea agreement, she provided the

narrative of her arrival at the train station of Albuquerque, including how duress forced her to carry

the drugs:

> We arrived in Arizona . . . and then proceeded to drive to California, where they had
> already purchased two hotel rooms in my name. He and I went into one of the rooms
> and I asked him what was going on. He threw a large roll of money on the bed and
> told me not to worry about it, the less I knew, the better off I would be. He and his
> friends left me at the hotel for most of that day. The next morning they left again .
> . . and . . . came back [with] containers of something they called "Wet." . . . I did not
> know until the Federal Agents told me that the liquid substance was liquid PCP. He
> [the man] told me that he was buying a train ticket and wanted me to take the drug
> from there to Cleveland. I told him I was not going to do it, and he started yelling
> and grabbed me, pulled me over to the balcony of our room, which was on the fourth
> floor, and slapped me. He then threatened to beat me up and push me off of the
> balcony and kill me. They were all standing around me and he told me that they
> could kill me out there in California and no one could do anything about it, because
> no one knew me and my kids had no idea where I was at. I was terrified at this point.
> . . . I was so scared at this point in time, I just wanted to go home, so I told them to
> take me to the train station. I really wish I had contacted authorities when they
> finally left me, but I was on the train and scared of what they would do to me when
> I got home.

2010 WL 3086325, at *2 (citation omitted). The Court concluded that, "[g]iven the extended

periods during which Mr. Saunders left Elliot alone, at which point she could have called the police

or otherwise extricated herself from the unlawful conduct," Elliot did not "satisfy the third element of a coercion or duress defense -- that she had no reasonable, legal alternatives to transporting the PCP." 2010 WL 3086325, at *7 (citing United States v. Butler, 485 F.3d at 572, 576).

## ANALYSIS

Given the parties' agreements at the hearing, the Court will grant the parties' Motion in Limine. If Aranda-Diaz intends to raise duress as a defense to the reentry charge at trial, however, Aranda-Diaz must provide notice to the United States and attempt to reach agreement about the extent to which he may introduce mental-state evidence. If Aranda-Diaz and the United States cannot reach agreement regarding the extent to which he may introduce evidence about the duress which caused him to reenter the United States, the parties may move the Court to exclude or allow introduction of mental state evidence at that time.

Section 1326(a), which Aranda-Diaz is accused of violating, is a crime in which the only intent element is that the defendant had the general intent to re-enter the United States. See United States v. Sierra-Ledesma, 645 F.3d at 1223; United States v. Martinez-Morel, 118 F.3d at 712-13. Evidence of Aranda-Diaz' state of mind -- whether he knew he had been deported, his reasons for coming back to the United States, whether he was aware that he entered the United States illegally, and his beliefs about whether he was authorized to reenter the United States -- will not be admissible evidence at trial, because any such beliefs are not relevant to Aranda-Diaz' guilt or innocence. See United States v. Hernandez-Hernandez, 519 F.3d 1239-40; United States v. Hernandez-Baide, 392 F.3d at 1158; United States v. Martinez-Morel, 118 F.3d at 715-17.

The Court may not be able to preclude all evidence of Aranda-Diaz' mental state, but the range of permissible evidence is narrow. All evidence, proffers, or statements made that Aranda-Diaz made or intends to make relating to his motives, beliefs about deportation, or reasons for

returning are not relevant to the determination of his guilt, and the Court will exclude this evidence at trial under rules 401 and 402.  In the interests of promoting a fair and orderly trial, and of minimizing the potential for prejudice to the United States, the Court will issue this pretrial ruling on the admissibility of the evidence of Aranda-Diaz' motives, beliefs about the law, or his knowledge of his prior deportation.

In addition, if Aranda-Diaz believes in good faith that he can meet all four of the duress defense's elements in relation to why he illegally reentered the United States illegally, the Court will allow him to present that defense.  In that case, Aranda-Diaz must first provide notice to the United States that he intends to raise the defense, and provide the United States with the specific state of mind evidence he intends to offer in his defense's support.  If the United States and Aranda-Diaz cannot come to an agreement about the scope of the mental-state evidence Aranda-Diaz may offer at trial, the United States may renew its objection to this evidence at that time.

**IT IS ORDERED** that the United States' Motion in Limine to Exclude Evidence of Defendant's State of Mind, filed December 14, 2012 (Doc. 22), is granted.  The Court prohibits Defendant Yuren Aranda-Diaz from mentioning or putting forth in any manner in the jury's presence evidence: (i) that Aranda-Diaz was not aware that he entered the United States illegally; (ii) that Aranda-Diaz was under the mistaken belief that he was authorized to enter the United States; (iii) that Aranda-Diaz was not aware of his prior deportation when he entered the United States; or (iv) that Aranda-Diaz returned for a reason.  If Aranda-Diaz intends to raise the duress defense at trial, he must: (i) provide Plaintiff United States of America  notice thereof; and (ii) attempt to reach an agreement with the United States regarding the extent of evidence that Aranda-Diaz may offer at trial.  If the United States and Aranda-Diaz cannot agree in relation to what evidence he may present at trial, the United States may renew its objection to this evidence at that time.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
David M. Walsh
Novaline Wilson
  Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Todd A. Coberly
Coberly & Attrep, LLLP
Santa Fe, New Mexico

     *Attorneys for the Defendant*