IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                     No. CR 12-2686 JB

YUREN ARANDA-DAIZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on the United States' Motion in Limine Regarding Display of Defendant's Tattoos, filed July 18, 2013 (Doc. 80)("Motion in Limine"). The primary issue is whether the Court should allow Plaintiff United States of America to ask, and whether the Court should instruct, Defendant Yuren Aranda-Diaz to display certain tattoos before the jury during Aranda-Diaz' trial. The Court will deny the Motion in Limine without prejudice to the United States renewing the motion if Aranda-Diaz puts identity at issue at trial. The United States' primary purpose in moving the Court to require Aranda-Diaz to display the specified tattoos is to prove, in conjunction with photographs the United States intends to offer at trial, that Aranda-Diaz is a convicted felon and that he is a felon who was in possession of a firearm in violation of 18 U.S.C. § 924(c). Because Aranda-Diaz pled guilty to this charge the morning of the trial, however, the parties agree that the primary purpose behind the Motion in Limine no longer exists. Moreover, Aranda-Diaz represents that he will not contest any issue of identity in the case, and will not contest that he was the driver of the vehicle which the Albuquerque, New Mexico Police Department ("APD") officers observed the unwitting informant enter and exit during the controlled purchase that underlies Aranda-Diaz' arrest and this federal case. The Court

thus concludes that, under rules 401 and 402 of the Federal Rules of Evidence, Aranda-Diaz' specified tattoos are irrelevant and inadmissible, and will not require Aranda-Diaz to display them before the jury.  If Aranda-Diaz puts his identity at issue during the course of the trial, however, the Court will allow the United States to renew its Motion in Limine at that time.  Accordingly, the Court will deny the United States' Motion in Limine without prejudice to the United States renewing its motion should the need arise at trial to do so.

## FACTUAL BACKGROUND

The Court has previously explained the facts and circumstances surrounding the United States' arrest of Aranda-Diaz in this case.  See United States v. Aranda-Diaz, No. CR 12-2686 JB, Memorandum Opinion and Order at 2-3, filed July 11, 2013 (Doc. 56)("MOO").  The Court incorporates those facts here, but will add the facts important to this Memorandum Opinion and Order.

The APD arrested Aranda-Diaz after an undercover controlled purchase operation in which a confidential informant ("CI") arranged to use an unwitting informant as an intermediary for the purchase of heroin from a drug dealer known to the CI as "Oso."  MOO at 2.  The CI drove the unwitting informant to a location at which APD officers observed the CI park the CI's vehicle and saw a Chevrolet Suburban driven by Aranda-Diaz enter a nearby driveway.  MOO at 2.  The unwitting informant then exited the CI's vehicle and entered the Suburban; moments later, he exited the Suburban and reentered the CI's vehicle.  See MOO at 2-3.  Shortly thereafter, the APD officers blocked in the Suburban and arrested Aranda-Diaz, who was the driver and the only person in the Suburban.  See MOO at 2-3.

The United States asserts that Aranda-Diaz has tattoos of the word "Oso" and bear claws,

as well as a tattoo of his name ("ARANDA"); that these tattoos corroborate facets of Aranda-Diaz's felony convictions; and that it intends to move the Court to require Aranda-Diaz to display those tattoos to corroborate his identity as a convicted felon.  See Motion in Limine ¶ 2, at 1.  The United States also indicates that it has photographs of these tattoos.  See United States' Exhibit List at 15, filed July 18, 2013 (Doc. 77).

## PROCEDURAL BACKGROUND

On October 23, 2012, a federal grand jury charged Aranda-Diaz with six federal crimes, including: (i) Count 1: a violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), alien in possession of a firearm and ammunition; (ii) Count 2: a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession of a firearm and ammunition; (iii) Count 3: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute heroin; (iv) Count 4: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), distribution of heroin; (v) Count 5: a violation of 18 U.S.C. § 924(c), possession and carrying a firearm during and in relation to a drug trafficking crime; and (vi) Count 6: a violation of 8 U.S.C. §§ 1326(a) and (b), reentry of a removed alien.  See Indictment, filed October 23, 2013 (Doc. 13).

On July 18, 2013, the United States filed its Motion in Limine, moving the Court to rule pretrial that the United States can compel Aranda-Diaz to "display his tattoos before the jury so as to provide additional evidence as to the defendant's identity to include his status as a previously convicted felon."  Motion in Limine ¶ 2, at 1.  The United States asserts that the tattoos will allow the United States to prove that Aranda-Diaz is a convicted felon, which the United States must prove in its case-in-chief, and to which Aranda-Diaz refuses to stipulate.  See Motion in Limine ¶ 1-2, at 1.  The United States asserts that Aranda-Diaz has a tattoo that reads "Oso"

(which is Spanish for "bear") and two corresponding bear claw tattoos, all of which corroborate his being known to the CI as "Oso."  Motion in Limine ¶ 2, at 1.  The United States adds that he "has a tattoo of his name 'ARANDA' on his mid-section that corroborates the 'Aranda-Diaz' referenced in the Defendant's felony judgments that the United States intends to offer as evidence."  Motion in Limine ¶ 2, at 1.  The United States argues that "[i]nstructing a defendant to display a tattoo does not offend the Fifth Amendment right against self-incrimination as such displays are non-testimonial in nature."  Motion in Limine ¶ 2, at 1-2 (citing United States v. Williams, 461 F.3d 441, 447-48 (4th Cir. 2006); United States v. Bay, 762 F.2d 1314, 1315-16 (9th Cir. 1985)).

On July 22, 2013, Aranda-Diaz filed Defendant Yuren Aranda-Diaz's Objection to Government's Exhibit List (Doc. 77) and Response in Opposition to Motion in Limine Regarding Display of Defendant's Tattoos (Doc. 80).  See Doc. 89 ("Response").  Aranda-Diaz points out that the United States lists as one of its intended trial exhibits a "photograph of Mr. Aranda-Diaz, bare-chested and sporting a number of tattoos."  Response at 1 (citing United States' Exhibit List, filed July 18, 2013 (Doc. 77)).  Aranda-Diaz argues that the Court should not allow this evidence, because his "torso has numerous tattoos, some of which the jury may construe as meaning that Mr. Aranda-Diaz belongs to a gang."  Response at 1.  He asserts:

> Evidence of these tattoos, whether through live, in-court, display, or a photograph shown to the jury, is wholly irrelevant to the issues at trial. Even if somehow minimally relevant, the probative value of such evidence is greatly outweighed by the danger of unfair prejudice and the needless presentation of cumulative evidence.

Response at 1-2. Aranda-Diaz states that the United States' position -- that it will offer this evidence as additional evidence of his identity -- "rings hollow," as "[t]his is not a case of mistaken

identity," and, "[e]ven if identity were an issue, the Government, as it fully recognizes, has substantial evidence proving Mr. Aranda-Diaz's identity."  Response at 2.  In reference to the substantial evidence to which Aranda-Diaz refers, he states:  "For example, the Government has ample evidence to prove Mr. Aranda-Diaz's identity through fingerprints, photographs of Mr. Aranda-Diaz, and in-person identification."  Response at 2 n.1.

In response to the United States' argument that the Court should allow the United States to display to the jury Aranda-Diaz' "Oso" tattoo, as it coincides with the CI's identification of him, he asserts that "the CI's purported statement that 'Oso' was selling drugs is testimonial hearsay and cannot be admitted into evidence in violation of Mr. Aranda-Diaz's Sixth Amendment right to confront his accusers."  Response at 2.  He further asserts that, even if the CI's statement could be admitted, the tattoo "offers no probative value to the main issue, i.e., whether Mr. Aranda-Diaz in fact distributed heroin as charged in the indictment."  Response at 2.  Aranda-Diaz similarly contends that, because he is not disputing that his name is Aranda-Diaz, his "Aranda" tattoo on his midsection is also irrelevant to any material issue.  Response at 2-3.  He adds that, even if these tattoos were probative of some material issue, "its minimal relevance is far outweighed by the substantial prejudice Mr. Aranda-Diaz would suffer if the evidence were allowed."  Response at 3.  Aranda-Diaz contends that the cases which the United States cites in support of allowing the in-court display of his tattoos "are inapposite," "as they pertain to in-court physical demonstrations by a defendant in response to testimony offered by the Government, or the displaying of tattoos when identity is at issue."  Response at 3 (citing United States v. Williams, 461 F.3d at 447-48; United States v. Bay, 762 F.2d at 1315-16).

On July 24, 2013, Aranda-Diaz pled guilty to charges 1, 2, and 6 of the Indictment.

Specifically, he pled guilty to being an alien in possession of a firearm, felon in possession of a firearm, and illegal reentry of a removed alien.  See Indictment at 1-4.

Before the trial began on July 24, 2013, the Court inquired whether, in relation to this Motion in Limine, Aranda-Diaz was going to contest identity: specifically, the Court asked whether, now that Aranda-Diaz' had pled guilty to the charge to which his status as a felon was relevant, whether Aranda-Diaz was going to contend that he was not the driver of the Chevrolet Suburban, which the police observed the unwitting informant enter and exit before they arrested him.  See Transcript of Trial at 12:12-14 (taken July 24, 2013)("Tr.")(Court).[1]  Aranda-Diaz responded that he was not going to contest any issues of identity and that "in light of [his plea,] I think that actually takes care of the purposes of those photographs."  Tr. at 12:15-17 (Coberly).  The United States agreed that Aranda-Diaz' plea effectively took away the purpose for which the United States sought to introduce the photographs of Aranda-Diaz' tattoos.  See Tr. at 12:45-19 (Coberly, Court, Walsh). When the Court stated that it was therefore inclined to deny the United States' Motion in Limine, the United States responded that it may wish to renew its motion if it believed the tattoos are "somehow . . . going to be relevant to the other charges," to which the Court responded that it would deny the Motion in Limine without prejudice to renewal at trial. Tr. at 12:24-13:11 (Walsh, Court, Coberly).

## LAW REGARDING RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d

---

[1] The Court's citations to the transcript of the trial refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and line numbers.

1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(quoting Fed. R. Evid. 401 ("Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action.")).  "Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  United States v. Goxcon-Chagal, 885 F. Supp. 2d 1118, 1162 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotations omitted).  "In performing the 403 balancing, the court

should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000). The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980). As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to the defendant's guilt or innocence of the crime charged. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not

necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (emphasis in original)(quoting Fed. R. Evid. 403 advisory committee note).

## ANALYSIS

The Court will exclude the evidence of Aranda-Diaz' tattoos.  To the extent that the United States intended to introduce this evidence at trial to prove that Aranda-Diaz was a felon for purposes of the felon-in-possession charge, because Aranda-Diaz has pled guilty to that charge, the parties agree that identifying him as a felon is no longer relevant, and the "purpose" behind the United States' Motion in Limine no longer exists.  Tr. at 12:15-23 (Court, Coberly, Walsh).  Moreover, Aranda-Diaz represents to the Court that he will not contest identity -- i.e., that he was driving the Chevrolet Suburban, into which and out of which the APD officers viewed the unwitting informant go during the controlled purchase.   As the United States concedes, these facts render the purpose for which the United States wished to offer these tattoos -- to establish Aranda-Diaz' identity -- a phantom issue.  Although identity is always relevant, and Aranda-Diaz' "ARANDA" tattoo makes it more likely that Aranda-Diaz is who the United States says he is, he has effectively conceded identity, thus rendering the evidence of minimal probative value.  The unfair prejudicial effect that might arise from the "ARANDA" tattoo substantially outweighs the tattoo's minimal incremental probative value, and the Court will, therefore, exclude evidence of it under rule 403.

In light of a key decision by the United States, the "Oso" and bear-claw tattoos, standing alone, do not make Aranda-Diaz' identity more likely than it would otherwise be; the tattoos are, therefore, irrelevant.  The United States has stated that it will not use the CI's statements -- that is, it will not mention that, through an unwitting informant, the CI intended to purchase the heroin

from "Oso." See Tr. at 8:14-9:1 (Walsh)(noting that the United States intends to "present our case without any CI statements," and that it believes it can present the backstory by talking about "the nature of buy-bust operations" and explaining only that "Detective Martinez gave buy money to this informant, [and] Detective Martinez eventually recovered the ounce of heroin from this informant"); Tr. at 9:6-7 (Court, Coberly)(agreeing to this procedure). Given the United States' decision to eliminate the testimony that would make significant Aranda-Diaz' "Oso" and bear-claw tattoos, the evidence of those tattoos, by itself, has no tendency to make his identity -- or any other fact of consequence -- more or less likely than it would otherwise be. The evidence of those tattoos is, therefore, irrelevant. See Fed. R. Evid. 401.

As the United States pointed out before the trial, however, if Aranda-Diaz changes his mind during the trial and asserts that the United States could not prove that he was the driver of the Chevrolet Suburban, the excluded evidence's probative value increases and overcomes its unfair prejudicial effect. If Aranda-Diaz argues that he did not drive the Chevrolet Suburban and opens the door to allow the CI's statements regarding his "Oso" nickname to be admitted,[2] then identity will no longer be a phantom issue, and the evidence of the "Oso" and bear-claw tattoos will be paired with testimony explaining the tattoos' significance -- i.e., that the controlled purchase which led to Aranda-Diaz' arrest began because the CI knew that the unwitting informant could arrange to purchase heroin through a dealer named "Oso." In that circumstance, his "Oso" and bear-claw tattoos make more probable that he was driving the Chevrolet Suburban, and, as the

---

[2] The Court agrees with Aranda-Diaz that any statement by the CI that "Oso" sold drugs, if the United States were to offer it for the truth of the matter asserted, is testimonial hearsay and, thus, the Confrontation Clause of the Sixth Amendment to the Constitution of the United States of America bars its admission. See Crawford v. Washington, 541 U.S. 36 (2004). The Court dealt with Aranda-Diaz' Crawford v. Washington objection to this testimony in its Sealed Memorandum Opinion and Order, filed January 7, 2014 (Doc. 145).

Indictment charges, that he distributed the heroin at issue, which is a fact of consequence in determining this action. Motion in Limine ¶ 2, at 1.[3]

The Court recognizes that admitting the photograph to allow the jury to see Aranda Diaz' "Oso" and bear-claw tattoos may incidentally show the jury Aranda-Diaz' other tattoos, which might suggest to the jury that he is affiliated with a gang. Given that Aranda-Diaz concedes identity, the Court will not admit the evidence at this time -- indeed, the United States no longer intends to introduce it. The Court notes, however, that, if Aranda-Diaz contests identity, the Court will not exclude evidence of the "Oso" and bear-claw tattoos on this basis. In the first place, that Aranda-Diaz' tattoos suggest that he is a gang member makes incrementally more likely that he distributed drugs: that is, after all, something gang members frequently do. Moreover, the Court is fully equipped to address any unfair prejudice that might arise with a limiting instruction -- not by excluding the evidence. Thus, although the Court will deny the United States' Motion in Limine, the Court will do so without prejudice to the United States renewing its Motion in Limine if Aranda-Diaz puts his identity at issue during the course of the trial.[4]

---

[3] The evidence of his "ARANDA" tattoo would remain irrelevant, because he would not be contesting that his name is Aranda-Diaz; he would be contesting that he is the person whom the CI's testimony identifies.

[4] The Court notes that the United States is correct that physical presentation of the tattoos would not implicate the Fifth Amendment right against self-incrimination. As the Honorable Monti Belot, United States District Judge for the District of Kansas, recently held:

> Defendants . . . move to exclude the photographs of their tattoos on the basis that they violate their Fifth Amendment right against self-incrimination. The government seeks to introduce the photos as evidence of membership in [a criminal organization]. The court is not persuaded by defendants' position. The tattoos were "not compelled by the government." United States v. Greer, 631 F.3d 608, 613 (2d Cir. 2011). "The voluntary tattooing of an incriminating word" to a defendant's body plainly is "not the product of government compulsion." Id.

**IT IS ORDERED** that the United States' Motion in Limine Regarding Display of Defendant's Tattoos, filed July 18, 2013 (Doc. 80), is denied without prejudice to Plaintiff United States of America renewing its motion if Defendant Yuren Aranda-Diaz puts his identity at issue during the trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
David M. Walsh
Novaline Wilson
   Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Todd A. Coberly
Coberly & Attrep, LLLP
Santa Fe, New Mexico

   *Attorneys for the Defendant*

---

United States v. Ramirez, No. 12-10089, 2013 WL 5219840, at *2 (D. Kan. September 16, 2013)(Belot, J.). See United States v. Greer, 631 F.3d at 613 ("[T]he Fifth Amendment is not offended where a witness relies on a tattoo to identify a defendant. In that context the tattoo is a physical feature, no different from a handwriting or blood sample, or a scar." (citation omitted)). See United States v. McCarthy, 473 F.2d 300, 304 n.3 (2d Cir. 1972)("The cases are legion that an accused can be required, without violating his privilege against self-incrimination, to submit his bodily or other identifying features for inspection."). Similar reasoning applies in this case: the voluntary tattooing of the word "Oso" and bear claws is not the product of government coercion, and, therefore, requiring Aranda-Diaz to display in court or allowing the United States to show by photograph the tattoos does not offend the Fifth Amendment.