## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                No. CR 12-2686 JB

YUREN ARANDA-DAIZ,

      Defendant.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on Defendant Yuren Aranda-Diaz's Expedited Motion to Modify Protective Order or to Hold an In Camera Hearing, filed July 16, 2013 (Doc. 66)("Motion").   The primary issue is whether the Court should modify its protective order concerning the Confidential Informant ("CI"), which it included in its Memorandum Opinion and Order, filed July 11, 2013 (Doc. 56)("MOO"), in which it ordered Plaintiff United States of America to disclose the CI's identity to Aranda-Diaz' defense counsel, Todd A. Coberly, but precluded Mr. Coberly from further disclosing the CI's identity to others, including Aranda-Diaz. The Court concludes that its finding in the MOO -- that Aranda-Diaz' right to present his defense outweighs the public's interest in facilitating the free flow of information which the CI's confidentiality facilitates -- and the CI's role in the United States' investigation and arrest of Aranda-Diaz, counsel that the Court should grant Aranda-Diaz' request and extend the protective order to include Aranda-Diaz, and allow Mr. Coberly to disclose the CI's identity to Aranda-Diaz

---

[1] On July 18, 2013, the Court issued an Order in which it granted in part Defendant Yuren Aranda-Diaz's Expedited Motion to Modify Protective Order or to Hold an In Camera Hearing, filed July 16, 2013 (Doc. 66), stating: "The Court will . . . at a later date issue an opinion more fully detailing its rationale for this decision."   Doc. 79 at 1 n.1.   This Memorandum Opinion is the promised opinion.

so that Aranda-Diaz may provide to Mr. Coberly any information he has about the CI.

## FACTUAL BACKGROUND

The Court has previously explained the facts and circumstances surrounding the United States' arrest of Aranda-Diaz.   See United States v. Aranda-Diaz, No. CR 12-2686 JB, Memorandum Opinion and Order at 2-3, filed July 11, 2013 (Doc. 56)("MOO").   The Court incorporates those facts here, but will add the facts important to this Memorandum Opinion.

The Albuquerque Police Department ("APD") arrested Aranda-Diaz after an undercover controlled purchase operation in which the CI arranged to use an unwitting informant, Jessie Lopez, as an intermediary for the purchase of heroin from a drug dealer known to the CI as "Oso." MOO at 2.   The CI drove Lopez to a location at which APD officers observed the CI park the CI's vehicle and saw a Chevrolet Suburban driven by Aranda-Diaz enter a nearby driveway.   See MOO at 2.   Lopez then exited the CI's vehicle and entered the Suburban; moments later, he exited the Suburban and reentered the CI's vehicle.   See MOO at 2-3.   Shortly thereafter, the APD officers blocked in the Suburban and arrested Aranda-Diaz, who was the driver and the only person in the Suburban.   See MOO at 2-3.

## PROCEDURAL BACKGROUND

On October 23, 2012, a federal grand jury charged Aranda-Diaz with six federal crimes, including: (i) Count 1: a violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), alien in possession of a firearm and ammunition; (ii) Count 2: a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession of a firearm and ammunition; (iii) Count 3: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute heroin; (iv) Count 4: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), distribution of heroin; (v) Count 5: a violation of 18 U.S.C.

§ 924(c), possession and carrying a firearm during and in relation to a drug trafficking crime; and (vi) Count 6: a violation of 8 U.S.C. §§ 1326(a) and (b), reentry of a removed alien.  See Indictment, filed October 23, 2013 (Doc. 13).

      **1.**       **Aranda-Diaz' Motion to Disclose.**

      On May 24, 2013, Aranda-Diaz filed the Motion to Disclose, moving the Court, pursuant to the Fifth Amendment to the Constitution of the United States of America, to order the United States to disclose the CI's identity, or, in the alternative, to conduct a hearing *in camera* to determine whether the Court should order the CI's identity disclosed.  See Motion to Disclose at 1.  Aranda-Diaz argues that the United States must disclose the CI's identity to afford Aranda-Diaz the ability to defend himself against the distribution charge.  See Motion to Disclose at 2.  Aranda-Diaz concedes that the United States generally has the privilege to withhold the CI's identity, but notes that this privilege does not protect from disclosure when "the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  Motion to Disclose at 2 (quoting Roviaro v. United States, 353 U.S. 53, 60-61 (1957))(internal quotation marks omitted).  Aranda-Diaz asserts that, in determining whether the circumstances require disclosure of the CI's identity, the Court must balance the public interest in protecting information flow about criminal activity to the police against the defendant's right to present a defense, by "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."  Motion to Disclose at 2 (quoting Roviaro v. United States, 353 U.S. at 64)(internal quotation marks omitted).

      Aranda-Diaz argues that, because the CI was directly involved in the drug transaction

underlying his case, as opposed to being a "mere tipster," the relevant factors counsel that the Court must order the United States to disclose the CI's identity.   Motion to Disclose at 2-3 (quoting <u>United States v. Moralez</u>, 908 F.2d 565, 568 (10th Cir. 1990))(internal quotation marks omitted).   Aranda-Diaz asserts that this case is "nearly on all fours with <u>Roviaro</u> and disclosure is mandated," because the United States, to prove its case, will have to call Lopez, and the CI is then the only person "in a position to amplify or contradict the testimony of 'Jessie.'"   Motion to Disclose at 3.   He contends that, if Aranda-Diaz takes the stand to rebut the United States' charges and, accordingly, rebuts Lopez' testimony, the CI is the only other person who could give an account of the transaction.   <u>See</u> Motion to Disclose at 3.   Aranda-Diaz asserts that, as an alternative, the Court should hold a hearing <i>in camera</i> to decide whether the CI's testimony supports Aranda-Diaz' defense.   <u>See</u> Motion to Disclose at 4 (citing <u>United States v. Moralez</u>, 908 F.2d at 568).

In its Response to Defendant's Motion to Disclose Confidential Informant (Doc. 38), filed July 18, 2013 (Doc. 41)("Response"), the United States Argued that the Court should not order it to disclose the CI's identity, because the CI is not a material witness.   <u>See</u> Response at 4.   The United States asserts that there is no bright-line rule which requires it to disclose the identity of a CI who played an active role in the investigation:

> The standard for disclosure of confidential informants who play an active rather than passive role in the investigation is not fixed; rather, the court must take into "consideration: (1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." Disclosure of an informant is not required simply because the informant has taken an active role in the criminal transaction.

Response at 5 (internal citations omitted)(quoting <u>Roviaro v. United States</u>, 353 U.S. at 62)(citing <u>United States v. Martinez</u>, 979 F.2d 1424, 1428 (10th Cir. 1992)).   The United States asserts that

- 4 -

Circuit Courts of Appeals which have reversed the district courts' decision not to require the disclosure of the CIs' identities do so where the CI is the only person "able to support the defense theory or contradict prosecution witnesses," and that Aranda-Diaz' contention that the United States will have to call Lopez to testify, and thus require the CI for rebuttal or impeachment evidence, is unfounded.   Response at 6.   The United States also points out that courts have often refused to require the CIs' identities to be disclosed when the CI played a minimal role in the investigation, which it asserts applies to the CI's minimal role here.   See Response at 6-7.

Second, the United States argues that Aranda-Diaz has not met his burden to demonstrate that the CI's testimony will be helpful or essential to a fair determination of his offense.   See Response at 7 (citing United States v. Gordon, 173 F.3d 761, 767 (10th Cir. 1999)).   The United States asserts that the Court should reject his argument as speculative, because "Aranda-Diaz has not specifically articulated the defense for which the confidential informant is the only witness to his possession and distribution of heroin to Jessie Lopez."   Response at 8.   The United States points out that it was Lopez, not the CI, who participated in the drug transaction with Aranda-Diaz and represents that, consistent with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the CI does not have any exculpatory evidence as to Aranda Diaz.   See Response at 9.   It argues that, given Aranda-Diaz does not articulate any defense theory for which he believes the CI would be helpful, and has not explained what testimony the CI can offer that will help him in his defense, the Court should deny his request.   See Response at 9-10.   The United States asserts that Aranda-Diaz "only states that the 'CI is the only person who *could* support [his] defense' and that [he] '*may* defend this charge by impeaching Jessie' and providing an alternative explanation of the encounter,'" which the United States contends "is hardly demonstrative of how the CI's testimony

is intended to aid in Aranda-Diaz' defense and is speculative at best."   Response at 10 (emphasis in original)(quoting Motion to Disclose at 3).

      In his Reply to Government's Response to Defendant Yuren Aranda-Diaz's Motion to Disclose Confidential Informant, filed June 24, 2013 (Doc. 45)("Reply)", Aranda-Diaz asserts that the United States' position that it need not call Lopez to testify is almost incredible, because, without him, "the Government's evidence in support of the distribution charged, stripped of inadmissible hearsay, is exceedingly thin."   Reply at 1.   He asserts that, without Lopez, the United States cannot possibly prove that the CI obtained heroin from Lopez and that Lopez gave the buy money to Aranda-Diaz.   See Reply at 2.   Aranda-Diaz also asserts that there are two plausibly innocent scenarios present without Lopez' testimony and that, even without Lopez, the United States must still disclose the CI's identity:

> The Government's evidence without Lopez supports two equally plausible scenarios.   First, that the CI purchased heroin from Lopez and Lopez transferred the "buy" money to Mr. Aranda-Diaz for some innocent reason.   The second, as the Government theorizes, is that the CI purchased heroin from Mr. Aranda-Diaz with assistance from Lopez.   Absent Lopez's testimony, the evidence available to the Government to prove beyond a reasonable doubt that Mr. Aranda-Diaz distributed heroin to the CI through Lopez is woefully lacking.   Even if the Government chooses to proceed on the distribution charge without Lopez, and even if such evidence would withstand a Rule 29 motion, the CI directly participated in the alleged transaction and is relevant to a defense theory.

Reply at 2 (footnote omitted).

      Aranda-Diaz asserts that the United States Court of Appeals for the Tenth Circuit requires disclosure of a CI's identity if "the CI's testimony might be relevant to the defendant's case and justice would best be served by disclosure," but if "the information sought would be merely cumulative or where the informer did not participate in the illegal transaction," then disclosure is not required.   Reply at 2 (internal quotation marks and citations omitted).   Aranda-Diaz argues

that the United States' contention that the CI was a minimal participant in the transaction "defies logic," because, given that the CI provided the police an ounce of heroin after "procuring it from either Lopez or Mr. Aranda-Diaz," the CI "was intimately involved in the transaction, not a mere bystander, and the evidence he could provide is not cumulative."   Reply at 3 (citing United States v. Aguilar, No. CR 09-3207JB, 2013 WL 2977708, at *5 (D.N.M. June 28, 2010)(Browning, J.)). Aranda-Diaz distinguishes the district court cases on which the United States relies for the proposition that the CI was a minimal participant by pointing out that government agents either recorded or participated in the transactions, whereas here government agents did not participate or record it, but only learned about the transaction second-hand through the CI.   See Reply at 3-4.

Aranda-Diaz argues that the United States' contention that he must establish that the CI would be helpful to his defense -- to prove what the CI would say -- "before having access to the CI puts the proverbial cart before the horse."   Reply at 4.   Aranda-Diaz concedes that he "must do more than 'speculate' about the usefulness of an informer's testimony," but asserts that "only 'where it is clear that the informant cannot aid the defense,' is disclosure not required."   Reply at 4 (quoting United States v. Moralez, 908 F.2d at 567; United States v. Sinclair, 109 F.3d 1527, 1538 (10th Cir. 1997)).   He asserts that "[d]isclosure is warranted where the informer's 'possible testimony' is 'highly relevant and might [be] helpful to the defense.'"   Reply at 4 (emphasis in Reply, but not in Supreme Court's opinion)(quoting Roviaro v. United States, 353 U.S. at 63-64). Aranda-Diaz asserts that the CI's testimony is important and highly relevant, not only for impeachment purposes, but because the CI may testify that he purchased the drugs directly from Lopez and that Lopez then gave the money to Aranda Diaz for some unrelated, legal reason.   See Reply at 5.   Aranda-Diaz contends that the circumstances here are thus distinguishable from the

Tenth Circuit's decision in United States v. Sinclair, because the CI's testimony is not cumulative of other evidence.   See Reply at 5-6.

At the hearing, the United States asserted that it does not intend to call either Lopez or the CI as a witness during its case in chief.   See Transcript of Hearing at 122:11-15 (taken July 3, 2013)(Court, Walsh)("Tr.").[2]   The Court asked the United States how it will tell the story about Aranda-Diaz' arrest without statements from the CI, who coordinated the buy with the officers, or without statements from Lopez, who allegedly purchased the heroin from Aranda-Diaz and then gave the drugs to the CI.   See Tr. at 122:16-18 (Court).   The United States responded that it intends to tell the story by talking about what a CI does for officers generally, and then going straight to finding the buy money and drugs in Aranda-Diaz' vehicle.   See Tr. at 122:25-8 (Walsh, Court).

Aranda-Diaz responded that, if the United States did not present testimony from either Lopez or the CI, and without hearsay testimony, he believes the evidence is insufficient to withstand a directed verdict under rule 29 of the Federal Rules of Criminal Procedure after the United States' case in chief, because "if all they're going to have is witnesses that essentially [say] I gave money to this person, that person drove to another place, I followed that [person] and we arrested somebody and there was money and drugs, [t]here's too many holes there I think for them to overcome that."   Tr. at 123:25-124:12 (Coberly).   In response to the Court's inquiry whether finding Aranda-Diaz in possession of the buy money and heroin was enough to overcome a directed verdict, Aranda-Diaz asserted that, while that evidence may be sufficient for the possession with intent to distribute charge, it is insufficient for the distribution charge.   See Tr. at

---

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and line numbers.

124:19-125:6 (Coberly).   Aranda-Diaz contended that, regardless whether the United States decides to proceed with the distribution charge without Lopez' or the CI's testimony, because the CI's testimony is highly relevant to the distribution charge, he is entitled to a court order requiring the United States to identify the CI.   See Tr. 125:11-15 (Coberly).   The Court asked whether he would be entitled to learn the CI's identity if the United States dropped the distribution charge. See Tr. at 125:19-24 (Court).   Aranda-Diaz responded that "if the Government were to dismiss that distribution charge I think I would have a difficult time arguing that the CI is relevant to the possession with intent to distribute charge."   Tr. at 126:11-13 (Coberly).

Aranda-Diaz asserted, however, that, if the United States is going to keep the distribution charge, the case law supports the Court ordering the United States to disclose the CI's identity:

> [A]s it exists right now with the charged crime of distribution, the CI is material because he's the one that directed the transaction, he purchased heroin, and he either purchased it[] from Jessie Lopez or Mr. Aranda-Diaz.   When you look at the cases that say that the CI is not relevant or material, . . . that's because the CI did not directly participate in the underlying transaction.   Or if he was there he was a bystander to an undercover agent doing the buy or there was a recording, which we don't have in this case, or he was a tipster, just an anonymous tipster.   And that is not the case.

Tr. at 127:5-15 (Coberly).   He asserted that the CI's involvement in the transaction, for the distribution charge's purposes, counsels that his constitutional right to present a defense significantly outweighs the public's interest in the free flow of information from the CI.   See Tr. at 128:16-84 (Coberly).

The Court asked the United States how it would prove the distribution charge without the CI's or Lopez' testimony.   See Tr. at 129:1-4 (Court).   The United States asserted that Detective Herman Martinez of the APD could provide the story without his testimony amounting to hearsay.

See Tr. at 129:5-8 (Walsh).[3]   The Court responded that, although the CI's statements to Martinez about his ability to procure heroin may have informed Martinez' state of mind in setting up the buy, the Court was not sure that a limiting instruction could cure prejudice that would result from the jury taking the statement for the truth of the matters that statements assert -- that Aranda-Diaz is a drug dealer.   See Tr. at 129:9-16 (Court).   The Court also asked the United States whether the purpose of the backstory from Martinez is to offer those statements for the truth of their assertion, because the United States needs the statements to come in to evidence for the truth to prove the distribution charge -- to prove that Aranda-Diaz is truly a drug dealer.   See Tr. at 129:16-19 (Court).   The United States responded that it believes that the fact officers found Aranda-Diaz in possession of the buy money that the officers supplied to the CI, combined with the additional heroin that the officers found in Aranda-Diaz' car, is proof enough for the distribution charge. See Tr. at 129:23-130:2 (Walsh).

The Court then asked the United States whether it intended to ask Martinez about what the CI told him to set up the story of how the officers came to set up the buy in the first place.   See Tr. at 130:13-15 (Court).   The United States responded that it was intending to ask Martinez to offer that testimony.   See Tr. at 130:16 (Walsh).   The Court responded that it was not sure that a limiting instruction could cure the prejudice of allowing into evidence through Martinez, for non-hearsay purposes, the CI's statement that Aranda-Diaz is a drug dealer, and asked whether the United States could get in the story before the transaction without mentioning the CI .   See Tr. at 130:17-131:5 (Court).   The United States responded:

---

[3] Although the transcript does not identify Martinez by his full name and title, the Court understands his identity through other papers that the Court has received.   See, e.g., Defendant Yuren Aranda-Diaz's Motion in Limine to Exclude Statements Made by the Confidential Informant and Memorandum of Law in Support at 2, filed July 18, 2013 (Doc. 85).

> I think we can.  I think we can say, there's this buy bust operation that was
> planned, talk a little bit about informants, how they're used, when money was
> provided to an informant, the purchase location . . . being [F]ifth and Menaul after
> an unwitting informant was picked up, no statements yet, detectives see what they
> see, they do an arrest, and there we go.  And ultimately the ounce is recovered
> from the informant by Detective Martinez.

Tr. at 131:6-13 (Walsh).   The Court noted that, even by talking about informants generally, and then going into how a CI was used in this case and that the drugs were eventually recovered from that CI, it gets to the point where the United States' reliance on the CI makes the CI particularly relevant and thus requires the Court to order the CI's identity disclosed so that Aranda-Diaz can interview and cross-examine him.   <u>See</u> Tr. at 133:1-4 (Court).   The Court asked the United States whether it would need to mention the CI at all if it dismissed the distribution charge.   <u>See</u> Tr. at 133:13-17 (Court).   The United States responded: "Probably not."   Tr. at 133:18 (Walsh).

The United States asserted, however, that, "just because the informant has taken an active role in the criminal investigation doesn't mandate disclosure," because the case law requires the CI to be relevant to supporting or contradicting another witness' testimony, and Aranda-Diaz has not shown that the CI's testimony will support or contradict any witness the United States or he intends to call at trial.   Tr. at 134:6-135:6 (Walsh).   The United States asserted that speculation that Lopez provided the drugs to the CI and that Lopez then for some legitimate reason gave that money to Aranda-Diaz is not sufficient to outweigh the public's interest in the continued free flow of information which stems from keeping the CI confidential.   <u>See</u> Tr.at 135:9-14 (Walsh).   The Court asked Aranda-Diaz whether the narrative involving Lopez giving the CI the drugs and then giving Aranda-Diaz the money for an unrelated, legitimate reason is too speculative to serve as the basis upon which the Court orders the United States to disclose the CI's identity.   <u>See</u> Tr. at 136:18-23 (Court).   Aranda-Diaz responded that speculation is all that the law requires to find that

a CI's identity should be disclosed, because the Supreme Court in <u>Roviaro v. United States</u> required only that the CI have "possible testimony" about a highly relevant topic to find disclosure warranted. Tr. at 137:1-6 (Coberly).  He added that the case law does not require any more, because a defendant need not divulge the theory of the case before trial.  <u>See</u> Tr. at 137:9-15 (Coberly).  The Court asked Aranda-Diaz how it can find the CI's testimony highly relevant to an important defense or topic if he will not further identify as to what issue he anticipates the CI's testimony will relate.  <u>See</u> Tr. at 137:16-19 (Court).  Aranda-Diaz responded that part of the reason he needs the CI's identity is so that he can interview the CI and then decide on anticipated defense theories.  <u>See</u> Tr. at 137:21-138:2 (Coberly).

The Court asked, given that Aranda-Diaz alternatively requested that the Court hold a hearing *in camera*, what question he anticipates the Court would ask of the CI during this hearing. <u>See</u> Tr. at 138:17-21 (Court).   Aranda-Diaz responded that, "if the Court were inclined to do that I would -- my inclination would be to submit *ex parte* questions to the Court."  Tr. at 139:5-7 (Coberly).  The Court asked whether he has any reason to think that there is some relevant information or conduct of which the Court or the parties do not know presently.  <u>See</u> Tr. at 139:11-13 (Court).  Aranda-Diaz responded that he does not have a particular reason to think there is some presently unknown evidence, but that "the big black hole here is how well does the CI know Jessie Lopez?   What was Jessie Lopez getting in return for this?   Had Jessie Lopez ever dealt drugs before?   Maybe Jessie Lopez was a drug dealer and he really . . . didn't want to do that anymore?"  Tr. at 139:14-23 (Coberly).   The Court asked whether Aranda-Diaz would object if the United States offered the background through Martinez, to which Aranda-Diaz responded that he would object.  <u>See</u> Tr. at 140:7-15 (Court, Coberly).   He stated that, while he may not object

- 12 -

on evidentiary grounds, he would object to the prejudice to him by allowing a backstory informed by two individuals -- one a CI -- about whom Aranda-Diaz was precluded from knowing.   See Tr. at 140:11-21 (Coberly).

    **2.**      **The Court's MOO.**

In its MOO, the Court granted Aranda-Diaz' motion in part, because, it concluded, "Aranda-Diaz' right to present his defense against the distribution charge outweighs the public's interest in facilitating the free flow of information which the CI's confidentiality facilitates." MOO at 17.   The Court explained:

> The crimes with which Aranda-Diaz is charged -- including the distribution charge -- are serious.   Because the CI was directly involved in the transaction from which Aranda-Diaz' distribution charge stems, the CI might provide relevant information to an important issue that is unavailable from other witnesses, including information about the unwilling informant, Jessie Lopez, who allegedly purchased the drugs from Aranda-Diaz.   Given that one possible defense Aranda-Diaz may raise is that Lopez, and not Aranda-Diaz, provided the drugs to the CI, it is not clear that "the informant cannot aid the defense" in defending against the distribution charge.   United States v. Sinclair, 109 F.3d at 1538.   On balance, therefore, the Court concludes that Aranda-Diaz' right to present his defense against the distribution charge outweighs the public's interest in facilitating the free flow of information which the CI's confidentiality facilitates.

MOO at 17.

The Court incorporated, however, the following protective order: "Mr. Coberly may disclose the CI's identity to his retained defense investigator only.   Those persons to whom Mr. Coberly makes a disclosure of the CI's identity should not disclose that information to anyone else without further leave of the Court."   MOO at 23-24.   The Court also concluded that, if the United States were to dismiss the distribution charge against Aranda-Diaz, it would not order the United States to disclose the CI's identity.   See MOO at 24.

- 13 -

3.      **Aranda-Diaz' Motion to Modify.**

Aranda-Diaz "moves the Court to modify its protective order to allow counsel to disclose the identity of the CI to Mr. Aranda-Diaz or, in the alternative, to hold an in camera hearing at which counsel be allowed to be present and examine the CI." Motion at 3. Aranda-Diaz maintains that his "[c]ounsel cannot meaningfully utilize the identity of the CI to effectuate Mr. Aranda-Diaz's individual right to due process and to present a defense without being able to discuss the CI's identity with Mr. Aranda-Diaz." Motion at 4. Aranda-Diaz submits that, under Tenth Circuit law, "'it is error of constitutional dimension to deny disclosure solely because of the potential danger to the informant. If disclosure is essential to a fair determination of the case, the trial court may require disclosure and if the Government withholds the information, dismiss the action.'" Motion at 4 (quoting United States v. Scafe, 822 F.2d 928, 934 (10th Cir. 1987)). Aranda-Diaz states that the Court has already decided that "the public's interest in protecting the identity of the CI is outweighed by Mr. Aranda-Diaz's right to prepare a defense to the distribution charge," and argues that he "cannot exercise that fundamental right without being able to discuss the identity of the CI with counsel." Motion at 4. Aranda-Diaz contends that, "[b]y precluding counsel from discussing the identity of the CI with Mr. Aranda-Diaz, the Court very well may be precluding Mr. Aranda-Diaz from preparing and presenting a defense -- a defense to which the Court, in issuing [its MOO], already has determined he is entitled." Motion at 4. According to Aranda-Diaz, few courts "have implemented such a drastic protective order in a criminal case," and, when courts have issued such orders, "they have done so without citation." Motion at 4. Aranda-Diaz states that it has only identified a single case in which a court has imposed such an order other than the Court's decision in United States v. Aguilar, No. CR 09-3207JB, 2013 WL

2977708 (D.N.M. June 28, 2010)(Browning, J.).   See Motion at 4-5 (citing United States v. Long Van Nguyen, No. CR12-212RSL, 2013 WL 2403304 (W.D. Wash.)(May 31, 2013)(Lasnik, J.)). Moreover, according to Aranda-Diaz, the United States in United States v. Long Van Nguyen "made specific allegations concerning the safety of the informant under the unique circumstances of that case," and the United States has made no such argument with respect to Aranda-Diaz. Motion at 5 n.2.

Aranda-Diaz further maintains that, "when the defendant makes a prima facie showing that disclosure is warranted[, t]he Tenth Circuit for decades has upheld and countenanced the use of an in camera hearing" as "a mechanism by which the Court can better balance the competing interests . . . ."   Motion at 5 (citing United States v. Moralez, 908 F.2d 565 (10th Cir. 1990); Gaines v. Hess, 662 F.2d 1364 (10th Cir. 1981); Garcia v. United States, 373 F.2d 806 (10th Cir. 1967)).   According to Aranda-Diaz, other circuits agree that this procedure is appropriate.   See Motion at 5.   Aranda-Diaz acknowledges that, in United States v. Pesaturo, 519 F. Supp. 2d 177 (D. Mass. 2007)(Sorokin, M.J.), the court "issued a protective order precluding the defendant's counsel **and** the defendant from disclosing the identity of the CI to anybody else," but points out that the "protective order, however, did not preclude defense counsel from disclosing the identity of the informant to the defendant."   Motion at 5-6 (emphasis in original).   In sum, Aranda-Diaz argues that

> the Court should either: (1) extend its protective order to cover Mr. Aranda-Diaz and allow counsel to discuss the identity of the CI with Mr. Aranda-Diaz, but preclude Mr. Aranda-Diaz from disclosing the CI's identity to anybody else; or (2) hold an in camera hearing with the CI as originally requested by Mr. Aranda-Diaz to better balance the Roviaro factors and determine whether the Government should be compelled to disclose the identity of the CI to Mr. Aranda-Diaz.

Motion at 6.   Aranda-Diaz argues that, because the Court ordered the United States to disclose the CI's identity to his counsel, there is no reason to keep his counsel from attending any *in camera* hearing on this issue.   See Motion at 6 n.3.

The substance of the Government Response [sic] to Defendant's Motion to Modify Protective Order (Doc. 66), filed July 17, 2013 (Doc. 71)("Response"), consists of the following two sentences:

> United States opposes Defendant's Motion to Modify the Protective Order, (Doc. 56), primarily on the grounds that were argued before the Court and delineated in its response to the Defendant's Motion to disclose the identity of the informant.  However, the United States would also like to express its concerns over the welfare of the informant especially in light of the Defendant's admitted gang affiliation.

Response at 1.

Aranda-Diaz did not file a reply.   The Court did not hold a hearing.   In its Order, filed July 18, 2013 (Doc. 79), the Court granted the Motion in part, saying:

> The Court will extend the protective order that it issued in its Memorandum Opinion and Order, filed July 11, 2013 (Doc. 56), to cover Defendant Yuren Aranda-Diaz and allow counsel to discuss the identity of the Confidential Informant (CI) with Aranda-Diaz, but preclude Aranda-Diaz from disclosing the CI's identity to anybody else.

Order at 1.

## LAW REGARDING MOTIONS TO RECONSIDER[4]

"The Federal Rules of Criminal Procedure do not expressly recognize a motion to reconsider."   United States v. Christy, 810 F. Supp. 2d 1219, 1249 (D.N.M. 2011)(Browning, J.),

---

[4] Although Aranda-Diaz styles his motion as a motion to modify, given that he has asked the Court to alter its protective order without offering evidence that he has tried to comply, but the compliance is unworkable, his motion is best understood as a motion to reconsider.

aff'd, United States v. Christy, No. 12-2127, 2014 WL 26455 (10th Cir. January 3, 2014)(unpublished)[5] Accord United States v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010)("None of the Rules of Criminal Procedure authorizes a generic motion to reconsider; the criminal rules lack a counterpart to the motions authorized by Fed. R. Civ. P. 50(b), 52(b), or 59, though they do authorize some post-trial motions . . . that have features in common with motions under the civil rules.").   In the criminal context, however, courts ordinarily apply the same standards as those used in civil cases when addressing motions to reconsider.   See United States v. Rollins, 607 F.3d at 502 (citing United States v. Healy, 376 U.S. 75 (1964); United States v. Dieter, 429 U.S. 6 (1976); United States v. Ibarra, 502 U.S. 1 (1991))(stating that the Supreme Court of the United States has "concluded that motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits"); United States v. Wilson, No. 08-cr-263-KHV, 2011 WL 1706890, at *1 (D. Colo. May 5, 2011)(stating that, in the context of criminal cases, courts ordinarily apply the same standard for a motion to reconsider as the standard they use in civil cases); United States v. Matlack, No. 09-cr-531-WYD, 2010 WL 2682110, at *1 (D. Colo. July 1, 2010)(stating that other district courts in the Tenth Circuit have relied on the standards for

---

[5] United States v. Christy is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court finds that United States v. Christy has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

evaluating a motion to reconsider in the civil context when addressing motions to reconsider in the criminal context), <u>disapproved on other grounds by</u> <u>United States v. Games-Perez</u>, 667 F.3d 1136, 1141 (10th Cir. 2012); <u>United States v. West</u>, No. 01-40122-01-SAC, 2002 WL 1334870, at * 1 (D. Kan. May 9, 2002)("Rarely do parties in criminal proceedings file motions to reconsider rulings on pretrial motions. This court believes that the standards for evaluating a motion to reconsider in the civil context are relevant for evaluating a motion to reconsider in a criminal case."); <u>United States v. D'Armond</u>, 80 F. Supp. 2d 1157, 1170 (D. Kan. 1999)("This court believes that the standards for evaluating a motion to reconsider in the civil context are relevant for evaluating a motion to reconsider in a criminal case.").

It is within a court's discretion to grant or to deny a motion to reconsider.  <u>See</u> <u>United States v. Wiseman</u>, 172 F.3d 1196, 1207-08 (10th Cir. 1999).  "A motion under Rule 59(e) is warranted when: (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary to correct clear error or prevent manifest injustice."  <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012 (citation omitted).  A district court has considerable discretion in ruling on a motion to reconsider. <u>See</u> <u>Phelps v. Hamilton</u>, 122 F.3d 1309, 1324 (10th Cir. 1997).  A motion to reconsider is not an opportunity to rehash arguments previously addressed or to advance new arguments that could have been raised in prior briefing.  <u>See</u> <u>Servants of the Paraclete v. Does</u>, 204 F.3d at 1012 ("It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." (citation omitted)).

Notably, neither rule 59 nor rule 60 of the Federal Rules of Civil Procedure apply to interlocutory orders a district court reconsiders before entry of final judgment.   Rule 59(e) states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e) (emphasis added).   Accord Van Skiver v. United States, 952 F.2d at 1243 ("In this case, plaintiffs' motion to reconsider was not served within ten days of the district court's judgment."); 12 J. Moore, Moore's Federal Practice § 59.11[1][a], at 59-26 (3d ed. 2011)("A motion for a new trial must be filed no later than 28 days after the entry of judgment, regardless of when or whether the parties received notice of the entry of the judgment." (citations omitted)).   As the note to the 1946 amendment to rule 60 emphasizes in a discussion of the choice to add the word "final" within rule 60(b):

> The addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

Fed. R. Civ. P. 60 note to 1946 amendment.   Accord 12 J. Moore, supra, § 60.23, at 60-82 ("Rule 60(b) does not govern relief from interlocutory orders, that is to say any orders in which there is something left for the court to decide after issuing the order."); 11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2852, at 233 (3d ed. 2012)("[T]he power of a court to modify an interlocutory judgment or order at any time prior to final judgment remains unchanged and is not limited by the provisions of Rule 60(b)." (footnote omitted)).   The Tenth Circuit has recognized that a district court has broad discretion to reconsider its interlocutory rulings before the entry of judgment.   See Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1251 (10th Cir. 2011)("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders.").   That discretion

extends to rulings on partial summary judgment motions.   See Fye v. Okla. Corp. Comm'n, 516 F.3d 1217, 1223-24 n.2 (10th Cir. 2008)("The District Court's partial summary judgment ruling was not a final judgment.   Thus, Ms. Fye's motion for reconsideration is considered an 'interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.'").

## LAW REGARDING INFORMANT'S IDENTITY

The government has a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. at 59.   "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.   The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."   Roviaro v. United States, 353 U.S. at 59.   "Anonymity of informants encourages communications to law enforcement officers."   Usery v. Local Union 720, Laborers' Int'l Union of N. Am., AFL-CIO, 547 F.2d 25, 527 (10th Cir. 1977).   Cf. United States v. Brantley, 986 F.2d 379, 383 (10th Cir. 1993)("Nor must the government supply the defendant with information about an informer when the individual introduces suspected traffickers to narcotics agents."); United States v. Ortiz, 804 F.2d 1161, 1166 (10th Cir. 1986)("We have ruled previously that the government is not required to supply information about an informer to a defendant when the informer merely provides the initial introduction.").

The privilege is not absolute, however, and where "the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a

cause, the privilege must give way." Roviaro v. United States, 353 U.S. at 60-61. The Supreme Court in Roviaro v. United States stated that the desirability of calling the informant as a witness, or at least interviewing the informant in advance of trial, is a matter for the accused, rather than the government, to decide. See 353 U.S. at 64. When an informant is a "participant in and a material witness to" the alleged criminal transaction, the disclosure of his or her identity is sometimes required. Roviaro v. United States, 353 U.S. at 65. The standard for disclosure of confidential informants who play an active, as opposed to a passive, role in the investigation is not fixed; rather, the court must take into "consideration: (1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." Roviaro v. United States, 353 U.S. at 62. In Roviaro v. United States, for example, the informant "helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment." 353 U.S. at 64. The Supreme Court found that the district court's failure to order disclosure of the informant's identity "in the face of repeated demands by the accused for his disclosure" was prejudicial error. 353 U.S. at 64-65.

"The Tenth Circuit's take on this analysis is well-known." United States v. Padilla, No. CR 09-3598 JB, 2010 WL 4337819, at *7 (D.N.M. Sept. 3, 2010)(Browning, J.). The Tenth Circuit's take on the analysis places the burden on the defendant to show that the informant's possible aid to the defendant outweighs the public's interest in protecting the flow of information, which the confidentiality of the informant's identity facilitates:

> The disclosure of a confidential informant's identity involves balancing the public interest in protecting the flow of information in a manner necessary for effective law enforcement against an individual's right to prepare his defense. In making the determination as to whether disclosure is necessary, the court must consider the particular circumstances of the case, including the crime charged, the possible defenses, and the significance of the informer's testimony. Where it is clear that

the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure.  A defendant seeking disclosure has the burden of proof, and we review the district court's decision for an abuse of discretion.

United States v. Sinclair, 109 F.3d at 1538 (internal citations and quotation marks omitted).  See United States v. McKenzie, No. CR 08-1669 JB, 2010 WL 597971, at **3-4 (D.N.M. Jan. 28, 2010)(Browning, J.)(quoting United States v. Sinclair, 109 F.3d at 1538).  "[T]he defendant must present more than mere speculation about the possible usefulness of an informant's testimony."

United States v. Moralez, 908 F.2d at 567.   In sum,

> [a] defendant may obtain the identity and whereabouts of an informer if his testimony might be relevant to the defendant's case and justice would be best served by disclosure[, but d]isclosure of an informant is not required . . . where the information sought from the informer would be merely cumulative, or where the informant did not participate in the transaction in question.

United States v. Reardon, 787 F.2d 512, 517 (10th Cir. 1986)(internal citations omitted).  See United States v. Moralez, 908 F.2d at 567.

The Court has required the United States to disclose a CI's identity where the CI "was integrally involved in the criminal transaction[,] . . . observed the criminal transaction[,] and was not a mere bystander."   United States v. Aguilar, 2010 WL 2977708, at *5.  The defendant, Aguilar, was one of three defendants charged with a conspiracy to traffic in cocaine, stemming from a transaction between his two co-defendants and a government CI.   See 2010 WL 2977708, at *1.   In relation to the first factor that the Supreme Court identified in Roviaro v. United States -- the crime charged -- the Court noted that "the crimes charged in this case are relatively egregious -- conspiracy, possession with intent to distribute cocaine, and possessing a gun while committing the other crimes."   2010 WL 2977708, at *6.   As to the second and third Roviaro v. United States factors -- the possible defenses and the possible significance of the informer's testimony -- it

appeared that the defendant intended to argue that he did not know his alleged co-conspirator possessed cocaine or that the drug transaction was going to occur, and the Court found that, given the CI was present during the crime, the CI's testimony "could be highly significant" to the defenses:

> The [CI] was present in the car with Mirabal, Aguilar, and Garner, and would be in a unique position to testify to what conversations, if any, occurred in the car and whether Aguilar took part in them.   After the four individuals arrived at the [CI]'s residence, again, the [CI] would be in a unique position to testify whether it appeared that Aguilar had any idea that the bag Mirabal retrieved from the car contained cocaine.   Once the three Defendants and the [CI] were inside the [CI]'s residence, the [CI] was able to observe Aguilar's demeanor and whether he actively participated in the drug transaction.   The [CI] could testify as to where Aguilar was and what he did while the [CI] made the alleged drug transaction with Mirabal.

2010 WL 2977708, at *6.   Additionally, the Court noted that the CI might provide relevant information no other witness could, because Aguilar's "alleged co-conspirators might try to push blame away from themselves and on to Aguilar, and Villegas, a law-enforcement officer, might tend to be biased toward the United States."   2010 WL 2977708, at *6.   The Court thus granted Aguilar's motion and ordered the United States to disclose the CI's identity.   See 2010 WL 2977708, at *6.   The Court also incorporated the following protective order in its decision:

> Ms. Johnson[, Aguilar's attorney,] is ordered that she will not disclose the identity of the CI to anyone -- except the defense investigator she retains in this case -- unless and until she seeks further leave of the Court. Any information that the United States provides to Ms. Johnson regarding the CI may be discussed only with the investigator and the Assistant United States Attorneys who disclosed it. Finally, any information the United States provides must be returned once this case is closed. These requirements should minimize the danger, if any, to the CI and perhaps permit law-enforcement to use him in a covert capacity again in the future, if they so desire.

2010 WL 2977708, at *6.

## ANALYSIS

The Court will grant the Motion in part.   Aranda-Diaz is correct that cases from the Tenth Circuit and the Supreme Court have held that the defendant enjoys a right to the identity of informants against him.   See, e.g., Branzenburg v. Hayes, 408 U.S. 665, 698 (1972)(stating that an informant's "identity cannot be concealed from the defendant when it is critical to his case")(emphasis added); Roviaro v. United States, 353 U.S. at 62 (holding that courts must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense")(emphasis added).   The United States' reliance on the CI's safety is misplaced: as the Tenth Circuit has stated, "it is error of constitutional dimension to deny disclosure solely because of the potential danger to the informant.   If disclosure is essential to a fair determination of the case, the trial court may require disclosure and if the Government withholds the information, dismiss the action."   United States v. Scafe, 822 F.2d at 934.   The Court should not, therefore, construct a firewall between Aranda-Diaz and his counsel that would separate Aranda-Diaz from information that is important to his constitutional right to a "meaningful opportunity to present a complete defense."   Crane v. Kentucky, 476 U.S. 683, 690 (1986)(internal quotation marks omitted).   At least without more detail how Aranda-Diaz could threaten the CI's safety, the Court should allow disclosure of the CI to Aranda-Diaz so that he may truly assist in preparing his defense.[6]

---

[6] The Court notes that, as Aranda-Diaz correctly points out, United States v. Long Van Nguyen is distinguishable: although the court in that case disclosed the informant's identity only to the defendant's counsel and to their investigator, and not to the defendant, the court did so because of a particularized and well-grounded concern for the informant's safety.   The defendant was the subject of an international murder-for-hire investigation, and, out of concern for the informant's safety, the court disclosed the informant's identity "to the attorneys and their investigator only and not to the defendant or anyone else."   United States v. Long Van Nguyen 2013 WL 2403304, at

The Court will, therefore, grant the Motion in part: it will modify its protective order and allow Aranda-Diaz to learn the CI's identity and to discuss the CI's identity with his counsel. Because the Court has granted the primary form of relief that Aranda-Diaz seeks, it will deny the Motion to the extent it seeks an *in camera* hearing as an alternative form of relief.[7]

**IT IS ORDERED** that Defendant Yuren Aranda-Diaz' Expedited Motion to Modify Protective Order or to Hold an In Camera Hearing, filed July 16, 2013 (Doc. 66), is granted in part. The Court will extend the protective order that it issued in its Memorandum Opinion and Order, filed July 11, 2013 (Doc. 56), to cover Defendant Yuren Aranda-Diaz and allow counsel to discuss the identity of the Confidential Informant (CI) with Aranda-Diaz, but preclude Aranda-Diaz from disclosing the CI's identity to anybody else.

_____
UNITED STATES DISTRICT JUDGE

---

*2.   The United States have made no analogous or particularized allegation about Aranda-Diaz. Generalized allegations of gang involvement are so pervasive that, if the Court were to not disclose in the face of such concerns, the danger exception would swallow the rule of disclosure to the defendant.

[7] The Court's approach to the protective order is consistent with the approach in United States v. Pesaturo, 519 F. Supp. 2d at 187 (ordering the United States to disclose a confidential informant's identity, with the following limit: "Neither the Defendant nor counsel shall disclose to anyone else (other than to employees of defense counsel assisting with the preparation of the defense) the identity of the confidential informant, absent further Order of the Court.").

*Counsel:*

Kenneth J. Gonzales
     United States Attorney
David M. Walsh
Novaline Wilson
     Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Todd A. Coberly
Coberly & Attrep, LLLP
Santa Fe, New Mexico

      *Attorneys for the Defendant*