## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                      No. CR 12-2686 JB

YUREN ARANDA-DAIZ,

      Defendant.

## UNSEALED MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the United States' Sealed Motion *in Limine* to Prohibit Cross-Examination of Patrick Ficke, filed July 17, 2013 (Doc. 72)("Motion in Limine"). The primary issue is whether, on cross examination of Albuquerque. New Mexico Police Department ("APD") Sergeant Patrick Ficke, whom Plaintiff United States of America intends to call at trial as its narcotics expert, the Court should preclude the Defendant Yuren Aranda-Diaz from inquiring into Ficke's February 2013 arrest for domestic violence and child abuse, and his subsequent resignation from the APD.   The Court will grant in part and deny in part the United States' Motion in Limine.   Ficke's February 2013 arrest for domestic violence and child abuse is not probative of his character for truthfulness or untruthfulness, and the Court will therefore, under rule 608 of the Federal Rules of Evidence, preclude Aranda-Diaz from inquiring into Ficke's pending charges stemming from this arrest on cross examination.   Additionally, the danger of unfair prejudice that this evidence presents to the United States substantially outweighs its

---

[1] In its Sealed Memorandum Opinion and Order, filed July 24, 2013 (Doc. 101)("Sealed MOO"), the Court instructed the parties to submit any proposed redactions to the Sealed MOO before the Court published a public version of the Sealed MOO.   See Sealed MOO at 1 n.1.   The parties have not contacted the Court or made any filings within CM/ECF, the Court's Case Management/Electronic Case Files, to indicate that they have any proposed redactions. Consequently, the Court is now refiling the Sealed MOO in an unsealed form.

probative value.  The Court will therefore preclude under rule 403 of the Federal Rules of Evidence any evidence about the charges that stemmed from Ficke's arrest.  Evidence that Ficke is currently facing state law felony charges, so long as the particular charges are not admitted, is probative of his character for truthfulness or untruthfulness, as the pending charges are probative of possible bias, because Ficke may believe that his testimony in this case will benefit him in relation to his pending state criminal case.  Moreover, because the United States intends to call Ficke as a narcotics expert, that Ficke resigned from his position with the APD as a narcotics officer, and that he no longer works in law enforcement as a narcotics officer provides the jury information which it may permissibly use in deciding the weight to give to Ficke's testimony. The Court will therefore allow the United States to elicit, without any mention of domestic violence of child abuse, that state law felony charges are pending against Ficke, whether the United States promised him any benefit in the state's criminal case against him in exchange for his testimony, or whether he expects his testimony will provide him a benefit, and that he resigned from the APD and no longer works in law enforcement.  The Court will not, however, allow Aranda-Diaz to elicit that Ficke resigned from the APD because of the charges.

## FACTUAL BACKGROUND

The Court has previously explained the facts and circumstances surrounding the United States' arrest of Aranda-Diaz in this case.  See United States v. Aranda-Diaz, No. CR 12-2686 JB, Memorandum Opinion and Order at 2-3, filed July 11, 2013 (Doc. 56).  The Court incorporates those facts here, but will add the facts important to this Sealed Memorandum Opinion and Order.

Ficke was involved in the APD's undercover controlled purchase operation, which led to the APD's arrest of Aranda-Diaz.  The United States represents that it will call Ficke to testify as

its narcotics expert at Aranda-Diaz' trial, beginning on July 24, 2013.   On or about February 11, 2013, Ficke was arrested on domestic violence and child abuse charges, and, in connection with his arrest, he resigned his position with the APD.

## PROCEDURAL BACKGROUND

On October 23, 2012, a federal grand jury charged Aranda-Diaz with six federal crimes, including: (i) Count 1: a violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), alien in possession of a firearm and ammunition; (ii) Count 2: a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession of a firearm and ammunition; (iii) Count 3: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute heroin; (iv) Count 4: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), distribution of heroin; (v) Count 5: a violation of 18 U.S.C. § 924(c), possession and carrying a firearm during and in relation to a drug trafficking crime; and (vi) Count 6: a violation of 8 U.S.C. §§ 1326(a) and (b), reentry of a removed alien.   See Indictment, filed October 23, 2013 (Doc. 13).

On July 17, 2013, the United States filed its Motion in Limine, moving the Court to preclude Aranda-Diaz from inquiring into any information related to Ficke's "February 2013 arrest on domestic violence and child abuse charges and his subsequent resignation from the department in connection with that incident."   Motion in Limine at 1.   The United States asks the Court to prohibit Aranda-Diaz from inquiring into this area on Ficke's cross examination, "because this issue does not bear on Mr. Ficke's truthfulness to testify."   Motion in Limine at 1 (citing Fed. R. Evid. 608).

The United States points out that "'[t]he classic example of a permissible inquiry [under Rule 608(b)] would be an incident in which the witness had lied," and asserts that there is no

- 3 -

evidence that Ficke lied in connection with his pending domestic violence or child abuse charges, or in his resignation from the APD related to those charges.   Motion in Limine at 2 (quoting United States v. Bocra, 623 F.2d 281, 288 (3d Cir. 1980))(alteration in original).   It refers the Court to the United States Court of Appeals for the Tenth Circuit's decision in United States v. Beltran-Garcia, 338 F. App'x 765 (10th Cir. 2009), for the proposition that the Tenth Circuit "has recognized the potential for abuse which could result from the admission of testimony not focused on a truthfulness inquiry."   Motion in Limine at 2.   The United States asserts that the "charges against Mr. Ficke are pending -- he has not been convicted of any crime.   The charges do not speak to the issue of truthfulness.   In fact, only a day after the incident resulting in the charges Mr. Ficke turned himself into police."   Motion in Limine at 3.   It asserts that, by turning himself in to the police, Ficke's conduct "would actually tend to demonstrate a truthfulness on Mr. Ficke's part."   Motion in Limine at 3.   The United States contends, moreover, that "[a]ny evidence regarding Mr. Ficke's arrest on the domestic violence and child abuse charges and his subsequent resignation is irrelevant and substantially outweighed by unfair prejudice and confusion of the issues which could arise within its admission."   Motion in Limine at 3-4.   The United States adds that cross examination about these issues "would put him in a position where he would be required to invoke his Fifth Amendment rights against self-incrimination."   Motion in Limine at 4.

On July 22, 2013, Aranda-Diaz filed Defendant Yuren Aranda-Diaz's Response in Opposition to Sealed Motion In Limine to Prohibit Cross-Examination of Patrick Ficke [Doc. 72]. See Doc. 72 ("MIL Response").   He argues that the Court should deny the United States' Motion in Limine.   He asserts that the United States' position -- that the Court should not allow cross examination into Ficke's pending felony charges, because they do not reflect on his veracity --

"misses the point."   MIL Response at 2.   Aranda-Diaz contends that he "is entitled to cross-examine Ficke on his pending felony charges and dismissal from APD in order to establish potential bias on the part of Ficke and permit the jury to assess whether Ficke is shading his testimony in favor of the Government."   MIL Response at 2.   Aranda-Diaz asserts that "[c]ompletely foreclosing this area of cross-examination would impermissibly violate Mr. Aranda-Diaz's constitutional right to confront his accusers."   MIL Response at 2 (citing United States v. Robinson, 583 F.3d 1265, 1274 (10th Cir. 2009)).

Aranda-Diaz refers the Court to the United States Court of Appeals for the Fifth Circuit's decision in United States v. Landerman, 109 F.3d 1053, modified on reh'g, 116 F.3d 119 (5th Cir. 1997), in which the Fifth Circuit reversed the district court's decision to exclude evidence of the United States' witness' pending state charges, and held that "'the jury, as the trier of fact, should have been allowed to draw its own inferences regarding the witness's credibility and determine what effect, if any, the pending criminal charge had on the witness's motivation to testify.'"   MIL Response at 3 (quoting United States v. Landerman, 109 F.3d at 1062).   Aranda-Diaz asserts that "Ficke is absolutely essential to the Government's case in proving a distribution charge against Mr. Aranda-Diaz," because he "is the only Government witness alleged to have seen anything resembling a transaction between Jessie Lopez and Mr. Aranda-Diaz."   MIL Response at 3.   He asserts: "Given the centrality of Ficke to the Government's distribution charge, it is essential that Mr. Aranda-Diaz have the opportunity on cross-examination, in front of the jury, to establish any potential bias of Ficke to curry favor with the Government."   MIL response at 3-4.   Aranda-Diaz states that he is not requesting the Court provide him "unfettered cross-examination into Ficke's state court charges."   MIL Response at 4.

## LAW REGARDING RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."   Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).   "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action.")).   "Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'"   United States v. Goxcon-Chagal, 885 F. Supp. 2d 1118, 1162 (D.N.M. 2012) (Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).   Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.   See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing

probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotations omitted).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."   United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).   As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .   This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.   See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).   "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case."   United States v.

- 7 -

Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).   Rather, "[t]o be <u>unfairly</u> prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"   United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

<u>**LAW REGARDING RULE 608 EVIDENCE**</u>

"Rule 608 of the Federal Rules of Evidence provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness."   <u>Montoya v. Sheldon</u>, No. CIV 10-0360 JB/WDS, 2012 WL 5476882, at *7 (D.N.M. Oct. 31, 2012)(Browning, J.).   See <u>United States v. Huerta-Rodriguez</u>, 83 Fed. R. Evid. Serv. 681, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.)(same).   In the criminal context, the Tenth Circuit has stated that "'defense counsel should ordinarily be given wide latitude when cross examining a witness about credibility or bias.'"   <u>United States v. Rosario Fuentez</u>, 231 F.3d 700, 704 (10th Cir. 2000)(alteration omitted)(quoting <u>United States v. DeSoto</u>, 950 F.3d 626, 629 (10th Cir. 1991)).   Nevertheless, "[o]ne key aspect of this rule is that its application is explicitly within the discretion of the district court."   <u>Hampton v. Dillard Dep't Stores, Inc.</u>, 247 F.3d 1091, 1114 (10th Cir. 2001).   See <u>United States v. Rosario Fuentez</u>, 231 F.3d at 704 (10th Cir. 2000)("The trial court . . . retains discretion to reasonably limit cross-examination.")(internal quotations omitted)(quoting <u>United States v. DeSoto</u>, 950 F.3d at 629).

Rule 608(a) states:

A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.   But evidence of truthful character is admissible only after the witness's character for truthfulness has been

attacked.

Fed. R. Evid. 608(a).   The truthfulness or untruthfulness of a witness may be attacked by opinion or reputation evidence without ever proffering evidence of a good character for truthfulness.   See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial court's discretion to prohibit cross-examination of a police officer as to whether he had been suspended to call into question his credibility, the plaintiff "could have used Rule 608(a) and called a member of the department to testify directly about his opinions or reputation of [the credibility of the officer].").   To establish a proper foundation for the opinion or reputation testimony, a witness must show: "such acquaintance with the person under attack, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded."   United States v. Rios, 92 F.3d 1519, 1529 (10th Cir. 1996), overruled on other grounds by, United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)(quoting United States v. Bedonie, 913 F.2d 782, 802 (10th Cir. 1990)).

Rule 608(b) provides the rule for admission of specific instances of conduct:

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.   But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

> **(1)** the witness; or
>
> **(2)** another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).   "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness."

- 9 -

United States v. Beltran-Garcia, 338 F. App'x at 770.   "Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence."   United States v. Beltran-Garcia, 338 at 770. The United States Court of Appeals for the District of Columbia Circuit has noted:

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment."   Fed. R. Evid. 608 advisory committee's note to 2003 amendment. The rule precluding the

> admission of extrinsic evidence of specific instances of conduct of the witness when offered for the purpose of attacking credibility . . . does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false, even if the statement is about a collateral issue.

United States v. Fleming, 19 F.3d 1325 (10th Cir. 1994)(citing 27 Charles A. Wright & Victor J. Gold, Fed. Practice and Procedure: Evidence § 5096, at 546-47 (1990)).   This doctrine, "known as 'specific contradiction,'" allows such impeachment "even if the evidence elicited . . . ordinarily might be collateral or otherwise inadmissible."   United States v. Crockett, 435 F.3d at 1313 (citing Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1456 (10th Cir. 1997)).   See United States v. Cerno, 529 F.3d 926, 944 (10th Cir. 2008)("If there is evidence that specifically

- 10 -

contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying.").[2]

It is generally true that "a party may inquire into specific instances of conduct by extrinsic evidence only on cross-examination of a witness in challenging the truthfulness of his testimony." See Bennet v. Longacre, 774 F.2d 1024, 1027 (10th Cir. 1985). Where a party has already attacked a witness' credibility by cross-examination on specific instances of conduct and the witness made a false statement on the stand, however, the party may provide extrinsic evidence to impeach that witness on re-direct or during a later direct examination. See United States v. Embry, 452 F. App'x at 835 (noting that "Rule 608(b)(1) . . . allows impeachment testimony . . . on direct or redirect examination . . . where a party already has attacked the credibility of a witness by referring to specific instances of conduct."). When a witness makes a false statement while providing testimony, the opposing party is allowed to prove that lie by presenting rebuttal witnesses. See United States v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006)("[W]hen a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact.").

It is "permissible impeachment to expose a witness's bias." United States v. Baldridge, 559 F.3d 1126, 1135 (10th Cir. 2009)(citing United States v. Abel, 469 U.S. 45, 51 (1984)).

---

[2] Professors Charles Alan Wright and Victor James Gold recognize that, before the 2003 amendment, the "greater weight of authority" held that "Rule 608 regulates only the admissibility of character evidence and that subdivision (b) should not be read literally." 28 Charles A. Wright & Victor J. Gold, Fed. Practice and Procedure § 6117, at 86 (1993 & Supp. 2011). Professors Wright and Gold confirm that, as a result of the 2003 amendment, rule 608(b) "has been amended to make clear that it applies only to extrinsic evidence of conduct offered for the purpose of proving character for truthfulness or untruthfulness." 28 Wright & Gold, supra § 6117, at 14 (supp. 2011).

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."   United States v. Abel, 469 U.S. at 52.   Thus, because bias is never collateral, "it is permissible to [prove bias] by extrinsic evidence."   Montoya v. City of Albuquerque, No. CIV 03-0261 JB/RHS, 2004 WL 3426435, at *4 (D.N.M. May 18, 2004)(Browning, J.).   The Tenth Circuit describes bias, based on its definition at common law, as "the relationship between a witness and a party which might cause the witness to slant his testimony for or against the party."   United States v. Baldridge, 559 U.S. F.3d at 1135 (citing United States v. Abel, 469 U.S. at 52).[3]

## ANALYSIS

The United States argues that the Court should exclude from trial any evidence related to the arrest of Ficke, the United States' narcotics expert in this case, for domestic violence and child abuse, including his subsequent resignation from the APD.   The United States asserts that the evidence is not probative of Ficke's character for truthfulness or untruthfulness, and thus that rule 608(b) does not allow Aranda-Diaz to inquire into this area on cross examination.   The United

---

[3] Prejudice is defined as "[a] preconceived judgment formed with little or no factual basis; a strong bias." Black's Law Dictionary 1229 (J. Garner ed., 9th ed. 2009).  See New Oxford American Dictionary 1378 (3d ed. 2010) ("[P]reconceived opinion that is not based on reason or actual experiences . . . dislike, hostility. . . ."). Bias is defined as: "Inclination; prejudice; predilection." Black's Law Dictionary, supra, at 183.   Although bias and prejudice in contemporary discourse may be used interchangeably, with courts and lawyers both asserting that one has bias for something and bias against, they historically have been and are often distinguished by saying that there may be "bias or prejudice."   E.g., Nev. Comm'n on Ethics v. Carrigan, 131 S. Ct. 2343, 2349 (2011)(quoting 28 U.S.C. § 144, which makes "any 'personal bias or prejudice' a basis for recusal.").   Bias is associated more with an informed reason for favoring a person and prejudice with an uninformed hostility toward a class of persons.   Bias now appears to be all inclusive, covering prejudice, too, and prejudice covers bias if the preposition "for" follows.   The terms have thus apparently lost any distinction.

States further asserts that the Court should exclude this evidence under rule 403, as the danger of unfair prejudice and the danger of confusion of the issues that this evidence presents outweighs this evidence's probative value.   The Court agrees with the United States that the state law felony charges for domestic violence and child abuse do not require proving untruthful conduct, and that the circumstances surrounding Ficke's arrest do not suggest that he was untruthful. The Court also concludes that the danger of unfair prejudice that evidence of domestic violence and child abuse charges presents substantially outweighs its probative value.   The Court concludes, however, that the pending state felony charges are probative of Ficke's bias in testifying in the case, because he may think that his testimony will provide him a benefit in relation to the state's prosecution against him.   Additionally, that Ficke no longer works in law enforcement reflects on the weight that the jury should afford his testimony as a narcotics expert.   The Court will therefore allow Aranda-Diaz to elicit on cross examination that Ficke faces state law felony charges, that he resigned from the APD, that he no longer works in law enforcement, and that he received or believes that he will receive a benefit for his testimony in this case.

## I.     THE COURT WILL NOT ALLOW ARANDA-DIAZ TO ELICIT EVIDENCE THAT FICKE IS FACING PENDING STATE CHARGES FOR DOMESTIC <u>VIOLENCE AND CHILD ABUSE</u>.

The United States argues that the Court should exclude Ficke's arrest, the domestic violence and child abuse charges, and his resignation from the APD, because these areas "do not bear on Mr. Ficke's truthfulness to testify," as "the charges to do not speak to the issue of his truthfulness."   Motion in Limine at 1, 3.   The Court agrees with the United States and concludes that arrests for domestic violence and child abuse are not probative of truthfulness, and that the circumstances surrounding Ficke's arrests do not suggest that Ficke was untruthful.   Additionally,

the Court concludes that the danger of unfair prejudice substantially outweighs any probative value that the evidence about Ficke's possible conduct of domestic violence and child abuse may have.

**A.   THERE IS NO EVIDENCE THAT FICKE WAS UNTRUTHFUL IN RELATION TO HIS ARREST FOR DOMESTIC VIOLENCE AND CHILD ABUSE, OR IN RELATION TO HIS RESIGNATION FROM THE APD, AND THIS CONDUCT IS THUS NOT PROBATIVE OF HIS VERACITY.**

Rule 608 focuses on impeaching a witness' character for truthfulness by allowing introduction of evidence probative of the witness' propensity to lie.   Rule 608 provides an avenue for impeachment by "introduc[ing] evidence that the witness has a bad character for truthfulness, i.e., a propensity to tell lies."   2 Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, <u>Fed. Rules of Evidence Manual</u> § 608.02[1], at 608–5 (9th ed. 2006).   The United States Court of Appeals for the Third Circuit recognizes that "[t]he classic example of a permissible inquiry [under rule 608(b)] would be an incident in which the witness had lied."   <u>United States v. Bocra</u>, 623 F.2d at 288.   Professor Stephen A. Saltzburg similarly explains that "the rationale" which underlies rule 608 "is that a witness who has a propensity to lie will act in accordance with that propensity when testifying."   S. Saltzburg et al., <u>supra</u>, § 608.02[1], at 608–5.   Although it may be true that "every bad act is somewhat probative of veracity," just as rule 609's text distinguishes between crimes of dishonesty and other crimes, "there is every reason for Courts applying Rule 608 and 403 to take account of this distinction as a matter of logic, even if it is not specified in those rules."   Saltzburg et al., <u>supra</u>, § 608.02[4], at 608–9-608–10.

Ficke's arrest for domestic violence and child abuse is not, in isolation, probative of his character for truthfulness, and there is no evidence that Ficke lied in connection with this arrest or his resignation from the APD.   The United States Court of Appeals for the Eighth Circuit has held

- 14 -

that, "because . . . cross-examination [into prior bad acts] is limited to only those acts that are probative of the propensity for truthfulness," rule 608(b) did not permit cross-examination of a confidential informant acting as a government witness "about an 'adult abuse order' resulting from an assault on his girlfriend."   Miller v. United States, 135 F.3d 1254, 1256 (8th Cir. 1998).   The Eighth Circuit reasoned that prohibiting this inquiry was proper, as it "was of limited value on the issue of his credibility."   Miller v. United States, 135 F.3d at 1256.   The Court agrees with the Eighth Circuit's reasoning, and concludes that Ficke's arrest for domestic abuse and child abuse is of limited value on the issue of his credibility, as acts of domestic violence is not a crime of dishonesty, and these crimes do not clearly implicate his veracity.   See 28 Charles A. Wright & Victor J. Gold, Fed. Practice & Procedure: Evidence § 6118, at 116 (2d ed. 2012)("[C]ourts have concluded that evidence of specific instances is probative of truthfulness or untruthfulness where the conduct consists of acts clearly implicating veracity . . . .").

Although rule 608(b) may sometimes allow inquiry into specific untruthful conduct related to an arrest where the commission of the crime itself does implicate the witness' veracity, because the crime is not one which requires proof of a dishonest act or false statement, there is no evidence that Ficke lied or was otherwise deceitful in connection with his arrest.   See United States v. Aranda-Diaz, No. CR 12-2686 JB, Sealed Ex Parte Memorandum Opinion and Order at 33 (Doc 96)(D.N.M. July 23, 2013)(Browning, J.)("The prior instances of disciplinary actions that the Tenth Circuit has found are proper areas subject to cross examination under rule 608(b) involve affirmative acts of deceit, such as 'making false statement[s]' of facts or 'falsifying a report.'")(quoting United States v. Rosario Fuentez, 231 F.3d 700, 704-05 (10th Cir. 2000); Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1114 (10th Cir. 2001)).   The Court

therefore concludes that Ficke's arrest for domestic violence and child abuse is not probative of his character for truthfulness or untruthfulness under rule 608(b), and will not allow Aranda-Diaz to inquire into these areas on cross examination.

**B.     THE DANGER OF UNFAIR PREJUDICE THAT FICKE'S ARREST FOR DOMESTIC VIOLENCE AND CHILD ABUSE PRESENTS SUBSTANTIALLY OUTWEIGHS THE EVIDENCE'S PROBATIVE VALUE.**

Even if rule 608(b) counseled that the circumstances surrounding Ficke's arrest are sufficiently probative of his character for truthfulness and untruthfulness to allow Aranda-Diaz to inquire into them on cross examination, the danger of unfair prejudice that they present substantially outweighs their probative value.   The Court will thus alternatively preclude Aranda-Diaz from inquiring into the circumstances surrounding Ficke's arrest and his charges for domestic violence and child abuse under rule 403.   Because the United States intends to call Ficke as a narcotics expert, however, the Court concludes that the danger of unfair prejudice presented by allowing Aranda-Diaz to elicit that Ficke resigned from his position with the APD as a narcotics officer, and that he no longer works in law enforcement as a narcotics officer, without mention of his arrest or the charges, does not substantially outweigh this evidence' value to his credibility.

The Court in the past has recognized the danger of unfair prejudice that testimony about domestic violence presents.   See, e.g., Montoya v. Sheldon, 898 F. Supp. 2d 1259, 1277 (D.N.M. 2012)(Browning, J.)("The Court concludes . . . that the danger of unfair prejudice and the possibility of confusing the issues for the jury substantially outweighs the probative value of allowing into evidence that M. Montoya . . . was charged with felony domestic violence . . . .").   In United States v. Perea, No. CR 09-1034 JB, 2010 WL 1781905 (D.N.M. Apr. 15, 2010) (Browning, J.), for example, although the Court found that a fourteen-year-old domestic abuse

incident would be particularly probative of the victim's credibility and bias, where the victim put

"her credibility . . . at issue" by representing that she would change her testimony at the trial to

favor the defendant -- her husband and the abuser in the incident -- the Court precluded any

discussion about domestic violence.   2010 WL 1781905, at **5-6.   The Court noted that it was

"concerned about the risk of unfair prejudice to L. Perea [the defendant husband] that arises from

discussing a fourteen-year-old domestic-violence incident and alleged assault of T. Perea [the

victim and witness]."   2010 WL 1781905, at *5.   Because L. Perea intended to call T. Perea

notwithstanding that she represented she was going to stick to her altered testimony, the Court

noted that "it likely will allow the United States to ask its question" about the domestic violence.

2010 WL 1781905, at *6.   To prevent any unfair prejudice that might arise from mentioning the

domestic violence incident, the Court reasoned that, if L. Perea called T. Perea and she indeed

changed her story, the Court would allow the United States to elicit her bias, but would not allow

mention of domestic violence:

> To limit as much as possible the prejudice any questioning about the incident may pose, the Court has, with Mr. Winterbottom's help, rewritten the United States' question to eliminate some of that prejudice. The second question will read: "Isn't it true that when officers attempted to interview you about an unrelated incident in 1996, that you remarked to officers that you were scared that, if you talked to the officers, your husband would kill you?" The Court will also limit the United States to this one question about T. Perea's statement to law-enforcement officers in 1996, that she was not willing to speak to law-enforcement because she feared her husband would kill her. The Court will, therefore, most likely permit the proposed question the United States submitted. The Court cautions, however, that if T. Perea denies having made such statement in 1996, the United States shall not inquire further, nor present any collateral evidence that T. Perea made such statement.

2010 WL 1781905, at *6.

The evidence about Ficke's arrest for domestic violence and child abuse, even given its

greatest maximum reasonable value, is not probative of any material issue in the case, and the danger of unfair prejudice that evidence about this arrest presents to United States and to Ficke, even given its minimum reasonable prejudice, is substantial.   As the Court concluded in Montoya v. Sheldon and United States v. Perea, mention of domestic violence presents substantial prejudice.   And testimony about Ficke's domestic violence, and especially when paired with child abuse allegations, is the evidence that rule 403 was designed to exclude, as it is evidence that will evoke an emotional response from the jury, and presents a danger that the jury will discredit Ficke based solely upon these allegations rather than based upon his testimony and credentials as a narcotics expert.   Cf. United States v. Rodriguez, 192 F.3d at 951 ("'Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.'")(quoting United States v. Roberts, 88 F.3d 872, 880 (10th Cir. 1996)).   In United States v. Perea, the witness was the domestic violence victim and intended to change her testimony to benefit the defendant, who was her husband, and the domestic violence incident between the witness and the defendant thus was particularly important to her testimony and also likely to the defendant's conviction.   In comparison, Ficke's arrest for domestic violence does not play into any of the material facts in this case, nor is it, as the Court concluded, particularly probative of his credibility.   The Court therefore concludes that the danger of unfair prejudice that evidence related to Ficke's arrest, and the domestic violence and child abuse charges for which he was arrested, presents substantially outweighs its probative value.   The Court will therefore preclude, under rule 403, any evidence related to Ficke's February 2013 arrest.

- 18 -

II.  **THE COURT WILL ALLOW ARANDA-DIAZ TO INQUIRE INTO EVIDENCE THAT FICKE FACES STATE FELONY CHARGES, BECAUSE THIS EVIDENCE IS PROBATIVE OF FICKE'S BIAS, AND IS THUS PROBATIVE OF HIS CHARACTER FOR TRUTHFULNESS OR UNTRUTHFULNESS UNDER RULE 608(b), BUT THE COURT WILL EXCLUDE THE UNDERLYING CHARGES, AND EXCLUDE THAT THESE CHARGES LED TO FICKE'S RESIGNATION FROM THE APD.**

The Court concludes, however, that the danger of unfair prejudice of allowing Aranda-Diaz to inquire into Ficke's pending felony charges, and whether Ficke still works for the APD, or as a law enforcement officer at all, as long as the Court excludes any mention about his February 2013 arrest for domestic violence and child abuse, does not substantially outweigh the evidence's probative value.   In addition to "[t]he classic example of a permissible inquiry" under rule 608(b) -- an inquiry into "an incident in which the witness had lied," United States v. Bocra, 623 F.2d at 288, -- courts have established that rule 608(b) includes allowing impeachment of a witness' character for truthfulness or untruthfulness by exposing a witness' bias.  See United States v. Baldridge, 559 F.3d at 1135 ("It is permissible impeachment to expose a witness's bias.")(citing United States v. Abel, 469 U.S. at 51).   The Tenth Circuit has directed that, in the criminal context, "'defense counsel should ordinarily be given wide latitude when cross examining a witness about credibility or bias.'"   United States v. Rosario Fuentes, 231 F.3d at 704 (citation omitted).

The United States Courts of Appeals, including the Tenth Circuit, favor allowing a defendant to inquire into a government witness' pending or possible criminal charges to expose the witness' possible bias.  See United States v. Landerman, 109 F.3d at 1062-63; United States v. Sarracino, 340 F.3d 1148, 1167 (10th Cir. 2003)(holding that the district court's refusal to allow the defendant to inquire into the government's lead investigator's resignation for misuse of the

government's computer on cross examination, for which "he could possibly have faced criminal charges," violated the defendant's confrontation clause rights, because it could have shown the witness' motivation or bias for testifying). The Tenth Circuit, in Nuckols v. Gibson, 233 F.3d 1261 (10th Cir. 2000), held that, by failing to disclose a "crucial" government witness' possible state charges for theft, the government violated the disclosure requirements of Brady v. Maryland, 373 U.S. 83 (1963).   Nuckols v. Gibson, 233 F.3d at 1267.   The Tenth Circuit reasoned that Brady v. Maryland and Giglio v. United States, 405 U.S. 150 (1972), required the government to disclose this information, as it was material impeachment evidence, because "[t]hose facts are impeaching. They would have provided the defense with the opportunity to call into question whether [the witness] had a motive for his testimony regarding the initiation of the interrogation resulting in Petitioner's confession."   Nuckols v. Gibson, 233 F.3d at 1267.

In United States v. Landerman, the Fifth Circuit held that the district court erred in preventing the defendants from inquiring, on cross examination of a prosecution witness, into "his pending felony charge in state court and any effect it might have on his motivation to testify in the instant federal proceeding."   109 F.3d at 1061.   The witness at issue, one of the original defendants in the case, who was facing unrelated state charges for cocaine trafficking, pled guilty to two counts of fraud in exchange for his testimony at trial, and included in the plea agreement was a provision which provided that, "[u]pon request of the defendant, [the] United States agrees to bring to the attention of any other prosecuting authority the nature and extent of the defendant's cooperation."   109 F.3d at 1061 (internal quotation marks omitted)(alterations in original).   The district court allowed cross examination about the witness' convictions related to the case, his plea agreement in exchange for dismissal of fifteen other pending charges, and that the agreement

- 20 -

likely would cause a shorter sentence, which he conceded was a benefit.   See 109 F.3d at 1061-62.

The Fifth Circuit explained that district court excluded, however, the cross examination testimony

related to the witness' pending state charges, which the defense proffered outside the jury's

presence, concluding that, even if the testimony had some relevance, rule 403 counseled the

evidence's exclusion:

> Defense counsel tendered cross examination questions regarding the pending state charge, and the district court allowed [the witness] to answer those questions outside the presence of the jury.  [The witness] admitted that the state case, which carried a potential life sentence, was pending when he entered into the plea bargain with the Government.  When asked whether he expected the Government to make a favorable recommendation to the state prosecutor regarding his cooperation, [the witness] answered that he did not know and that it had not been discussed.

> Defense counsel then offered the testimony, arguing that it showed [the witness'] motive to testify, his bias, and his prejudice.  The court responded as follows: "Well, I haven't heard him say anything that would cause you to think that that's so.  So if that's the reason it's being offered, I will exclude the testimony.  Even if it had some slight relevance, its improper or undue prejudicial effect would outweigh it."

United States v. Landerman, 109 F.3d at 1062.   The Fifth Circuit held that exclusion of this

testimony was error, and violated the defendants' rights under the Confrontation Clause of the

Sixth Amendment to the United States Constitution, because of the probative value of the "effect

that [the witness'] pending criminal charge might have on his motivation to testify."   109 F.3d at

1063.   The Fifth Circuit reasoned:

> Here, the jury was informed that [the witness] had pleaded guilty to two federal offenses and was awaiting sentencing. The district court's ruling nevertheless precluded the jury from learning of the pending state charge, which, especially in light of the plea agreement provision to relate [the witness'] cooperation to any other prosecuting authority, would allow the jury to conclude that "there was considerable incentive for him to 'slant, unconsciously or otherwise, his testimony in favor of or against a party.'" United States v. Cooks, 52 F.3d 101, 104 (5th Cir.1995). . . .   In light of the fact that [the witness'] testimony

was critical to the prosecution's case and the pending charge carried the potential of a life sentence, we conclude that the district court erred . . . .

109 F.3d at 1063.

The Court concludes that the Sixth Amendment's Confrontation Clause requires, and rule 608(b) permits, allowing Aranda-Diaz to inquire into Ficke's arrest to some extent, because they are probative of his possible bias in testifying for the United States in this case. Whereas the witness in United States v. Landerman, in his plea agreement, obtained a promise from the United States that it would "bring to the attention of any other prosecuting authority the nature and extent of the defendant's cooperation," 109 F.3d at 1061, there is no evidence that Ficke has any such agreement in place with the United States here. Nevertheless, it is possible that, by virtue of him testifying on the United States' behalf, in a case which began with the APD's arrest of Aranda-Diaz, he thinks he will obtain some benefit in his pending state felony charges. As the Fifth Circuit pointed out in United States v. Landerman, this possibility provides "considerable incentive for him to 'slant, unconsciously or otherwise, his testimony in favor of or against a party.'" 109 F.3d at 1063 (quoting United States v. Cooks, 52 F.3d at 104). Given that "the right of confrontation [i]s infringed when the trial judge exclude[s] an entire area of possible bias of a government witness from inquiry by defense counsel," and that the Tenth Circuit has pointed out it has at least "implicitly found a violation of the right of confrontation in circumstances where, like the instant case, the impeachment material concerned possible, not pending, criminal charges," the Court will allow Aranda-Diaz some inquiry into Ficke's pending state charges. United States v. Sarracino, 340 F.3d at 1167 (citing Nuckols v. Gibson, 233 F.3d at 1267).

Moreover, the United States intends to call Ficke as a narcotics expert in this case. That Ficke no longer works for the APD or any other law enforcement agency reflects on his credibility,

reliability, and accuracy as a narcotics expert, and the amount of weight the jury should give to his testimony, even if indirectly only.   In addition, rule 608(b) governs the admissibility of prior bad acts, and that Ficke no longer works for the APD or as a narcotics officer for any law enforcement agency -- when separated from the reasons therefore -- is not a prior bad act, but is rather evidence of the current state of his affairs.   The jury is allowed to determine the amount of weight to give to experts, and that Ficke is not currently working in the area in which he asserts that he has expertise is an important factor for the jury to know in making that determination.   The Court thus concludes that it should afford Aranda-Diaz the ability to elicit that Ficke, a narcotics expert, resigned from the APD where he was working in narcotics, and that he no longer works in law enforcement.

The Court is nevertheless still concerned about the substantial danger of unfair prejudice that will result from allowing the jury to hear that Ficke's pending charges are domestic violence and child abuse charges.   Aranda-Diaz is not requesting that the Court permit him "unfettered cross-examination into Ficke's state court charges."   MIL Response at 4.   Rather, he

> seeks to question Ficke about: (1) the existence of felony criminal charges pending against him; (2) the fact those charges led him to resign from the APD; (3) whether Ficke received any, or expects to receive any, benefit from the Government for his testimony (e.g., promises that his testimony will be rewarded by the Government making a favorable recommendation to state prosecutors).

MIL Response at 4.   Given that "[t]he complete denial of access to an area properly subject to cross-examination infringes on the Sixth Amendment right of confrontation, and constitutes reversible error," United States v. Rosario Fuentez, 231 F.3d at 704 (United States v. Jorgenson, 451 F.2d 516, 519 (10th Cir. 1971)), the Court believes that two of these requests -- asking whether Ficke has pending state criminal charges and asking about any possible benefit in exchange for his

testimony -- are reasonable, and strike the proper balance between the evidence's probative value and the danger of unfair prejudice that more evidence about the underlying facts would infuse into the trial.

As to his second request, however, the Court will not allow Aranda-Diaz to elicit that he resigned from the APD because of his state criminal charges.   The Court reached this decision after a series of considerations about the extent to which Ficke's charges are relevant to material issues.   The Court initially considered excluding mention that the pending state charges were felony charges.   There is more prejudice, especially given the amount of information the jury in this trial will necessarily come to know about what conduct constitutes a felony, to Ficke and to the United States when the jury is informed that the pending charges are felony charges.   But that added prejudice does not outweigh the added probative value that telling the jury that Ficke faces felony charges supplies to the reason that the charges are relevant: Ficke's possible bias.   The nature of the charges -- whether they are misdemeanor or felony charges -- goes to the degree of bias.   Allowing the jury to know that a charge is a felony informs the jury that Ficke faces a more serious charge, which carries a stiffer penalty, and provides the jury material information with which it can assess whether that heightened penalty provides Ficke with more of an "incentive for him to slant . . . his testimony in favor of" the United States.   United States v. Landerman, 109 F.3d at 1063 (internal quotation marks omitted)(quoting United States v. Cooks, 52 F.3d at 104).

That these felony charges led to Ficke's resignation from the APD is on separate footing. This information adds no probative value, but adds the danger of prejudice.   Thus, Aranda-Diaz is not offering this evidence for any proper purpose, and inquiry into this area would be only for purposes of attacking Ficke.

The Court concludes that the fact that Ficke no longer works as a narcotics officer is probative of his reliability and accuracy as a narcotics expert.   The reasons that he resigned from and no longer work in law enforcement have no bearing on his reliability and accuracy, because it does not change the fact that he does not work as a narcotics officer.   Moreover, whereas the Court concluded that allowing the jury to know that the charges are felony charges adds to the evidence's probative value, because the evidence is probative of Ficke's bias, that Ficke resigned from the APD because of the criminal charges does not add any probative value to his bias. Whereas it may be possible for the United States to affect the state criminal case against Ficke by making a favorable recommendation to state prosecutors, there is no evidence, and the Court believes that Aranda-Diaz cannot present any evidence, that the United States can in any way affect the termination of his employment with APD.   The Court therefore concludes that evidence that the domestic violence and child abuse charges led to Ficke's resignation from the APD is not admissible.   Accordingly, the Court will not allow Aranda-Diaz to ask Ficke whether the pending state "charges led him to resign from the APD."   Motion in Limine at 4.

The Court will therefore allow Aranda-Diaz to ask: (i) whether he resigned his position as a narcotics officer with the APD; (ii) whether he currently works as a narcotics officer in law enforcement; (ii) whether Ficke is facing pending state criminal felony charges; and (iv) whether he received any, or expects to receive any, benefit from the United States for his testimony.   The Court will not allow Aranda-Diaz to elicit the underlying charges, and, assuming that Ficke answers these questions truthfully, the Court will not permit further inquiry into these areas.

**IT IS ORDERED** that the United States' Sealed Motion *in Limine* to Prohibit Cross-Examination of Patrick Ficke, filed July 17, 2013 (Doc. 72), is granted in part and denied in

part.   The Court will exclude from trial any evidence about Albuquerque, New Mexico Police Department ("APD") Sergeant Patrick Ficke's February 2013 arrest for domestic violence and child abuse.   The Court will, however, allow Defendant Yuren Aranda-Diaz, on Ficke's cross examination, to elicit that he faces state law felony charges, that he resigned from the APD, and that he no longer works with law enforcement as a narcotics officer.   The Court will permit Aranda-Diaz to ask: (i) whether he resigned his position as a narcotics officer with the APD; (ii) whether he currently works as a narcotics officer in law enforcement; (iii) whether Ficke is facing pending state criminal felony charges; and (iv) whether he received any, or expects to receive any, benefit from the United States for his testimony.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
David M. Walsh
Novaline Wilson
   Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Todd A. Coberly
Coberly & Attrep, LLLP
Santa Fe, New Mexico

     *Attorneys for the Defendant*