## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                               No. CR 12-2686 JB

YUREN ARANDA-DAIZ,

       Defendant.

## MEMORANDUM OPINON AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed February 10, 2014 (Doc. 153)("Sentencing Memo."). The Court held a hearing on May 21, 2014. The primary issues are: (i) whether, pursuant to U.S.S.G. § 3E1.1, the Court should reduce Defendant Yuren Aranda-Diaz' offense level by two levels for acceptance of responsibility; (ii) whether the Court should, in sentencing Aranda-Diaz for the offenses underlying this case, vary from the applicable guideline sentencing range under the United States Sentencing Guidelines; and (iii) whether the Court should run Aranda-Diaz' sentence for the violation of supervised release in United States of America v. Aranda-Diaz, No. CR 08-2344 JB ("Aranda-Diaz I"), concurrently to the sentence imposed in this case or otherwise vary from the applicable guideline range. As the Presentence Report, disclosed October 10, 2013 ("PSR"), correctly concludes, because Aranda-Diaz pled guilty only to some of the offenses charged, and did so only on the morning of trial, after the Court and Plaintiff United States of America had expended considerable resources preparing for trial, Aranda-Diaz has not clearly demonstrated that he accepts responsibility for his offenses. The Court will not, therefore, reduce Aranda-Diaz' offense level by two levels for acceptance of responsibility. With respect to the sentence in

this case, the Court will not vary, because it concludes that the punishment set forth in the guidelines is sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat.1987 (codified as amended in scattered sections of 18 U.S.C.).  With respect to the sentence for the supervised-release violation in Aranda-Diaz I, the Court will run a portion of the sentence concurrently to the sentence imposed in this case,  and will vary downward slightly, because the punishment set forth in the guidelines is greater than necessary to comply with those purposes.

## FACTUAL BACKGROUND

The Court has previously explained the facts and circumstances surrounding the United States' arrest of Aranda-Diaz.   See  United States v. Aranda-Diaz, No. CR 12-2686 JB, Memorandum Opinion and Order at 2-3, filed July 11, 2013 (Doc. 56)("MOO").  The Court incorporates those facts here, and will add only those facts sufficient to give context to this Memorandum Opinion and Order.

The APD arrested Aranda-Diaz after an undercover controlled purchase operation in which a confidential informant ("CI") arranged to use an unwitting informant, Jessie Lopez, as an intermediary for the purchase of heroin from a drug dealer known to the CI as "Oso."  MOO at 2.  The CI drove Lopez to a location at which APD officers observed the CI park the CI's vehicle and saw a Chevrolet Suburban driven by Aranda-Diaz enter a nearby driveway.  See id. at 2.  Lopez then exited the CI's vehicle and entered the Suburban; moments later, he exited the Suburban and reentered the CI's vehicle.  See id. at 2-3.  Shortly thereafter, the APD officers blocked in the Suburban and arrested Aranda-Diaz, who was the driver and the only person in the Suburban.  See id. at 2-3.

## PROCEDURAL BACKGROUND

The Court will discuss the procedural background in four parts.  First, it will discuss Aranda-Diaz' convictions and sentence in Aranda-Diaz I.  Second, it will discuss the charges against Aranda-Diaz in this case; the resulting petition for revocation of the supervised release imposed in Aranda-Diaz I; his guilty plea to some of the charges in this case; and his trial.  Third, it will discuss the papers that relate primarily to the sentencing, but touch only briefly on the supervised-release violation.  Fourth, it will discuss the hearing.

### 1.      The Charges Against Aranda-Diaz in Aranda-Diaz I.

This case is not the first one in which Aranda-Diaz appeared before the Court.   In Aranda-Diaz I, Aranda-Diaz pled

> guilty to . . . a violation of 18 U.S.C. §§ 922(g)(1) and 924, that being a felon in possession of a firearm and ammunition; . . . a violation of 18 U.S.C. § 922(g)(5)(A) and 924(a), that being an alien in possession of a firearm and ammunition; and . . . a violation of 8 U.S.C. §§ 1326(a) and (b), that being re-entry of a removed alien.

Plea Agreement ¶ 3, at 2, filed June 28, 2010 in Aranda-Diaz I (Doc. 88).  The Court sentenced Aranda-Diaz to 37 months imprisonment and a 3-year period of supervised release.   See Judgment passim, filed May 3, 2011 in Aranda-Diaz I (Doc. 107).

### 2.      The Charges Against Aranda-Diaz; the Petition for Revocation; His Plea; His Trial.

In this case, on October 23, 2012, a federal grand jury charged Aranda-Diaz with six federal crimes, including: (i) Count 1: a violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), alien in possession of a firearm and ammunition; (ii) Count 2: a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession of a firearm and ammunition; (iii) Count 3: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute heroin; (iv) Count 4: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), distribution of heroin;

(v) Count 5: a violation of 18 U.S.C. § 924(c), possession and carrying a firearm during and in relation to a drug trafficking crime; and (vi) Count 6: a violation of 8 U.S.C. §§ 1326(a) and (b), reentry of a removed alien.  See Indictment, filed October 23, 2012 (Doc. 12).

In the Petition for Revocation of Supervision for a Defendant Previously Deported, filed 10/23/2012 in Aranda-Diaz I (Doc. 110)("Petition"), the Probation Officer alleges that, because Aranda-Diaz has committed these offenses, he has violated a mandatory condition of his supervision in Aranda-Diaz I: "The defendant shall not commit another federal, state, or local crime."  Petition at 1 (internal quotation marks omitted).  The United States moved to detain Aranda-Diaz.  See Motion for Detention at 1, filed November 1, 2012 in Aranda-Diaz I (Doc. 114).  The Honorable W. Daniel Schneider, United States Magistrate Judge, ordered that Aranda-Diaz be detained.  See Order of Detention Pending Supervised Release Revocation Hearing at 1, filed November 1, 2012 in Aranda-Diaz I (Doc. 116).

On July 24, 2013 -- the day of trial in this case -- Aranda-Diaz pled guilty to charges 1, 2, and 6 of the Indictment.  See Corrected Plea Minute Sheet, filed July 24, 2013 (Doc. 115). Specifically, he pled guilty to being an alien in possession of a firearm, felon in possession of a firearm, and illegal reentry of a removed alien.  See Indictment at 1-4.  On July 25, 2013, a jury convicted Aranda-Diaz of the remaining crimes: possessing heroin with intent to distribute it, distributing heroin, and possessing or carrying a firearm during and in relation to a drug trafficking crime.  See Redacted Jury Verdict, filed July 25, 2013 (Doc. 114).

**3.    Materials That Relate Primarily to the Sentencing.**

In the PSR, the United States Probation Office ("USPO") does not apply the reduction for acceptance of responsibility, explaining:

> The defendant and defense counsel have not provided a statement regarding the defendant's acceptance of responsibility.  It is noted the defendant

pled guilty to Counts 1, 2, and 6, the day his jury trial began. The government attorney advised that in preparation for the government's litigation arguments, two key witnesses were arranged to provide testimony concerning this case, both of whom were flown in from out of state (Washington D.C. and Texas). Based on this information, an adjustment for acceptance of responsibility will not be applied.

PSR ¶ 17, at 7. The USPO calculates Aranda-Diaz' adjusted offense level at 20 and his total criminal history category at V. See PSR ¶ 51, at 17. The USPO bases its calculation of Aranda-Diaz' criminal history category, in part, on a conviction for Possession of a Controlled Substance in the Second Judicial District Court, Albuquerque, New Mexico, for which he was sentenced to 18 months probation on April 1, 1999. See PSR ¶ 43, at 12. According to the PSR, his probation was revoked on December 20, 1999, for which he was "sentenced to 18 months custody, 1 year parole." PSR ¶ 43, at 12. On August 16, 2000, Aranda-Diaz was "[d]eported to Mexico through El Paso, Texas," PSR ¶ 43, at 12, meaning that he did not serve the full term of his imprisonment. This combination of an offense level of 20 and a criminal history category V yields a guideline imprisonment range of 63 to 78 months; "[t]he guideline sentence for Count 5" -- that is, possessing or carrying a firearm during and in relation to a drug trafficking crime -- "is the minimum term of imprisonment required by statute," namely, five years imprisonment. PSR ¶¶ 89- 90, at 25-26.

In the Sentencing Memo., after restating his convictions and the PSR's guideline calculations, see Sentencing Memo. at 1-3, Aranda-Diaz notes that he

is a 39 year old male born in Mexico and living in the United States since age two. He speaks [b]oth Spanish and English but does not read or write in either English or Spanish. He was a Lawful Permanent Resident until his LPR status was revoked after the controlled substance conviction in 1999 and he was deported in 2000.

Aranda's parents and siblings all reside lawfully in the United States. Arand[a]s's [sic] father is Armando Aranda and his mother is Maria Diaz. Both are 75 years old and both reside in Albuquerque, New Mexico. His father

suffered from a heart attack in 2007 but his parents are otherwise in good health. All of Aranda's siblings reside in Albuquerque except for one brother who resides in Denver, Colorado.  All are employed and all are in good hea[l]th.

Aranda has been married to Stephanie Soza for 16 years and the couple has three children, Josephine Aranda, age 20, Natalie Aranda[,] age 17 and Angel[ee] Aranda, age 11.  His children reside with their mother and are reported to be in good health.

Aranda has be[en] diagnosed with adenoiditis, arm pain, skin infection, lesions underneath tongue ([squ]amous cell carcinoma-form of skin cancer), hepatitis C virus, opioid withdrawal and tendinitis.

Aranda has a history of illegal drug use dating back to when he was twelve years old.  He reports having attended a substance abuse program at Turquoise Lodge from 2002 to 2003.  He also reports having been shot and stabbed on two occasions resulting in hospitalization.  He was also hospitalized for a collapsed lung due to drug use.

Aranda has a serious drug use problem having been addicted most of his life.  He is interested in substance abuse counseling in the Bureau of Prisons. Aranda attended Albuquerque Public School until the ninth grade when he dropped out.  Aranda was in special education due to a learning disability for all of the time he was in school.  He has no post high school education or training.

Aranda worked for a construction company for a little over one year[] and was self[-]employed doing construction work off and on for nine years.  His employment history shows a person with sporadic employment and no specialized training.

Aranda returned to the United States after having been deported.  It is no mystery as to why he returned.  All of his immediate family members live in the United States.  He came to the United States at two years of age.  He attended school from the first grade to the ninth grade.  He has a wife and three children who are United States Citizens.  He resided continuously in the United States twenty five years before being deported.  He lived outside [o]f the United States in Mexico for less than two years.  All of his family and cultural ties are in the United States.

Aranda realizes that he s[hou]ld have done things different in is life.  H[is] choices have resulted in his incarceration, the loss of his family while incarcerated and after being deported.  The only way that Aranda can reunite with his family after completing his sentence in this case is for his family to relocate to Mexico. Given the economic situation and the danger posed by the drug cartels in Mexico it is unlikely that his family would even consider moving to Mexico.

Most of Aranda's problems stem from his drug use.  As noted above he has been addicted almost all of his life.  He sought treatment at Turquoise Lodge in Albuquerque and was on Methadone while attempting to overcome his addiction but obviously he was not successful.  We don't and can never know if more or different treatment could have changed Aranda's history but I think we can all agree that there is a woeful lack of resources for a person in Aranda's position.  Additionally, Aranda is illiterate and has very little education.

We can't say that any one of his problems necessarily leads to any other problem but we can say the lack of resources did not help his situation.  It can be and probably will be argued that others in similar situations have been able to lead more productive and lawful lives.  However, none of us can say with certain[t]y that if we were in Aranda's shoes our outcome would have been different.

The Court in determining the particular sentence to impose shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).  The history and circumstances of this case do not warrant the severe sentence contemplated in Guideline calculations. A downward variance is warranted based on the history and characteristics of this defendant.

Sentencing Memo. at 3-6.

Aranda-Diaz objects to the PSR's refusal to award him a reduction for acceptance of responsibility, because, although Aranda-Diaz went to trial on three Counts, he pled guilty to three other Counts.  See Sentencing Memo. at 6.  In his view, he has admitted the conduct as to three offenses and "did not falsely deny additional [r]elevant [c]onduct."  Sentencing Memo. at 6.  Aranda-Diaz' counsel also notes that "Aranda did not participate in sentencing preparation as he believes that counsel is not acting in his best interest."  Sentencing Memo. at 6.  He adds that "Aranda indicated that he would file a motion to withdraw counsel which should explain his concerns."  Sentencing Memo. at 6 n.1.

The USPO, in its Addendum to the Presentence Report, disclosed February 13, 2014 ("PSR Addendum"), responds to Aranda-Diaz' objection as follows:

Although the defendant did plead guilty to Counts 1, 2 and 6 of a six-Count Indictment on July 24, 2013, this was the day the defendant's jury trial began. Furthermore, he did not plead guilty to Counts 3, 4 and 5 of the same Indictment.

- 7 -

> The defendant was found guilty of those offenses through a jury trial on July 25, 2013.  The government prepared two witnesses to provide their testimony regarding the case, both from out of State.  The defendant did not assist authorities in the investigation or prosecution of the misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.  Pursuant to U.S.S.G. § 3E1.1, Application Note 2, a reduction for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt."  Based on this information, the United States Probation Office stands by its assessment and finds that a reduction for acceptance of responsibility is not warranted.

PSR Addendum at 1.

In the United States' Response to Defendants' Sentencing Memorandum, filed February 28, 2014 (Doc. 155)("Response"), it "recommends a sentence at the high end of the applicable guideline range of 63-78 months."  Response at 1.  It recommends a total sentence of no less than 138 months of imprisonment -- taking into account that a sentence within the Guideline range must run consecutive to Aranda-Diaz' mandatory sentence of five years for violating 18 U.S.C. § 924(c) -- and an additional "consecutive term of imprisonment for having violated his conditions of supervised release."  Response at 1.  After briefly reviewing the case's history, see Response at 1, the United States underscores its response to Aranda-Diaz' objection, saying that he

> pled guilty to those three counts the morning of trial after the government had prepared its case and subpoenaed witnesses to be present at trial on all six counts of the indictment.  In fact, in order to prove Count 6, the offense of re-entry of a removed alien, the United States had expended considerable resources and flown in a fingerprint expert witness from the Washington D.C. area and a border patrol witness from Texas, both of whom were in Albuquerque and were preparing to testify at the time Defendant chose to plead guilty to the aforementioned three counts.

Response at 2.  It argues that, because Aranda-Diaz' guilty plea was not timely, the Court should not give him a reduction in offense level for any acceptance-of-responsibility.  See Response at

2.

>It then reviews the case's facts:

>>In the instant case, Defendant was arrested pursuant to a "buy bust" operation after an informant purchased $750.00 worth of heroin in the area of 5th and Menaul NW in Albuquerque, New Mexico.  Detectives from the Albuquerque Police Department retrieved $750.00 from Defendant's sock and recovered individually packaged heroin in the center console area of Defendant's blue Chevy Suburban.  A digital scale used for weighing narcotics was also seized form inside the vehicle as was a loaded .32 caliber pistol that was found on the front driver's seat.

>>After being advised of his Miranda rights, Defendant admitted to being a Mexican national and to having been deported on three previous occasions. Defendant further admitted that he paid a human smuggler $3,000.00 to transport him back to the United States.  As to the firearm, Defendant indicated that he purchased the firearm for protection, as he had previously been shot five times and was concerned about his safety.

Response at 2-3 (citations and footnote omitted).  The United States also notes that, "[a]fter the informant's identity was disclosed . . . , law enforcement learned that the informant's girlfriend was contacted by the unwitting informant, Jesse Lopez, and another individual about the informant's role in the investigation of this case.  After this encounter, informant relocated his premises."  Response at 2 n.1.

The United States argues that Aranda-Diaz is a recidivist, stating that he "is a 38-year-old repeat offender whose adult criminal history dates back to 1995."  Response at 3.  It states that the PSR records eight convictions and many arrests that did not produce convictions, noting that, in particular, Aranda-Diaz "has a penchant for domestic violence."  Response at 3 & n.2.  "In particular, Defendant has convictions for failure to appear (twice), possession of a controlled substance, battery against a household member, false representation, resisting an officer, re-entry of a removed alien (twice), and a felon and alien in possession of a firearm and ammunition."  Response at 3.  It continues:

With respect to Defendant's previous firearms conviction, Albuquerque police officers in 2008 attempted to stop Defendant's vehicle after law enforcement observed hand to hand exchanges near a grocery store. After driving approximately three blocks before stopping, Defendant was encountered with cocaine on his chest, lap, and around his mouth. Inside the Defendant's vehicle, police discovered a loaded .32 caliber pistol, individual pieces of crack cocaine, and $362 in cash. For this offense, the Defendant was allowed to plead to felon and illegal alien in possession of a firearm and ammunition and re-entry of a removed alien in exchange for the government agreeing to dismiss the trafficking charge and the corresponding 924(c) offense. The Court sentenced the Defendant to 37 months and 3 years of unsupervised release.

Response at 3-4 (footnotes omitted). The United States notes that, had Aranda-Diaz "been convicted of this previous § 924(c) offense, he would now be facing a mandatory consecutive twenty-five years of imprisonment for a second § 924(c) conviction. Defendant, therefore, reaped a considerable benefit from this previous plea deal." Response at 4 n.3. Further, the United States notes that Aranda-Diaz "is also facing a supervised release violation in [another criminal case] based on his new crimes." Response at 4 n.4.

Finally, the United States contends that Aranda-Diaz' role in drug trafficking "is not minimal":

Compared to many federal defendants who are mere transporters, the Defendant is a recidivist, armed heroin dealer whose status was described as mid-level by law enforcement. Needless to say, anyone who peddles heroin has little regard for the health and welfare of their customers and for the community at large. Defendant's criminal history, moreover, reveals a societal menace that has refused to reform. All of the additional factors under 18 U.S.C. § 3553(a), such as promoting respect for the law and providing for a just punishment also weigh in favor of a substantial sentence. The sentencing factor, however, that perhaps speaks the loudest is the need to protect the public from the crimes the Defendant would be sure to commit if he were not in custody.

Response at 4. Accordingly, the United States requests a sentence of at least 138 months, together with an unspecified "consecutive term of imprisonment for his supervised release violations." Response at 4.

In his Addendum to Defendant's Sentencing Memorandum, filed March 24, 2014

(Doc. 158)("Sentencing Memo. Addendum"), Aranda-Diaz attaches letters from his family:

Aranda's family is very supportive of him and are willing to render any assistance they can to aid Aranda in this matter[.]  Attached hereto and marked as EXHIBITS "A" through "J" are letters from various family members.  While the letters show a basic misunderstanding of the jurisdiction of this Court, they nevertheless show a strong commitment of support for Aranda.[1]

Aranda's brother Hector writes of a large, close knit family and offers his support.  His nephew Ramiro, his sister Veronica, his nephew Carlos, his sister Maltilde, his niece Myiah and his sister Lucia all offer support for Aranda and their letters show a genuine concern for his plight and affection for Aranda.  No one makes excuses for Aranda's actions but are instead concerned for the person who is their brother and uncle.

Aranda's children, Angelee, Natalie and Josephine, all wrote letters in support of their father.  Angelee is the youngest and she writes about her father being [there] for her and the pain of not having him in her life.  Natalie, Aranda's middle daughter, writes that her father is not a bad person despite having made bad decisions in his life.  She talks about a family who loves and misses him.  Josephine, Aranda's oldest daughter, writes about a very loving man who[se] children are his number one priority.

Looking at Aranda's criminal history, the logical inference is that this is not the person described above.  However, it can also be logically inferred that this is a man with very limited personal resources who has made decisions which, while contrary to public norms, are decisions based on very limited life alternatives given his particular circumstances including but not limited to the fact

---

[1]By "jurisdiction of this Court," Aranda-Diaz was, it appears, referring to the fact that most of the letters focus on the hardship that the family would endure if Aranda-Diaz is deported. Letter from Hector Aranda to To Whom it May Concern at 1-2 (no date provided), filed March 24, 2014 (Doc. 158-1); Letter from Ramiro Cabrera to To Whom it May Concern at 1 (no date provided), filed March 24, 2014 (Doc. 158-1); Letter from Veronica Aranda to To Whom it May Concern at 1 (no date provided), filed March 24, 2013 (Doc. 158-1); Letter from Carlos Cabrera to To Whom it May Concern at 1 (no date provided), filed March 24, 2014 (Doc. 158-1); Letter from Matilde Cabrera to To Whom it May Concern at 1 (no date provided), filed March 24, 2014 (Doc. 158-1); Letter from Lucia Aranda to To Whom it May Concern at 1 (no date provided), filed March 24, 2014 (Doc. 158-1); Letter from Angelee Aranda-Soza to To Whom it May Concern at 1 (dated March 19, 2014), filed March 24, 2014 (Doc. 158-1); Letter from Natalie Aranda-Soza to To Whom it May Concern at 1 (no date provided), filed March 24, 2014 (Doc. 158-1).  As Aranda-Diaz states, whether to deport Aranda-Diaz lies outside the Court's power to decide.  The Court has, nonetheless, reviewed each of those letters, as well as the Letter from Josephine Aranda-Soza to To Whom it May Concern (no date provided), filed March 24, 2014 (Doc. 158-1), and the Letter from Myiah Soza, Faith Soza, and [Illegible] Soza to the Court (no date provided), filed March 24, 2014 (Doc. 158-1), in arriving at its decision.

that besides completing nine years of school in the Albuquerque Public School System, he is illiterate.

Aranda knows that he has made incredibly bad decisions and has struggled throughout his life to change his path but unfortunately finds himself yet again facing the consequences of his bad decisions. He is determined to making changes in his life and to that end has agreed to drug counseling while incarcerated and, if available, training that can help with his educational shortcomings. Aranda is hopeful that he will not revisit his past mistakes.

Sentencing Memo. Addendum at 1-2 (citations omitted).

Aranda-Diaz also replies to the USPO's and the United States' responses to his objection:

With regard to the objection in the sentencing memorandum relating to denial of a sentencing level reduction for acceptance of responsibility, Aranda states that from the beginning of his case, he never denied guilt to counts 1, 2 and 6 and would have plead to those counts early on in his case if given the opportunity. He further states that his former attorney was advised of his position regarding counts 1, 2 and 6 and did not set up a timely plea which resulted in him going to trial.

* * * *

Aranda asks that the Court grant his objection and find that a two sentencing level reduction for acceptance of responsibility should be applied to the sentencing calculations, asks that the Court vary downward based on the arguments presented and further asks the Court run any sentencing in case numbered 08cr2344 JB for the violation of supervised release concurrent with the sentence in this matter.

Sentencing Memo. Addendum at 2-3.

In the USPO's Memorandum, dated May 12, 2014, after rehearsing the history of the detention proceedings and noting that Aranda-Diaz "has been in federal custody a total of 575 days through May 21, 2014" -- the day of his sentencing -- the USPO states that his "adjustment to supervision has been poor." Memorandum at 1. It notes that "[h]e has not been actively supervised since his release from custody due to his deportation." Memorandum at 1. It further states that United States Immigration and Customs Enforcement officials encountered Aranda-Diaz on October 2, 2012, and began this case, charging him with reentry of a removed alien. See

Memorandum at 1 (citing Criminal Complaint, filed October 3, 2012 (Doc. 1). It notes that the

violation in issue is a grade A violation, and that Aranda-Diaz' criminal history category is IV;

together, those factors produce a "revocation imprisonment range of 24-30 months," as well as a

term of up to 3 years of supervised release. Memorandum at 3. Recognizing that Aranda-Diaz

has committed another federal crime and that he has adjusted poorly to supervision, the USPO

"respectfully recommends that supervision be revoked and that the defendant be sentenced to a

term of 24 months custody in the Bureau of Prisons." Memorandum at 3. The USPO does not

recommend any additional term of unsupervised release. See Memorandum at 3.

    **4.**    **The Hearing.**

    During the hearing, the Court asked if there were any objections other than the one on

acceptance of responsibility; Aranda-Diaz stated as follows:

> THE DEFENDANT: Yeah, the '98 possession, I never spent more than a
> year in jail, and they're giving me three points. And that's been over the 10 years.
> And I brought that up to Mr. Encinias and he just told me to bring it up with you.
> I figured if they would have went and got the transcript that we would have been
> able to prove today that I never did more than a year jail time on that charge,
> spoke them, 3 points should have got deducted.

Transcript of Hearing at 2:15-3:7 (Court, Encinias, Defendant), taken May 21, 2014 ("Tr.").[2]

While the Probation Officer went to look for relevant paperwork, see Tr. at 3:8-22 (Court,

Probation, Encinias), Aranda-Diaz' counsel stated:

> MR. ENCINIAS: I did indicate to Mr. Diaz that I have reviewed that and
> I did pull up the last order on the computer which was a probation violation order.
> The probation violation order indicated that and he was sentenced to 18 months.
> He had one day of presentence confinement, 230 days credit time served, which
> gave him an actual sentence of 316 days. I don't know if he got his actual good
> time for that. If he did, he would be right at the 13 month level. But even if he
> were, if it he [sic] were below the 13 month level it is still category 5, because at

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original,
unedited version. Any final transcript may contain slightly different page and/or line numbers.

category 5 is 10, 11, and 12 points.  If he were to have 11, for example, he would be at category 4.  If he were to have 10, that is if he only received one point for that, he would still be a category 5.  I attempted to explain that.

        THE DEFENDANT:  I got sentenced to 18 months probation.  And then I violated that probation.  And then I had 11 months left on my probation.  And I got sentenced to the 11 months in custody, which I only did like five months of that.  The 18 months was probation, and then in custody because I violated the probation.  If they would have went to the '98, '99 violation of probation, they would have seen there that I got sentenced to the rest of my probation, not the 18 month[s].

Tr. at 4:1-5:1 (Encinias, Defendant).  Aranda-Diaz' counsel stated that, even if the Court were to reduce Aranda-Diaz' criminal history, his criminal history category would still be category V; the Court stated, and Aranda-Diaz' counsel confirmed, that a criminal history category of V and an offense level of 20 produces a guideline imprisonment range of 63 to 78 months, which, together with the mandatory minimum sentence that Aranda-Diaz faces, produces a total of 123 months for the bottom end of the guideline range.  See Tr. at 8:19-9:8 (Encinias, Court).  The Court noted that there is a minimum five-year term of supervised release for Count 5.  See Tr. at 9:9-14 (Court).

        With respect to the acceptance-of-responsibility issue, Aranda-Diaz' counsel stated as follows:

        Your Honor, with regard to our objection on page 10, paragraph 37 of the PSR, Mr. Diaz was given no reduction for acceptance of responsibility.  He did go to trial on six total counts in this case.  But he did plea to counts one, 2 and 6.  He admitted to the conduct comprising the offense and he did not falsify or deny any of the relevant conduct.

        Also, Mr. Aranda-Diaz states that from the beginning of this case he never denied guilt as to counts 1, 2 and 6, indicate [sic] that he would have pled guilty to those counts early on in the case if given the opportunity.  He further stated that his former attorney was advised of his position regarding counts 1, 2 and 6.  He ple[d] to 3, 4, and 5 -- excuse me 1, 2 and 6 and did not set up a timely plea which resulted in him going to trial.  I did not follow-up on that.  This is based on the information given to me by Mr. Aranda-Diaz.

Tr. at 5:8-6:1 (Encinias). The United States disagreed, substantially reiterating the arguments in its Response: that it expended significant resources preparing the case for trial, that it did not believe Aranda-Diaz' assertion that his previous counsel had ignored his wish to plea, and that, in the end, given the untimeliness of the plea, the Court should deny the acceptance-of-responsibility adjustment. See Tr. at 6:5-7:15 (Walsh)(citing United States v. Manzanares-Sanabria, 814 F. Supp. 2d 1155 (D.N.M. 2011)(Browning, J.)).

The Court explained, relying on its opinion in United States v. Manzanares-Sanabria, that it would deny the acceptance-of-responsibility points:

> There may be circumstances that are unusual, but this one doesn't present those unusual ones. This was done on the day when the trial was supposed to begin[.] The Government brought in witnesses. I worked all weekend thinking it was a six count case, and so it does put the Court and the Government to work on those, and so I'm going to deny the acceptance of responsibility for the reasons that are set forth in [Manzanares-Sanabria], and the Tenth Circuit cases that are stated therein.

Tr. at 7:20-8:14 (Court).

In support of a variance, Aranda-Diaz substantially reargued the points made in his Sentencing Memo. and Sentencing Memo. Addendum:

> With regard to the reentry, he was brought to the United States at age 2. He speaks English and Spanish. He was a lawful permanent resident till that was revoked in 1999 when he was convicted in the case we just talked about. He[,] all of his immediate family live in Albuquerque [except] the one brother who lives in Denver. He has a lot of, having lived in the United States . . . basically all of his life, he has a lot of contacts in the United States. In addition to that, his wife of 16 years and three children all live in the United States, and are United States citizens. He was in fact that a de facto American citizen, and I would ask the Court to consider regarding his reentry into the United States.
>
> [W]ith regard to the variance argument regarding the other counts, Mr. Aranda-Diaz has had from age 12 a drug addiction problem, a very serious drug addiction problem. He suffered a collapsed lung[] at one time. He has only eight years of education but during that . . . eight years he was in special education. He has very little training. He worked in construction for a year and trained himself and did a lot of work on his own in construction. He has a lot of

> support from his immediate family, and if the Court will look back in the gallery
> there are, there is a number of family members here in support of Mr. Aranda-
> Diaz.  In addition to that, he, we submitted letters on his behalf.  And I would ask
> the Court to consider that [and] any other issue I raised in the memorandum
> [when] considering the history and characteristics of the defendant, and find that a
> downward variance is warranted in this case based on the history and
> characteristics of Mr. Aranda-Diaz.

Tr. at 10:2-11:15 (Encinias).  The Court invited Aranda-Diaz to speak on his own behalf;

Aranda-Diaz briefly reiterated his concerns with his representation, and asked when he would get

a lawyer to prosecute his appeal, but did not raise a substantive variance argument.  See Tr. at

11:16-12:8 (Court, Defendant).  Aranda-Diaz confirmed that he did not have assets.  See Tr. at

12:9-12 (Court, Defendant).

   The United States confirmed that Aranda-Diaz was subject to a guideline imprisonment

range of 63 to 78 months, to run consecutively to the mandatory term of 5 years imposed for

cCount 5; accordingly, the bottom end of the guideline range was 123 months.  See Tr. at 12:22-

13:13 (Walsh, Court).  The United States reiterated its recommendation that the Court sentence

Aranda-Diaz to 138 months, tacking the mandatory minimum to the high end of the guideline

range, for the following reasons:

> [A]s we know, for the instant offense, the defendant pled to three counts and then
> was ultimately convicted of three counts, just to briefly recap, the defendant sold
> an informant approximately $750,000 of heroin.  He was later caught with a
> loaded firearm in his vehicle where he was sitting.  Additional individually
> packaged heroin was found in his vehicle in the center console area, along with a
> scale[.]  The defendant gave a statement to agents from the Department of
> Homeland Security where he admitted to being a Mexican national then admitted
> to having been previously deported several times.  I believe he said 3 times
> pursuant to that statement.  He did not state and did not want to say where he
> obtained his narcotics [from].  He indicated that after he was deported last time
> that he sold or excuse me he paid $3,000 in order to come back into the United
> States.  With regards to the firearm he said he had it for protection . . . , that he
> had been shot previously and obviously the evidence at trial indicated the
> defendant was a drug dealer, a dealer of heroin, and the Court knows the nexus
> between firearms and traffickers.  It's a necessary tool of the trade, so all of that
> certainly made sense.  I think what was also telling which was not really part of

the Government's evidence because it was superfluous . . . that he indicated to the agents pursuant to this interview to the statement that he gave that if deported he would come back again, and I don't think there is going to be any question about that, that that probably will happen again, at least there will be an attempt [to on] his part[.]  The defendant has been committing crimes since 1996 [--] he has convictions for failure to appear, possession of a controlled substance, battery against a household member, as indicated in the Government's brief he has a history of domestic violence arrests.  He has a conviction for resisting an officer, two convictions for reentry of a removed alien, and then he was convicted before Your Honor in I believe the conviction is 2008 for felon in possession of a firearm and alien in possession of a firearm.  It was the same firearm,  and he fit two categories.  And for that sentence the defendant received a 37 month sentence. And one point that I wanted to bring out to the Court with respect to that, and before getting into that I'm looking at the PSR, the arrest was 2008.  Ultimately he was convicted in . . . January of 2011, so there wasn't a whole lot of time between when he served his sentence and when he was back here in the Albuquerque area trafficking heroin, and being in possession of a loaded firearm, and hence being in violation of his supervised release.

But in that case, Your Honor, the defendant had narcotics there as well. He was stopped by the police.  He had cocaine on his chest, lap, and around his mouth.  I think he fled from law enforcement[.  I]inside the defendant's vehicle police discovered a loaded 32 caliber pistol.  There were individual pieces of crack cocaine and [$362.00] in cash.  Now, the defendant was charged with a 924(c) offense as part of the litany of those charges.  Now, one point that I wanted to make, especially in light of defendant indicating that he feels like he's not getting any justice.  He got a considerable break there when the Government agreed to drop the 924(c) offenses as far as the plea deal.  And so that was fine. He gets the 37 months, but and there was some evidence there that we know from the presentence report certainly enough, I think to have gotten to a jury, and to potentially have gotten a conviction.

Now, if that would have happened, the defendant would be facing a mandatory 25 years for a second 924(c) conviction.  So I think I know the Court knows this and as does Mr. Encinias, I think the defendant should consider himself very [fortunate] that he's not being exposed to a mandatory 25 years for this case.  He got a considerable break back in 2011.  So I wanted to make that point for the Court's consideration.

* * * *

Now, so my recommendation, Your Honor, is 138 months.  He caught a break before.  As we know there are a lot of defendants that are convicted for [merely] transporting narcotics.  The defendant is much higher on the food chain, if you will in terms of the drug trafficking world [--] he's a dealer, we know that from trial, and someone who peddles heroin for a living, certainly does not have

much regard for the people that he's selling heroin to in terms of their health, and their overall welfare, but also a heroin dealer is someone who doesn't have much regard for the community at large with which he's trafficking under. Obviously you all know the destructive effects of narcotics and heroin, the misery, the crime and the poverty and someone who is a dealer of that, not a user, bears considerable responsibility for the terrible social fallout from heroin and the devastating effects of what heroin causes to communities.

I think ultimately the defendant has become a menace to the Albuquerque community, he's become a menace to the United States. He's been committing crimes his whole life. He's not going to change. And I think we can tell that he's not going to change by his total lack of remorse here today. He's full of blame shifting, oh, it's his attorney's fault, it's the Court's fault, it's the Government's fault. I beg to differ. I think it's very much the defendant's fault[.] And so I think we need to give him a sentence that is going to catch his attention[,] that's going to meet the statutory factors of 18 USC [§] 3553(a). I think what screams the loudest is that we need to protect the public from the defendant coming back and getting back into his heroin trafficking business and carrying loaded firearms, and violating the laws of the United States. So that is my recommendation for the Court. 138 months and I will also as a precursor will say that I'm also going to be recommending a term of imprisonment for his supervised release violation that should run consecutive to the [138] months.

Tr. at 13:13-18:16 (Walsh).[3]

The Probation Officer returned and explained:

PROBATION OFFICER: There was a Form 13 prepared in this case[.] Officer Tina Parde prepared the report. Unfortunately, she's not here for me to converse with. However, I did pull the New Mexico court's docket sheet. The way it's worded, it says the defendant was sentenced to the department of corrections for 18 months. One day presentence credit. 230 days credit for time served, actual 316 days.

I also conversed with a fellow officer while I was down there, and based off of this information, it sounds like Mr. Aranda-Diaz is correct in that he only served an actual term of 316 days, therefore he would not receive 3 points for that conviction, which would place him at nine points total.

THE COURT: Would he receive one?

---

[3]Aranda-Diaz' counsel disclosed that, before he entered the case, his son, Dominico Encinias, a Untied States Probation Officer, signed the Petition. See Tr. at 9:22-25 (Encinias). See also Petition at 2. The United States had no objection to Aranda-Diaz' counsel representing Aranda-Diaz. See Tr. at 18:17-19:10 (Court, Walsh, Probation Officer).

PROBATION OFFICER:  No, Your Honor, because it falls, it's not within the 10 year time frame.

THE COURT:  So it would reduce it to criminal history category 4?

PROBATION OFFICER:  Yes, it would, Your Honor.

THE COURT:  Okay.

PROBATION OFFICER:  And I apologize for that.

THE COURT:  Let's see, that would make it then 51 to 63 months?

PROBATION OFFICER:  Yes, Your Honor, that's with a base offense level of 20.

THE COURT:  All right.  Any objection to that analysis, Mr. Walsh?

MR. WALSH:  I really haven't had a chance to look at it.  I don't -- that sounded well articulated, unfortunately, so I have no objection.

THE COURT:  Sound correct to you, Mr. Encinias?

MR. ENCINIAS:  Yes, Your Honor.

THE COURT:  Okay.  So I'll eliminate -- that would be zero points there, correct?

PROBATION OFFICER:  Yes.

THE COURT:  So then the guideline range is 51 to 63?

PROBATION OFFICER:  Yes, Your Honor.

THE COURT:  Well, then to run consecutively because we're at the bottom of the range, it would be 111 months?

PROBATION OFFICER:  Yes.

Tr. at 19:18-21:15 (Probation Officer, Court, Walsh, Encinias).

The Court then invited Aranda-Diaz to speak, and he said:

THE DEFENDANT:  What I just understood from Mr. Walsh he's just being biased because of my last case, and he's being biased and there is conflict of interest from my last case, and then my Sixth Amendment rights are violated.

- 19 -

> There is ineffective assistance of counsel on this case. There are so many issues that my rights are violated. And I'm not just saying that because I'm a [crybaby] or anything, I'm just saying it because I don't know how to read and write. When people read me stuff and I'm not a lawyer and if I could see this and you guys can't. I don't know [-- you know,] I'm not a lawyer or nothing, but what I've studied the law so far, there is a lot of things done wrong on my case. And like he explained he's just being biased because of my last case. That's all that I understood from his little speech.

Tr. at 21:19-22:10 (Defendant).

The Court then stated the sentence: after adopting the PSR, overruling the acceptance-of-responsibility objection to the offense level, and sustaining the objection to the criminal history category, the Court noted that Aranda-Diaz' guideline imprisonment range was 51 to 63 months. See Tr. at 22:14-23:10 (Court).[4] In considering the factors that 18 U.S.C. § 3553(a) lays out, see Tr. at 23:8-20 (Court) the Court stated:

> The Court has carefully considered the arguments and circumstances of this case, and does believe there are some factors that Mr. Aranda-Diaz has presented that put downward pressure on his sentence. The Court's always sympathetic when a defendant is brought to the United States at an early age of two years old from and [sic] very culturally simulated. Mr. Aranda-Diaz and I have known each other for a long time now, and he's always been able to converse in English very well. I realize his family lives here, his wife and three children, and that he has a lot of family support that I've seen in the past and will continue to see. And I did read all of the letters that were sent on his behalf, and I appreciate the fact that it's very difficult for him to be deported and sent back to Mexico with all his family here.

> And I think those factors combined put downward pressure in the sense that the Court needs to craft a sentence that promotes respect for the law that provides just punishment and that is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act. So I do think there is those four factors that put some downward pressure on the sentence. There are, however, a number of factors that keep the sentence up in the guideline range as well. One is the seriousness of the offense here. This is a large amount of drugs. I am concerned about affording adequate

---

[4]The transcript records the Court as stating that "[t]he criminal history category is 20, and now the criminal history category is 4, the guideline imprisonment range is 51 to 63 months." Tr. at 23:8-10 (Court). In context, it is clear that the Court meant to state that the offense level was 20, and the criminal history category was IV.

deterrence[;] we may [--] with any sentence we have[,] we may be able to provide general deterrence, but I am concerned about specific deterrence, because I don't see any change that Mr. Aranda-Diaz has had over the years either before me or other judges. In this case he didn't cooperate in any way, he doesn't have to, but he hasn't accepted responsibility. And does not take responsibility for his actions on that day. And the Court also notes that it has been a difficult proceeding because he does blame lots of people throughout the process for his [predicament]. But I think I'll leave it as he hasn't accepted responsibility in this case.

He does have quite an extensive criminal history. And I do think that I need to impose a sentence that protects the public, that avoids unwarranted sentencing disparity among similar defendants with similar criminal records[.] The long criminal history is also one that includes some violence, and he, as Mr. Walsh pointed out may have benefited from the prior conviction and the arrangement that he has, and because he's going to be deported, I can't use supervised release to help Mr. Aranda-Diaz avoid these problems in the future[.] The firearm, the fact that he had been shot before, those are of concern to the Court, and I think keep upward pressure on the sentence, and so those factors, I think outweigh and out balance the mitigating and downward pressure. And I think it causes the Court to believe that the punishment that's set forth in the guidelines is appropriate for this [sort] of offense.

I have considered the Government's request to sentence at the high end of the range, but I normally sentence at the low end of the range unless there is something particularly aggravating about the crime, and in this case while it's a very serious offense and I think it keeps it from falling below the guideline range, I'm not sure it's a reason to crawl up higher into the guideline range, and so the Court will sentence at the low end of the guideline range for 51 months on counts 1, 2, 3, 4 and 6[.] The Court believes that that's adequate to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public. On the deterrence[,] both at a specific and general level. It avoids unwarranted sentencing disparity among defendant[s] with similar records who have been found guilty of similar conduct, and [even though] I cannot use supervised release I'll impose supervised release because I have to,[5] but I really can't supervise Mr. Aranda-Diaz when he leaves the United States. I think this sentence fully and effectively reflects each of the relevant factors in 3553(a).

The Court also believes this sentence is reasonable and as I indicated

---

[5]The Court was alluding to the fact that it must, pursuant to 21 U.S.C. § 814(b)(1)(C), impose a term of supervised release of at least three years on Count 3: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute heroin, and Count 4: a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), distribution of heroin.

earlier, I think this sentence is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act. Therefore as to counts 1, 2, 3, 4 and 6 of the indictment the defendant Yuren Aranda-Diaz is committed to the custody of the Bureau of Prisons for a term of 51 months.  Said terms will run concurrently.  As to count 5 of the indictment, the defendant is committed to the custody of the Bureau of Prisons for a mandatory term of five years, said term will run consecutively for a total of 111 months.  As to counts, 1[, 2,] and 6, the defendant is placed on supervised release for a term of three years.  And as to counts 3, 4 and 5, the defendant is placed on supervised release for a term of five years, said terms will run concurrently and shall be unsupervised for a total term of five years.

   The defendant must comply with the standard conditions of supervised release and the mandatory conditions of supervised release.  The following special conditions will also be imposed.  The defendant must not reenter the United States without legal authorization.  This special condition is imposed because of the defendant's immigration status.

   The Court recommends Immigration and Customs Enforcement begin removal proceedings during service of sentence.  Based on the defendant's lack of financial resources, the Court will not impose a fine.  The defendant shall pay a special assessment of $100 as to each count of conviction [for] a total of $600 which is due immediately.

Tr. at 23:11-28:12 (Court).  The Court asked for objections; hearing none, the Court imposed the

sentence as stated.  See Tr. at 28:13-18 (Court, Walsh, Encinias).[6]

   After discussing Aranda-Diaz' right to appeal and what he needed to do to perfect that

appeal, see Tr. at 28:20-31:5 (Court, Defendant, Encinias),  the Court turned to the supervised-

---

   [6]Although the draft transcript does not record Aranda-Diaz' counsel's response, it is evident that he responded:

   [THE COURT:] Let me ask both counsel if they know of any reason . . .  why the sentence should not be imposed as the Court has stated it other than what may have already been argued to the Court.

   MR. WALSH:  Not from the United States evenings enforcement no, Your Honor.

Tr. at 28:13-18 (Court, Walsh, Encinias).  In all likelihood, the words "evenings enforcement" in the transcript should refer to Leon Encinias, Aranda-Diaz' counsel.

release violation in <u>Aranda-Diaz I</u>, <u>see</u> Tr. at 31:14-16 (Court).  The Court explained the alleged

violation -- in brief, that, by committing the offenses underlying this case, he violated the

condition of his release in <u>Aranda-Diaz I</u> that he would not commit another federal, state, or local

crime; Aranda-Diaz confirmed that he understood the reason that he was before the Court on the

matter.  <u>See</u> Tr. at 31:14-32:21 (Court, Defendant).  The USPO confirmed that the alleged

violation makes revocation mandatory.  <u>See</u> Tr. at 32:23-33: (Court, Probation Officer).  The

Court explained the sentencing parameters that Aranda-Diaz faced: although the guideline range

for his violation together with his criminal history category was 24 to 30 months, the statutory

maximum term of imprisonment was two years; Aranda-Diaz confirmed that he understood his

sentencing parameters.  <u>See</u> Tr. at 33:2-34:6 (Court, Aranda-Diaz).  Aranda-Diaz' counsel

confirmed that Aranda-Diaz intended to admit the violation.  <u>See</u> Tr. at 34:7-12 (Court, Encinias).

The Court then took Aranda-Diaz' plea; after the Court explained Aranda-Diaz' rights, he

admitted to  the charge that he had committed another federal, state, or local crime.  <u>See</u> Tr. at

34:13-37:19 (Court, Defendant).

The Court asked the United States if it wished to present a further factual basis for its

charge; the United States contended that it could ask the Court to take judicial notice of his pleas

of guilty and his convictions.  <u>See</u> Tr. at 37:23-38:12 (Walsh).  The Court asked Aranda-Diaz if

he acknowledged that the United States could prove what was charged; Aranda-Diaz stated he

would not plead that he committed the acts the United States stated, "because it was just proved

illegally in trial."  Tr. at 38:13-31:19 (Court, Defendant).  Aranda-Diaz stated, however, that he

committed the three crimes to which he pled the morning of trial, and the United States conceded

that this admission was sufficient to show this violation.  <u>See</u> Tr. at 38:12-39:1 (Court,

Defendant, Walsh).  The United States stated that it "also [thought] that the Court could take

judicial notice of what he was convicted of even if he doesn't want to own up to that today."
Tr. at 39:1-4 (Walsh). Aranda-Diaz' counsel acknowledged that the United States could prove
the violation. See Tr. at 39:5-9 (Court, Encinias). The United States, Aranda-Diaz' counsel, and
Aranda-Diaz agreed that the Court should revoke Aranda-Diaz' supervision. See Tr. at 39:10-18
(Court, Walsh, Encinias, Aranda-Diaz).

Concluding that Aranda-Diaz had voluntarily, knowingly, intelligently, and
understandingly admitted violating his supervised release, the Court, with Aranda-Diaz' consent,
proceeded to sentencing. Se Tr. at 39:19-40:8 (Court, Encinias). Aranda-Diaz' counsel asked
that the Court run its sentence in Aranda-Diaz I concurrently with the sentence in this case. See
Tr. at 40:9-17 (Encinias). The Court invited Aranda-Diaz to speak; he only agreed with his
counsel's suggestion that the Court should run the sentences concurrently. See Tr. at 40:18-25
(Court, Defendant). The United States explained its position at some length:

> MR. WALSH:    I recommend to the Court that the defendant
> should . . . receive a 24 month sentence and that should run consecutive to the
> sentence that the Court just imposed of 111 months. Obviously based upon my
> remarks to the Court a few minutes ago, I thought the defendant should have
> received a greater sentence. I came in thinking that the guideline range was going
> to be 63 to 78, and plus the 60 months, and that's fine, I thought that was about
> right as far as what was going to be sufficient. As it turned out, the range ended
> up being lower. And that's okay. I appreciate the Court's work on the case and
> probation's, however, I would have contemplated perhaps an upward variance
> [based] upon everything I've said before in terms of the defendant being a repeat
> offender. I don't think that running 24 months concurrently to 111 months is
> sufficient, and achieves justice. It basically would render the Court's previous
> order to the defendant to not commit any further crimes null and void. And I
> think the Court's previous order should have some meaning and effect, going
> back to the 2011 conviction, as I kind of droned on a little bit before, he got a
> pretty good break back then, so I don't think he deserves any further breaks[.]
> The defendant is not going to change. He has no respect for the law as he told the
> agents he plans on coming back as soon as he finishes his time and gets deported
> again. Just looking at his track record we can say that the past does equal the
> future with respect to the defendant. He's going to come back in nine, 10 years
> and going to pick up his drug trafficking activities he's going to pick up his role in
> the criminal underworld. He's going to arm himself. So I'd say given what we

- 24 -

have left to protect the public, I think we need to give him another 24 months on top of the 111 months.  I think that would be just.

THE COURT:  When you were looking at a sentence of 123, and then you were thinking that you were going to ask for a sentence of what did you say.

MR. WALSH:  138 I believe.

THE COURT:  138.

MR. WALSH:  Yes, sir.

THE COURT:  Did you think that that 138 was sufficient.

MR. WALSH:  I thought so.

THE COURT:   And you would have been inclined to then run this consecutive to -- concurrently this portion would you have then.

MR. WALSH:  No, Your Honor I was taking into account the 138 plus the 24 months.

THE COURT:   So you were always going to advocate to run this 24 months consecutively.

MR. WALSH:  Yes, Your Honor.

THE COURT:  All right.  Thank you Mr. Walsh.

MR. WALSH:  Thank you, sir.

Tr. at 41:14-43:12 (Court, Walsh).

The Court then, after reviewing the facts and the basics of the applicable law, found as

follows:

[T]he Court believes that there are some downward pressures on this sentence. First of all, when we focus on this particular crime it's reentering the country.  So typically in these, we've not been treating these nearly as seriously as the drug crimes.  I think I can impose some sentence here without going into the guideline range that provides adequate deterrence in a general level, and I'm trying to think of this as an immigration violation, which those are the ones to which he pled.  I think something, a sentence lower, [will] promote respect for the law[,] provide just punishment[,] put downward pressures on it.  He is going to be deported, and so that puts an additional collateral consequence of his activity.  I can't use

supervised release really effectively to prevent criminal activity and I need to put a sentence together that's sufficient without being greater than is necessary to accomplish the purposes of 3553(a). So I think there [are] about 7 factors that put some downward pressure on the sentence. I do think there are and I've identified about six factors that I think put continued upward pressure to keep it in the guideline range. I do think our supervised release here in Federal Court does have to mean something and so to just run everything concurrently, I don't think would give it meaning. He has commented that he's going to come back to the United States. He has come back a number of times. . . . I have concern that given the pulls to the United States that he will come back. But also while coming back across the [border] is not in itself the most serious offense[,] he did come back and commit crimes[,] so I think I need to provide a sentence that promotes respect for the law, that protects the public, and that avoid[s], again, unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct. That's a little tricky here because oftentimes in this district it's very common to run a lot of it concurrently or much of it concurrently. So I'm going to reduce I think a couple of offense levels just for comparison purposes and use a range of 18 to 24 months to, as a comparison, so I'm varying a . . . couple of offense levels down to 8. Say 18 to 24 months, and I do think that two-thirds of that ought to be served concurrently, and I'll run -- consecutively and one-third of it should run concurrently. And so . . . I'm going to use 18 months as the actual sentence. I think that's adequate to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence[, and] protect the public. It is a variance[,] but I think it avoids unwarranted sentencing disparity among defendants who [have] similar records who have been found guilty of similar conduct[] and because I can't really use supervised release effectively[, because] he's going to be deported, I think this sentence fully and effectively reflects each of the relevant factors in 18 USC Section 3553(a). While the Court's task as a district [j]udge is not to just come in and come up with [a] reasonable sentence, it's to come up with sentence that reflects the factors in 3553(a), I do think this sentence better reflects the factors in 3553(a). I think it's a reasonable sentence, and as I indicated perhaps [more] importantly, I think this sentence is sufficient without being greater than is necessary to comply with the purposes of [punishment] set forth in the Sentencing Reform Act.

Therefore the defendant Yuren Aranda-Diaz is committed to the custody of Bureau of Prisons for a term of 18 months. 12 months of that will run consecutively to 12 CR 02686[-]001 JB, and six months of that sentence will run concurrently to the sentence in 12 CR 02686[-]001 JB; a term of supervised release will not be reimposed. Let me see if there is any comments from counsel before the sentence is entered.

Tr. at 43:22-47:25 (Court).

The United States objected "to the Court's comments about the nature of the violation in

terms of him facing a violation for reentry." Tr. at 48:1-4 (Walsh).  It noted that Aranda-Diaz

also pled guilty "to possessing a firearm while being a convicted felon and being also an  illegal

alien in possession of a firearm."  Tr. at 48:4-7 (Walsh).  It also stated that the Court should not

confine itself to the crimes to which Aranda-Diaz pled, but should also take judicial notice of his

convictions at trial and reassess the sentence in their light.  See Tr. at 48:7-15 (Walsh).  The

Court asked Aranda-Diaz to comment on the proposed sentence; he did not object.  See Tr. at

48:16-20 (Court, Encinias).  The Court stated:

> I understand the Government's position.  And if we had a hearing and I made
> findings, I almost certainly would find that he violated other areas of federal law,
> but since I took his plea and he pled to these I'm going to sentence him according
> to that.  I do think that the other crimes do and the other convictions do keep
> upward pressure on it.  And that's the reason I'm not running it[] all concurrently.
> But some of [it] consecutively, and I think a year more on the sentence is, I think
> that reflects well the factors[,] so I'll overrule the Government's objection and
> order the sentence to be imposed as the Court has stated it.  And again the
> particular reason for it is I think that as it's come out, I think an additional year for
> this violation is sufficient without being greater than is necessary.

Tr. at 48:21-49:9 (Court).

## LAW REGARDING REDUCTIONS FOR ACCEPTANCE OF RESPONSIBILITY UNDER U.S.S.G. § 3E1.1

The defendant has the burden of proving by a preponderance of the evidence that he or

she is entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  See

United States v. Meyers, 95 F.3d 1475, 1486 (10th Cir. 1996); United States v. McMahon, 91

F.3d 1394, 1396-97 (10th Cir. 1996).  The Tenth Circuit reviews "a district court's determination

not to grant a reduction for acceptance of responsibility for clear error."  United States v.

Ochoa-Olivas, 426 F. App'x 612, 613 (10th Cir. June 2, 2011)(unpublished)(citing United States

v. Hutchinson, 573 F.3d 1011, 1032 (10th Cir. 2009)).  In reviewing the district court's findings,

the Tenth Circuit "remain[s] mindful that '[t]he sentencing judge is in a unique position to

evaluate a defendant's acceptance of responsibility.  For this reason, the determination of the sentencing judge is entitled to great deference on review.'"  <u>United States v. Ivy</u>, 83 F.3d 1266, 1292-93 (10th Cir. 1996)(quoting U.S.S.G. § 3E1.1 application note cmt. 5).

U.S.S.G. § 3E1.1 provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.  The application notes to U.S.S.G. § 3E1.1(a) state in relevant part:

**1.** In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

**(A)** truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).  Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a).  A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection.  However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

**(B)** voluntary termination or withdrawal from criminal conduct or associations;

**(C)** voluntary payment of restitution prior to adjudication of guilt;

**(D)** voluntary surrender to authorities promptly after commission of the offense;

**(E)** voluntary assistance to authorities in the recovery of the fruits

and instrumentalities of the offense;

(F) voluntary resignation from the office or position held during the commission of the offense;

(G) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

(H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

**2.** This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

**3.** Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct)(see Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

* * * *

**5.** The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

**6.** Subsection (a) provides a 2-level decrease in offense level. Subsection (b) provides an additional 1-level decrease in offense level for a defendant at offense level 16 or greater prior to the operation of subsection (a) who both qualifies for a decrease under subsection (a) and who has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps set forth in subsection (b). The timeliness of the defendant's acceptance of responsibility is a

consideration under both subsections, and is context specific. In general, the conduct qualifying for a decrease in offense level under subsection (b) will occur particularly early in the case. For example, to qualify under subsection (b), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.

Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing. See section 401(g)(2)(B) of Pub. L. 108-21.

**Background:** The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates acceptance of responsibility for his offense by taking, in a timely fashion, the actions listed above (or some equivalent action) is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility.

Subsection (a) provides a 2-level decrease in offense level. Subsection (b) provides an additional 1-level decrease for a defendant at offense level 16 or greater prior to operation of subsection (a) who both qualifies for a decrease under subsection (a) and has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps specified in subsection (b). Such a defendant has accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner, thereby appropriately meriting an additional reduction. Subsection (b) does not apply, however, to a defendant whose offense level is level 15 or lower prior to application of subsection (a). At offense level 15 or lower, the reduction in the guideline range provided by a 2-level decrease in offense level under subsection (a) (which is a greater proportional reduction in the guideline range than at higher offense levels due to the structure of the Sentencing Table) is adequate for the court to take into account the factors set forth in subsection (b) within the applicable guideline range. Section 401(g) of Public Law 108-21 directly amended subsection (b), Application Note 6 (including adding the last paragraph of that application note), and the Background Commentary, effective April 30, 2003.

U.S.S.G. § 3E1.1 application notes & background (emphasis added).

The Tenth Circuit has held that a district court may deny a defendant any reduction for acceptance of responsibility solely on the basis of timeliness. In United States v. Ochoa-Olivas, the Tenth Circuit addressed whether a defendant who pled guilty to one count of illegal reentry

the morning his trial was scheduled to commence was entitled to a 2-level reduction in his offense level under U.S.S.G. § 3E1.1(a).  On the day trial was to commence, "the district court assembled the jury venire, but they were dismissed when Ochoa-Olivas announced that he wanted to plead guilty.  After that announcement, the district court conducted a change-of-plea hearing, and Ochoa-Olivas pled guilty to the one count" of illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b).  426 F. App'x at 613.  The USPO released a PSR, which, pursuant to U.S.S.G. § 3E1.1(a), included a 2-level reduction for acceptance of responsibility.  The United States objected to the reduction, and "argued that it expended resources in preparing for trial and in providing travel and lodging for witnesses to attend the trial.  Therefore, it argued that [the defendant] should not be entitled to any reduction for acceptance of responsibility."  426 F. App'x at 613.  The district court agreed with the United States and denied the defendant a 2-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), stating that "a two-level reduction for acceptance of responsibility is not appropriate because the Defendant waited until the morning of trial to plead guilty."  426 F. App'x at 613 (internal quotation marks omitted).

The defendant in United States v. Ochoa-Olivas appealed, "contend[ing] that the district court clearly erred because it should have granted a two-level downward adjustment as he met the criteria for acceptance of responsibility" under U.S.S.G. § 3E1.1(a), and the United States "counter[ed] that the 'timing of the decision to plead guilty is important precisely because the adjustment was meant to expedite resolution of cases, and thereby to prevent prosecutive and judicial resources from being expended needlessly.'" 426 F. App'x at 614 (internal quotation marks and citation to the record omitted).  The Tenth Circuit affirmed the district court, stating:

> The Sentencing Guidelines explicitly allow the district court to consider the timeliness of a defendant's guilty plea.  U.S.S.G. § 3E1.1 cmt. n.1(h).  We caution that a late decision to plead guilty does not necessarily disqualify a defendant from receiving a downward adjustment for acceptance of responsibility.  But a

defendant who pleads guilty does not necessarily qualify for a downward adjustment for acceptance of responsibility either.  See id. § 3E1.1 cmt. n. 3. It is up to the district court to determine whether a defendant qualifies for this downward adjustment using the appropriate considerations.  In this case, the district court did just that, and therefore we cannot say that the district court committed clear error.

426 F. App'x at 614.

Similarly, in United States v. Gonzalez Gomez, 85 F. App'x 94 (10th Cir. 2003)(unpublished), the Tenth Circuit affirmed a district court's refusal to decrease the offense level of a defendant who, "[o]n August 16, 2002, the same day of [his] trial, he very reluctantly pled guilty" and "informed the assigned probation officer of his intent to return to the United States despite agreeing not to."  85 F. App'x at 95.  The Tenth Circuit affirmed the district court, holding that the defendant's "reluctant plea on the day of trial, coupled with his declared intent to continue to violate the law as he had done previously, undermines his argument that he accepts responsibility for his criminal conduct."  85 F. App'x at 95-96.

In United States v. White, 36 F. 3d 1106, 1994 WL 524974 (10th Cir. 1994)(unpublished), the Tenth Circuit addressed whether a defendant who pleads guilty to a charge shortly before trial should receive a 2-level downward departure for "clearly demonstrat[ing] acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  In that case, "[v]irtually on the eve of trial, White agreed to plead guilty to a single-count information charging conspiracy to distribute marijuana."  36 F.3d 1106, at *1.  The defendant also tested positive for cocaine use while on pretrial release.  The Tenth Circuit stated:

> White contends that he should have received a two-point reduction of his offense level for acceptance of responsibility.  USSG 3E1.1(a).  He bases this claim on the facts that he pled guilty and later admitted (with one exception) to the offense and relevant conduct facts recited in the PSR.  He argues that his refusal to cooperate with the probation officer does not detract from his acceptance of responsibility since note 1(a) to USSG 3E1.1 provides that "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of

conviction in order to obtain a reduction under subsection (a)." USSG 3E1.1, comment. (n.1(a)).

The sentencing guidelines provide for a two-level reduction if a defendant "clearly demonstrates acceptance of responsibility for his offense." USSG 3E1.1. However, "[a] defendant who enters a guilty plea is not entitled to an adjustment . . . as a matter of right." USSG 3E1.1, comment. (n.3). The court may "consider the timing of [a defendant's] statement in determining if his acceptance was genuine." United States v. Wach, 907 F.2d 1038 (10th Cir. 1990). Additionally, a defendant's "voluntary termination or withdrawal from criminal conduct or associations" should be considered in determining whether he has accepted responsibility. USSG 3E1.1, comment. (n.1(b)). Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," our review of the court's finding must be highly deferential. USSG 3E1.1, comment. (n.5). Thus, we review the court's determination as a finding of fact under the clear error standard. See United States v. Tovar, 27 F.3d 497, 498 (10th Cir. 1994). The defendant has the burden of proving, by a preponderance of the evidence, that he has accepted responsibility. Id.

Applying these standards, we cannot say that the district court clearly erred when it concluded that Mr. White was not entitled to a two-level reduction for acceptance of responsibility.

White's argument that he was improperly penalized for refusing to discuss his involvement in the cocaine conspiracy, as opposed to the marijuana conspiracy, fails for two reasons. First, it was raised for the first time on appeal. . . . Second, White refused to discuss with the probation officer not only the relevant conduct involving cocaine but also the offense conduct involving marijuana. His refusal to cooperate with the officer with respect to the details of his offense conduct, even on advice of counsel, can justify the denial of a reduction for acceptance of responsibility. See United States v. Trujillo, 906 F.2d 1456, 1460-61 (10th Cir.), cert. denied, 498 U.S. 962 (1990). His general admission at sentencing and his "eleventh hour expression of remorse" brought the sincerity of his acceptance into question. Wach, 907 F.2d at 1040.

36 F.3d 1106, at *3 (emphasis added). The Tenth Circuit also took into account that White's

cocaine use violated his pretrial release conditions, and stated that White continued to deny

receiving payment for introducing a person to his drug source, contrary to the "the district court's

credibility determination and express finding on the point . . . and [the Tenth Circuit noted that]

White's failure to accept responsibility for receiving payment in and of itself disqualifie[d] White

from the acceptance of responsibility reduction." 36 F.3d 1106, at *4. Thus, while other factors

also informed the Tenth Circuit's analysis, the Tenth Circuit relied in part on the defendant's eleventh hour guilty plea to affirm the district court's denial of an offense level reduction for acceptance of responsibility.

Other United States Courts of Appeals have uniformly held that a district court may refuse a defendant a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a) for an eleventh-hour acceptance of responsibility.    See, e.g., United States v. Rodriguez, 676 F.3d 183, 192-93 (D.C. Cir. 2012)(Henderson, J.)(holding that a district court did not abuse its discretion in declining to reduce a defendant's sentence for acceptance of responsibility where the defendant "finally came clean in his fourth debriefing" after having "repeatedly lied and dissembled for months before finally agreeing to cooperate"); United States v. Diaz-Gaudarama, 614 F.3d 387, 390-91 (7th Cir. 2010)(denying 2-level reduction for a defendant who first attempted to enter a guilty plea the day trial was to commence, before jury selection); United States v. Montero, 336 F. App'x 941, 942 (6th Cir. 2009)(holding that a defendant who pled guilty to conspiracy to induce aliens to enter the United States was not eligible for two-point reduction for acceptance of responsibility, because the defendant "did not offer his plea until the morning his trial was to begin, thus necessitating significant trial preparation by the government and the transportation of witnesses from across the state, and inconveniencing the jury pool which was already assigned to the trial," and stating that "[t]he district court's reliance on the timing of [the defendant's] plea and the context in which it was offered is in full accord with § 3E1.1(a), the explanatory comments accompanying that section, and the cases interpreting and applying it"); United States v. Fischer, 551 F.3d 751, 755 (8th Cir. 2008)("[A] district court in denying an acceptance of responsibility reduction [pursuant to U.S.S.G. § 3E1.1(a)] may consider that the guilty plea was 'of the "last hour" variety, offered on the eve of trial.'"  (quoting United States v. Erhart, 415

F.3d 965, 971 (8th Cir. 2005))); United States v. Rosalez-Cortez, 19 F.3d 1210, 1219 (7th Cir. 1993)("A judge may determine that a defendant has failed to accept responsibility by finding that he failed to demonstrate truthfulness and remorse prior to 'the final hour.'" (citations omitted)). Indeed, the Court did not find, nor did the parties cite, a case in which a Court of Appeals did not affirm a district court's denial of a reduction for acceptance of responsibility based on an eleventh-hour plea the day of the trial, but before the trial began.

In United States v. Diaz-Gaudarama, the United States Court of Appeals for the Seventh Circuit affirmed a district court's sua sponte refusal to grant a defendant a 2-level offense level reduction under U.S.S.G. § 3E1.1(a). The defendant, David Diaz-Gaudarama, appealed the sentence he received after pleading guilty to conspiring to distribute methamphetamine, cocaine, and marijuana. After about a year of delay because of disputes over the defendant's competency, which the district court ultimately concluded to be malingering, Diaz-Gaudarama went to trial. On the day trial was scheduled to commence, Diaz-Gaudarama attempted to enter a guilty plea, which the district court refused, because the defendant stated that he sought to plead guilty to receive medical care. After the United States rested its case, Diaz-Gaudarama again expressed a desire to plead guilty, this time stating that he was aware of what he had done, and the district court accepted the plea:

> Diaz-Gaudarama's jury trial was scheduled to begin on June 8, 2009. That day, before jury selection began, Diaz-Gaudarama attempted to plead guilty to the charge contained in the indictment. During the change of plea hearing, Diaz-Gaudarama admitted several details about the offense. At the end of the hearing, however, the district court asked Diaz-Gaudarama what medicines he had been taking in the past few days. Diaz-Gaudarama responded that he was taking a small white pill and he thought it was harming him. He said he did not know what the pill was supposed to do, but that he was having difficulty swallowing it because something was wrong with his throat. When the district court informed Diaz-Gaudarama that he would receive a sentence of at least ten years in prison, and up to life, Diaz-Gaudarama responded, "just as long as I get sent to the doctor, you can give me ten years. You can give me life. Just make sure I get to

the doctor."  In light of these statements, the district court refused to accept the guilty plea.

    The government completed its case on the third day of trial.  During an ensuing discussion with the district court concerning his right to testify in his own defense, Diaz-Gaudarama announced again that he wished to plead guilty.  This time, Diaz-Gaudarama informed the district court that he wished to plead guilty because he was, in fact, guilty as charged.  When asked again why he wished to plead guilty, Diaz-Gaudarama stated, "because I don't want to get too much time, and I am also aware of what I have done as well."  After a plea colloquy, the district court accepted Diaz-Gaudarama's guilty plea, and the jury was excused.

614 F.3d at 389.  The USPO prepared a PSR for Diaz-Gaudarama, which included a 2-level

reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), to which neither the

United States nor the defendant objected.  "Sua sponte, the district court raised the question of

whether Diaz-Gaudarama was entitled to an acceptance-of-responsibility credit."  614 F.3d at

390.  After hearing argument from both sides, "the district court declined to allow a reduction for

acceptance of responsibility," and "noted that it was not until the eve of trial that

Diaz-Gaudarama attempted to plead guilty, and that he did not in fact do so until after the

government had presented its case against him."  614 F.3d at 390.

    Diaz-Gaudarama appealed his sentence, and the Seventh Circuit affirmed.  The Seventh

Circuit stated:

    Under the advisory guidelines, a defendant may receive a two-level decrease in his offense level if he "clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  A district court's decision to award or deny a defendant a reduction for acceptance of responsibility depends heavily on the facts, and is thus reviewed for clear error.  See United States v. McIntosh, 198 F.3d 995, 999 (7th Cir. 2000).

    Diaz-Gaudarama argues that his initial plea colloquy on June 8, 2009 [before jury selection], is the sort of full and accurate account of his misconduct contemplated by application note 1(a) to U.S.S.G. § 3E1.1, which identifies as an appropriate consideration "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . ."  He wants us to focus on his first attempt to plead guilty, because entering a plea of guilty prior to trial and admitting the

conduct comprising the offense of conviction is "significant evidence of acceptance of responsibility." See U.S.S.G. § 3E1.1 n.3. Of course, the district court did not actually accept Diaz-Gaudarama's plea until after the government had put on its case. And in any event, a guilty plea before trial "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." Id.

We have long held that the last-minute nature of a guilty plea provides a significant basis to deny an acceptance-of-responsibility reduction. See, e.g., United States v. Carrera, 259 F.3d 818, 827 (7th Cir. 2001)(affirming denial of an acceptance-of-responsibility reduction [pursuant to U.S.S.G. § 3E1.1(a)] for a defendant who attempted to plead guilty on the first day of trial); United States v. Sierra, 188 F.3d 798, 804-05 (7th Cir. 1999)(affirming denial of an acceptance-of-responsibility reduction [pursuant to U.S.S.G. § 3E1.1(a)] for defendant who pleaded guilty on the last business day before trial); United States v. Rosalez-Cortez, 19 F.3d 1210, 1219 (7th Cir. 1993)(affirming denial of an acceptance-of-responsibility reduction [pursuant to U.S.S.G. § 3E1.1(a)] for a defendant who pleaded guilty after a two-day bench trial). Even when a defendant pleads guilty in a timely manner, statements or conduct inconsistent with acceptance of responsibility may prevent a defendant from receiving a reduction. Rather than formulating categorical tests, we ask that district courts "assess the defendant's demonstration of 'genuine remorse,' or 'conscience.'" McIntosh, 198 F.3d at 999-1000 (quoting United States v. Dvorak, 41 F.3d 1215, 1217 (7th Cir. 1994)).

The district court's decision in this case was not clear error. First, the district court properly relied on the last-minute nature of the plea, as the earliest attempt Diaz-Gaudarama made to plead guilty occurred on the morning of trial. See Sierra, 188 F.3d at 804-05. Second, Diaz-Gaudarama's own statements during his plea colloquy do not reflect remorse, but rather suggest that he pleaded guilty in an attempt to reduce his punishment; he said only that he didn't want to "get too much time" and that he was "aware of what he had done." Finally, the district court found that Diaz-Gaudarama had faked psychological illness in an attempt to evade punishment. . . . Given Diaz-Gaudarama's attempt to avoid criminal responsibility for his actions, the absence of statements by Diaz-Gaudarama reflecting remorse for his crime, and the last-minute nature of his attempt to plead guilty, he is not entitled to a reduction in his advisory guideline range for acceptance of responsibility.

614 F.3d at 390-91.

In United States v. Manzanares-Sanabria, the Court, applying these cases, denied the acceptance-of-responsibility reduction to a Defendant who did not plead guilty until the morning of trial. See 814 F. Supp. 2d at 1157. In that case, after much procedural wrangling -- including

numerous trial continuances and a plea hearing vacated after the Defendant declined to plea and, instead, requested new counsel -- the Defendant, Roger Manzanares-Sanabria, pled guilty reentry of a removed alien, in violation of 8 U.S.C. § 1326(a) and (b), on the morning of trial.  See 814 F. Supp. 2d at 1157-61.  The USPO did not apply the acceptance-of-responsibility reduction,

> because application note 1(H) provides that "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility" is a factor to determine whether a defendant qualifies for an acceptance of responsibility adjustment, and, "[a]lthough the defendant did provide the probation department with a statement of acceptance of responsibility on January 11, 2011," Manzanares-Sanabria "does not appear genuine in his acceptance of responsibility as he entered into a guilty plea at the 'eleventh' hour after the Government and the Court had expended resources preparing for trial." PSR ¶ 19, at 7.

United States v. Manzanares-Sanabria, 814 F. Supp. at 1161.  The Defendant objected:

> He argue[d] that "probation did not include this decrease in its offense calculation due to the fact that there was not a written plea agreement in this case, Mr. Manzanares-Sanabria pled guilty on the day of trial and, in probation's opinion, did therefore did not appear 'genuine' in his acceptance of responsibility." Objections and Sentencing Memorandum at 3.  He contend[ed] that the Court should decrease his offense level by 2 levels, because he "took responsibility before the trial began" and, "through counsel, provided to probation a statement accepting responsibility."  Objections and Sentencing Memorandum at 3.

814 F. Supp. 2d at 1161.  Both the USPO and the United States opposed any acceptance-of-responsibility reduction, principally because the plea came only at the eleventh hour, after the United States had expended considerable resources to prepare for trial.  See 814 F. Supp. 2d at 1162-63.  The Court denied the acceptance-of-responsibility reduction, in essence because, although the defendant truthfully admitted the conduct underlying the conviction, no other factor laid out in the application notes to U.S.S.G. § 3E1.1 weighed in his favor:

> The Court concludes that Manzanares-Sanabria's guilty plea, while "significant evidence of acceptance of responsibility," is "outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 application note cmt. 3.  Specifically, the balance of applicable factors weigh against decreasing Manzanares-Sanabria's offense level. Manzanares-

Sanabria did not voluntary[il]y terminate his criminal conduct. He did not surrender to authorities. Border Patrol agents intercepted Manzanares-Sanabria after he illegally reentered the United States. <u>See</u> PSR ¶ 5, at 3. The weightiest factor is Manzanares-Sanabria's untimely acceptance of responsibility. "The court may 'consider the timing of [a defendant's] statement in determining if his acceptance was genuine.'" <u>United States v. White</u>, 36 F.3d 1106, at *3 (quoting <u>United States v. Wach</u>, 907 F.2d [at 1040]. The application notes and background reference the timeliness of a defendant's acceptance of responsibility in three separate sections. <u>See</u> U.S.S.G. § 3E1.1 application notes cmt. 1(H)("In determining whether a defendant qualifies under subsection (a), appropriate considerations include . . . the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."); <u>id.</u> cmt. 6 ("The timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific."); <u>id.</u> background ("The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates acceptance of responsibility for his offense by taking, <u>in a timely fashion</u>, the actions listed above . . . is appropriately given a lower offense level . . . ."). "[T]he last-minute nature of a guilty plea provides a <u>significant</u> basis to deny an acceptance-of-responsibility reduction." <u>United States v. Diaz-Gaudarama</u>, 614 F.3d at 391 (citations omitted)(emphasis added). Manzanares-Sanabria's plea was untimely; he "did not offer his plea until the morning his trial was to begin, thus necessitating significant trial preparation by the government and the transportation of witnesses from across the state, and inconveniencing the jury pool which was already assigned to the trial." <u>United States v. Montero</u>, 336 F. App'x at 942 (affirming an acceptance of responsibility reduction, because "[t]he district court's reliance on the timing of [the defendant's] plea and the context in which it was offered is in full accord with § 3E1.1(a), the explanatory comments accompanying that section, and the cases interpreting and applying it").

<u>United States v. Manzanares-Sanabria</u>, 814 F. Supp. 2d at 1171. In addition to the timeliness problem, the Court noted that the charge the Defendant faced -- illegal reentry -- shaped its view of the plea:

> Much of the Court's view of Manzanares-Sanabria's last-minute plea is grounded on the kind of trial Manzanares-Sanabria avoided. The Court has been on the bench about eight years, handling hundreds of reentry cases, and has never tried a reentry case. They always plead or, in some rare cases, are dismissed. They are very short, because the elements are simple: (i) the defendant was an alien at the time he or she was found in the United States as alleged in the indictment; (ii) the defendant had been deported or removed previously from the United States; (iii) thereafter the defendant entered, or was found, in the United States; and (iv) the defendant had not received the consent of the appropriate authority, <u>i.e.</u>, the Attorney General or Secretary of Homeland Security, to apply

for readmission to the United States since the time of his or her previous deportation.  See 8 U.S.C. § 1326(a)(1), (2); Tenth Circuit Pattern Jury Instructions Criminal 2.05, at 81 (2005).  Nonetheless, they are document intensive, requiring the United States to gather materials.  The Court has to have most of its work done before the trial begins.  Here, the Court had completed proposed preliminary and final jury instructions, and issued an order in limine. The parties expected the trial to last two days.

While Manzanares-Sanabria pled guilty before the jury was brought into the courtroom and before the trial began, and that factor is significant evidence of acceptance of responsibility, U.S.S.G. § 3E1.1 application note cmt. 3, the fact that practically all the work for the trial was done is also significant evidence that he did not truly accept responsibility.  See United States v. Diaz-Gaudarama, 614 F.3d at 391 ("[T]he last-minute nature of a guilty plea provides a significant basis to deny an acceptance-of-responsibility reduction." (citations omitted)(emphasis added)).  Rather, he was waiting to the last minute to get a better deal or have the United States' case go awry, yet still get a reduction in his offense level.  That motivation shows he sought to game the system, not truly accept responsibility. Manzanares-Sanabria has the burden of showing by a preponderance of the evidence that he "clearly" accepted responsibility.  U.S.S.G. § 3E1.1.  He has not met that burden.

It may be that, in another case, such as a month long drug-conspiracy trial, a plea on the morning of trial indicates acceptance of responsibility.  New evidence may have come to light. A plea may have been worked out over the weekend.  But in a two-day illegal reentry trial, where the elements are relatively straightforward, delaying to the morning of trial smacks of something else, rather than acceptance of responsibility.

United States v. Manzanares-Sanabria, 814 F. Supp. 2d at 1172-73.  Accordingly, the Court

denied the Defendant's argument for a reduction, because his "acceptance of responsibility was

untimely, and the balance of factors under U.S.S.G. § 3E1.1(a)'s application notes weigh[ed]

against reducing his offense level."  814 F. Supp. 2d at 1174.

## ANALYSIS

The Court will not reduce Aranda-Diaz' offense level 2 levels for acceptance of

responsibility.  Aranda-Diaz pled guilty the morning of trial -- and only to three of the six Counts

he faced, requiring the United States to prove its case to a jury on the remaining three Counts.

Indeed, he today maintains that the United States proved its case only "illegally."  Tr. at 38:17-19

(Defendant).  Because his plea to three charges was untimely and because he has not admitted the remaining three charges, Aranda-Diaz has not "clearly demonstrate[d] acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1.  As to the sentence for this case, the Court will not vary, but will sentence Aranda-Diaz within the guideline range.  Finally, as to the sentence in Aranda-Diaz I, the Court will vary downward slightly, because, it concludes, the sentence that this variance yields is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.

I.  **THE COURT WILL NOT REDUCE ARANDA-DIAZ' OFFENSE LEVEL PURSUANT TO § 3E1.1 FOR ACCEPTANCE OF RESPONSIBILITY, BECAUSE HIS ELEVENTH-HOUR PLEA TO ONLY HALF OF THE CHARGES AGAINST HIM DOES NOT CLEARLY DEMONSTRATE THAT HE HAS ACCEPTED RESPONSIBILITY FOR HIS OFFENSES.**

The Court will not reduce Aranda-Diaz' offense level pursuant to § 3E1.1 for acceptance of responsibility, for two reasons.  First, he pled guilty only the day of trial, after the Court and the United States had expended considerable resources preparing to take a complex case to trial. Second, he pled guilty only to a subset of the charges against him, forcing the United States to prove its case to a jury on the remaining three Counts.  Aranda-Diaz has not, therefore, clearly accepted responsibility for his offenses.  The Court will, accordingly, overrule Aranda-Diaz' objection to the PSR's contrary conclusion.

Aranda-Diaz has not substantively argued that, under the factors that the application note to § 3E1.1 identifies, he is entitled to the acceptance-of-responsibility reduction.  It is no great mystery why: none of the factors unequivocally points in his favor.  Those eight factors are:

> **(A)** truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).  Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to

relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection.  However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;

> **(B)** voluntary termination or withdrawal from criminal conduct or associations;

> **(C)** voluntary payment of restitution prior to adjudication of guilt;

> **(D)** voluntary surrender to authorities promptly after commission of the offense;

> **(E)** voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

> **(F)** voluntary resignation from the office or position held during the commission of the offense;

> **(G)** post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

> **(H)** the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1 application note 1.  The only factor that arguably cuts in Aranda-Diaz' favor is the first, given that he pled guilty to some charges.  Even still, he "truthfully admitted" conduct underlying only three of the six offenses of conviction when he pled guilty, denying the other three offenses of which a jury convicted him -- and he, evidently, continues to deny responsibility for those crimes, insisting that the United States proved his guilt "illegally."  Tr. at 38:17-19 (Defendant).[7]  No evidence tends to satisfy factors B-G in Aranda-Diaz' favor; indeed,

_____

[7]Aranda-Diaz' allegation that his prior counsel acted ineffectively does not change this outcome.  Aranda-Diaz, through his sentencing counsel, stated that he instructed his trial counsel that he wanted to plead guilty to counts 1, 2, and 6 earlier, and his trial counsel did not set up a timely plea.  Aranda-Diaz did not testify to this effect; his attorney mentioned it in the Sentencing Memo. Addendum and at the hearing, relaying what Aranda-Diaz allegedly communicated to him. See Tr. at 5:20-6:1 (Encinias)(stating that, with regard to this allegation, "I did not follow-up on that.  This is based on the information given to me by Mr. Aranda-Diaz.").  First, even if that allegation were true, the point is largely moot: Aranda-Diaz still

if any evidence is relevant to these factors, that Aranda-Diaz has stated that he intends to return to the United States tends to cut against the "voluntary termination or withdrawal from criminal conduct or associations" factor. As for the last factor -- timeliness -- Aranda-Diaz waited until the morning of trial, after the Court and the United States had expended considerable resources preparing for trial, to plead guilty and went to trial on three crimes. His plea was not, therefore, timely.

What is more, the next paragraph in the application note indicates that the acceptance-of-responsibility reduction is not designed with cases like this one in mind:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1 application note 2. Aranda-Diaz' case does not mirror even this scenario: he still evidently contests his guilt as to three Counts, and he has not demonstrated any remorse.

---

required the United States to prove its case against him as to three counts, which does not clearly demonstrate acceptance of responsibility for his offenses. Second, the Court does not find this allegation credible. Throughout this case, the Court has indulged Aranda-Diaz' multiple requests for new counsel and allowed Aranda-Diaz to ping-pong from one attorney to the next, discharging several capable defense attorneys along the way. Whatever traction his most recent attack on his counsel's competence might get in a collateral-attack proceeding, in which ineffective-assistance claims are generally properly brought and developed, see United States v. Flood, 635 F.3d 1255, 1260-61 (10th Cir. 2011)("Except in rare circumstances, ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal." (internal quotation marks and alteration omitted)), for Aranda-Diaz to argue this point at sentencing, without any evidence, smacks of gamesmanship and not of genuine acceptance of responsibility.

Aranda-Diaz' delay burdened not only the United States, as it explained in its Response and at the hearing; it also burdened the Court.  There is a measurable difference, from the Court's perspective, in preparing for a trial of six Counts rather than three Counts.  The Court prepared and filed its proposed preliminary jury instructions -- for all six Counts -- on Sunday, June 23, 2013 -- the day before trial was scheduled to begin.  See Court's First Proposed Preliminary Instructions, filed June 23, 2013 (Doc. 100).  The Court prepared and filed its set of proposed final jury instructions, which reflect its work changing the jury instructions from a six-Count case to a three-Count case, the day after Aranda-Diaz pled.  See Court's First Proposed Set of Jury Instructions, filed July 25, 2013 (Doc. 105).  The Court prepared Memorandum Opinions and Orders, both before and after Aranda-Diaz pled, that dealt in some way with Counts 1, 2, and 6.  See, e.g., Memorandum Opinion and Order, filed July 18, 2013 (Doc. 76)(granting pretrial a motion in limine related to Count 6, illegal reentry of a removed alien); Memorandum Opinion and Order, filed January 7, 2014 (Doc. 146)(explaining the Court's decision the morning of trial to deny as moot a motion in limine that related to Count 2, felon in possession of a firearm, because of Aranda-Diaz' plea).

The Court's decision to deny the reduction is even clearer in this case than it was in United States v. Manzanares-Sanabria.  In that case, the defendant pled guilty to the sole charge against him.  See United States v. Manzanares-Sanabria, 814 F. Supp. 2d at 1159-60.  The Court still denied the reduction, because it came at the eleventh hour.  See 814 F. Supp. 2d at 1174.  Aranda-Diaz did not plead guilty to all the charges he faced; accordingly, he has not clearly accepted responsibility for his offenses.

In short, the Court concludes that Aranda-Diaz has not clearly accepted responsibility for his offense, as § 3E1.1 requires.  Far from it -- Aranda-Diaz pled guilty only at the last moment

to three offenses, and, to the Court's eyes, still has not accepted responsibility for the remaining three offenses of which the jury convicted him. Accordingly, as the PSR correctly states, a reduction for acceptance of responsibility is unwarranted. The Court will deny Aranda-Diaz' objection to the contrary.

## II.    AS TO THE SENTENCE FOR THE OFFENSE IN THIS CASE, THE COURT WILL NOT VARY DOWNWARD, BECAUSE THE PUNISHMENT IN THE GUIDELINES IS SUFFICIENT WITHOUT BEING GREATER THAN NECESSARY TO COMPLY WITH THE PURPOSES OF SENTENCING LAID OUT IN THE SENTENCING REFORM ACT.

The Court has considered Aranda-Diaz' request for a variance, but it will not vary downward. The Court concludes that a sentence within the guidelines is sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act. Accordingly, a variance is inappropriate.

Having carefully considered the arguments and circumstances of this case, the Court concludes that about four factors which Aranda-Diaz has presented put downward pressure on his sentence. The Court is sympathetic to the fact that he was brought to the United States at two years old, and that he is culturally assimilated: the Court and Aranda-Diaz have known each other for a long time now, and he has always been able to converse in English well. The Court realizes that his family lives in the United States, and that his family has supported him and will, in all likelihood, continue to do so. The Court reviewed all of the letters that were sent on his behalf, and appreciates that it is very difficult for him to be deported and sent back to Mexico with all his family here. Those factors combined put downward pressure in the sense that the Court needs to craft a sentence that promotes respect for the law, that provides just punishment, and that is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.

The Court has, however, identified about ten factors that keep the sentence up in the guideline range.  One is the seriousness of the offense here: the quantity of drugs is large. Further, the Court is concerned about affording adequate deterrence: although the Court may, with any sentence it probably imposes in this case, provide general deterrence, the Court is concerned about specific deterrence, because the Court has not seen any change in Aranda-Diaz over the years, either before it or other judges.  In this case, he did not cooperate in any way; he does not have to cooperate, but his failure to cooperate is one manifestation of his failure to accept responsibility for his actions on the day underlying his offense.  The Court also notes that it has been a difficult proceeding, because he has blamed lots of people throughout the process for his situation.

Further, Aranda-Diaz has an extensive criminal history, and the Court must impose a sentence that protects the public and that avoids unwarranted sentencing disparity among similar defendants with similar criminal records.  The long criminal history is also one that includes some violence, and he may have benefited from a good plea bargain in the prior federal conviction.  Further, because Aranda-Diaz will be deported, the Court cannot use supervised release to help Mr. Aranda-Diaz avoid these problems in the future.  The firearm and the fact that he has been shot are of concern to the Court, and keep upward pressure on the sentence.  In sum, those factors outweigh the mitigating factors and the downward pressure that they place in his sentence.  Accordingly, the Court believes that the punishment set forth in the guidelines is appropriate for this offense.

The Court has considered the United States' request to sentence at the high end of the range, but will not impose such a sentence.  The Court normally sentences at the low end of the range unless there is something particularly aggravating about the crime.  Although this case is a

serious offense, which keeps it from falling below the guideline range, the offense is not so serious that it requires the Court to crawl up higher into the guideline range.  Accordingly, the Court will sentence at the low end of the guideline range for 51 months on Counts 1, 2, 3, 4 and 6.  The Court believes that that sentence is adequate to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence -- both at the specific and the general level -- and protect the public.  It avoids unwarranted sentencing disparity among defendant with similar records who have been found guilty of similar conduct.  Although the Court will impose supervised release, as it must, the Court really cannot effectively supervise Mr. Aranda-Diaz when he leaves the United States.  Accordingly, the Court concludes that this sentence fully and effectively reflects each of the relevant factors in § 3553(a), and is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.  Further, although the Court's task is not to  come up with a reasonable sentence, but rather to balance appropriately the factors in § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)), the Court believes that its sentence is also reasonable.

Therefore, as to Counts 1, 2, 3, 4 and 6 of the Indictment, Aranda-Diaz is committed to the custody of the Bureau of Prisons for a term of 51 months; said terms will run concurrently.  As to Count 5 of the Indictment, Aranda-Diaz is committed to the custody of the Bureau of Prisons for a mandatory term of five years to run consecutively to any sentence for Counts 1, 2, 3, 4, and 6, for a total of 111 months.  As to Counts, 1, 2, and 6, Aranda-Diaz is placed on supervised release for a term of three years, and as to Counts 3, 4 and 5, Aranda-Diaz is placed

on supervised release for a term of five years; said terms will run concurrently and shall be unsupervised for a total term of five years.

The defendant must comply with the standard conditions of supervised release and the mandatory conditions of supervised release. The following special conditions will also be imposed. The defendant must not reenter the United States without legal authorization. This special condition is imposed because of the defendant's immigration status.

The Court recommends Immigration and Customs Enforcement begin removal proceedings during service of sentence. Based on Aranda-Diaz' lack of financial resources, the Court will not impose a fine. The defendant shall pay a special assessment of $100.00 as to each Count of conviction for a total of $600.00, which is due immediately.

## III. AS TO THE SENTENCE FOR THE VIOLATION OF A CONDITION OF SUPERVISED RELEASE IN <u>ARANDA-DIAZ I</u>, THE COURT WILL VARY DOWNWARD, BECAUSE THE PUNISHMENT IN THE GUIDELINES IS GREATER THAN NECESSARY TO COMPLY WITH THE PURPOSES OF <u>SENTENCING LAID OUT IN THE SENTENCING REFORM ACT</u>.

The Court will vary downward slightly with respect to the supervised-release violation in <u>Aranda-Diaz I</u>. The Court concludes that a sentence below the guideline range is sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act. Accordingly, a variance is appropriate.

There are seven factors that press this sentence downward: (i) focusing on the principal crime at issue, it is reentering the country, and the Court has not typically treated this crime as being as serious as the drug crimes of which Aranda-Diaz was convicted; (ii) the Court can impose a sentence here without going into the guideline range that provides adequate deterrence at a general level; (iii) the Court does not need a guideline sentence to promote respect for the law; (iv) the Court does not need a guideline sentence to provide just punishment; (v) Aranda-

Diaz will be deported, which imposes upon him an additional collateral consequence of his activity; (vi) the Court cannot use supervised release effectively to prevent criminal activity; and (vii) the Court must put a sentence together that is sufficient without being greater than is necessary to accomplish the purposes of § 3553(a).

There are, however, six factors that press the sentence upward, and would suggest keeping the sentence within the range: (i) supervised release in federal court must mean something, and to run the sentence imposed in <u>Aranda-Diaz I</u> entirely concurrently to the sentence imposed in this case, would not give supervised release meaning; (ii) Aranda-Diaz has commented that he will to come back to the United States and has come back a number of times; the Court is concerned that, given his draw to the United States, he will come back; (iii) although coming back across the border is not in itself the most serious offense, he came back and committed crimes; (iv) the Court must impose a sentence that promotes respect for the law; (v) the Court must impose a sentence that protects the public; and (vi) the Court must impose a sentence that avoids unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct. The last factor is tricky in this case, because oftentimes in this district it is common to run much of such a sentence concurrently.

Balancing these factors, the Court will, for comparison purposes, reduce a couple of offense levels down to 8 and use a range of 18 to 24 months. The Court will, accordingly, impose an actual sentence of 18 months for the violation in <u>Aranda-Diaz I</u>; two thirds of that sentence will run consecutively to the sentence in this case, and one third of it should run concurrently to the sentence in this case. The Court believes that this sentence is adequate to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. It is a variance, but it avoids unwarranted

sentencing disparity among defendants with similar records who have been found guilty of similar conduct, and, because the Court cannot use supervised release effectively, because Aranda-Diaz will be deported, this sentence fully and effectively reflects each of the relevant factors in 18 USC § 3553(a).  While the Court's task as a district judge is not to come up with a reasonable sentence -- but, instead, to come up with sentence that reflect the factors in § 3553(a), see United States v. Conlan, 500 F.3d at 1169 -- this sentence better reflects the factors in § 3553(a) than would a guideline sentence and is more reasonable.   The Court concludes that this sentence is reasonable and, perhaps more importantly, is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.

The Court understands the United States' position that Aranda-Diaz should receive a longer sentence, and, if the Court had held a hearing and the Court had made findings, it almost certainly would find that he violated other areas of federal law.  The Court, however, took Aranda-Diaz' plea, and the Court will base its sentence principally on the offenses to which he pled.  The other crimes and the other convictions keep upward pressure on the sentence, which is why the Court will not run all of the sentence concurrently, but will run some of it consecutively. In the Court's view, a year more on the 111-month sentence reflects well the factors in § 3553(a), and is sufficient without being greater than necessary to achieve the purposes of punishment set forth in the Sentencing Reform Act.  Accordingly, the Court will overrule the United States' objection and order the sentence to be imposed as the Court has stated it.

**IT IS ORDERED** that: (i) the objection in the Defendant's Sentencing Memorandum, filed February 10, 2014 (Doc. 153), is overruled; and (ii) the sentence is imposed as the Court stated it on the record at the hearing.  The Court will not reduce Defendant Yuren Aranda-Diaz' offense level by two levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

Aranda-Diaz is committed to the custody of the Bureau of Prisons for a total term of 111 months for Counts 1, 2, 3, 4, 5, and 6 of the Indictment, filed October 23, 2012 (Doc. 12). Aranda-Diaz is committed to the Bureau of Prisons' custody for 51 months as to each of Counts 1, 2, 3, 4, and 6; such terms will run concurrently. Aranda-Diaz is committed to the Bureau of Prisons' custody for 60 months as to Count 5; such term will run consecutively to the sentence imposed for Counts 1, 2, 3, 4, and 6. As to Counts 1, 2, and 6, Aranda-Diaz is placed on supervised release for a term of 3 years, and as to Counts 3, 4 and 5, Aranda-Diaz is placed on supervised release for a term of 5 years; said terms will run concurrently and shall be unsupervised for a total term of 5 years. For the supervised-release violation in United States of America v. Aranda-Diaz, No. CR 08-2344 JB, Aranda-Diaz is committed to the custody of the Bureau of Prisons for a term of 18 months, 12 months of which will run consecutively to the sentence imposed in this case, and six months of which will run concurrently to the sentence imposed in this case; a term of supervised release will not be reimposed.

_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Damon P. Martinez
   United States Attorney
David M. Walsh
Novaline Wilson
   Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Leon Encinias
Albuquerque, New Mexico

   *Attorney for the Defendant*